1   JENNIE LEE ANDERSON (SBN 203586)
    jennie@andrusanderson.com
2   ANDRUS ANDERSON LLP
    155 Montgomery Street, Suite 900
3   San Francisco, CA 94104
    Phone: (415) 986-1400
4   Fax:    (415) 986-1474

5   DOUGLAS P. DEHLER
    doug.dehler@wilaw.com
6   PAUL W. ZIMMER
    paul.zimmer@wilaw.com
7   O'NEIL, CANNON, HOLLMAN, DEJONG & LAING S.C.
    111 East Wisconsin Avenue, Suite 1400
8   Milwaukee, WI 53202
    Phone: (414) 276-5000
9   Fax:    (414) 276-6581

10  Attorneys for Plaintiffs and the Proposed Classes

11

12                  UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15

16  DONNA J. FORSYTH, SIDNEY L. STATON          Case No.
    III, ARUN VATTURI, and DAN WEILAND,
17  for and on behalf of themselves and other   **CLASS ACTION**
    persons similarly situated,
18                                              **COMPLAINT**
                    Plaintiffs,
19                                              **JURY TRIAL DEMANDED**
                vs.
20
    HP INC. and HEWLETT PACKARD
21  ENTERPRISE COMPANY,

22                  Defendants.

23

24

25

26

27

28

                              COMPLAINT

Plaintiffs Donna J. Forsyth, Sidney L. Staton III, Arun Vatturi, and Dan Weiland, on behalf of themselves and other persons similarly situated, for their Complaint against HP Inc. and Hewlett Packard Enterprise Company, allege as follows:

**INTRODUCTION**

1.    In recent years, technology giant Hewlett Packard has made it a priority to transform itself from an "old" company into a "younger" operation. On several occasions since 2012, HP has publicly admitted that its objective is to get younger. Striving to reach this goal, HP has shed thousands of its older employees while at the same time aggressively recruiting much younger employees to replace them.

2.    Plaintiffs are employees who were recently laid off due to HP's practice of illegal age discrimination. Plaintiffs are representatives of a nationwide class of similarly-situated individuals.

3.    Plaintiffs Sidney Staton and Arun Vatturi are representatives of a class of individuals who also have California state law claims, in addition to being representatives of a nationwide class of people who have claims under federal law.

4.    The purpose of this action is to recover damages and seek other relief available to Plaintiffs and other class members under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., as well as under the California Fair Employment and Housing Act (FEHA), Government Code §§ 12900-12996, and other California state laws.

**THE PARTIES**

5.    Plaintiff Donna Forsyth is a resident of the State of Washington. She worked at the Hewlett Packard Enterprise Company (and previously Hewlett-Packard Company) until she was laid off in May 2016, when she was 62 years old.

6.    Plaintiff Sidney Staton is a resident of the State of California. He worked at Hewlett-Packard Company until he was laid off in April 2015, when he was 54 years old.

7.    Plaintiff Arun Vatturi is a resident of the State of California. He worked at HP, Inc. (and previously Hewlett-Packard Company) until he was laid off in January 2016, when he was 52 years old.

1

8.      Plaintiff Dan Weiland is a resident of the State of Texas. He worked at Hewlett-Packard Company until he was laid off in July 2015, when he was 63 years old.

9.      Defendant HP Inc. is a corporation organized under the laws of the State of California with its headquarters and principal place of business located at 1501 Page Mill Road, Palo Alto, California.

10.      Defendant Hewlett Packard Enterprise Company is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business located at 3000 Hanover Street, Palo Alto, California.

11.      Non-party Hewlett-Packard Company in November 2015 split into the two Defendants in this action, HP Inc. and Hewlett Packard Enterprise Company. These two Defendants continued HP's illegal age discrimination and, as a matter of law, are legally responsible for the age discrimination of their predecessor, Hewlett-Packard Company. Throughout this Complaint, the two Defendants and Hewlett-Packard Company are referred to collectively as "HP."

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this action pursuant to the ADEA, 29 U.S.C. § 621, et seq.

13.      This Court has supplemental jurisdiction over the California state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

14.      This Court has personal jurisdiction over the two Defendants because they are headquartered and do substantial business in the State of California.

15.      Venue is proper in the Northern District of California, San Jose Division, pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because a substantial part of the events giving rise to Plaintiffs' claims arose in this District, and because both Defendants are headquartered here.

## SUMMARY OF ALLEGATIONS

16.      In 2012, HP initiated a Workforce Reduction (WFR) Plan impacting tens of thousands of HP employees across the country. The publicly-stated goal of HP's WFR Plan was to make the company younger. When Hewlett-Packard Company split into the two Defendants in

2

1   November 2015, the 2012 WFR Plan carried through to both HP, Inc. and Hewlett Packard

2   Enterprise Company, which implemented similarly-named WFR Plans. Throughout this

3   Complaint, HP's WFR Plans are referred to collectively as the "WFR Plans."

4      17. HP has employed various tactics to effectuate its publicly-stated goal of making

5   itself younger. In order to get younger, HP intentionally discriminated against its older employees

6   by targeting them for termination pursuant to the WFR Plans and then systematically replacing

7   them with younger employees.

8      18. HP also employed facially neutral programs that resulted in the disproportionate

9   termination of the employment of older employees as compared to younger ones. HP then

10   systematically replaced its older employees with younger hires.

11      19. Any excuse HP puts forth to justify its illegal age discrimination is a pretext.

12   **SUBSTANTIVE ALLEGATIONS**

13   ***HP's Publicly-Stated Goal to Get Younger***

14      20. While HP has been carrying out its drastic layoff plan, which is believed to be the

15   largest in American history, Meg Whitman, the CEO of former Hewlett-Packard Company, the

16   current CEO of Hewlett Packard Enterprise Company, and the current Chair of HP, Inc.'s board

17   of directors, has publicly made it abundantly clear that her overarching goal is for HP to get

18   younger.

19      21. As Ms. Whitman openly stated, more than once, her goal at HP has always been to

20   change HP's "labor diamond" into a "labor pyramid" or a "quite flat triangle" with large numbers

21   of young people at its base. Specifically, Ms. Whitman made the following statements during an

22   October 2013 Securities Analyst Meeting:

23      So, as we think about our overall labor pyramid at Hewlett-Packard,
   we need to return to a labor pyramid that really looks like a triangle

24      where you have a lot of early career people who bring a lot of
   knowledge who you're training to move up through your

25      organization, and then people fall out either from a performance
   perspective or whatever.

26

27      And over the years, our labor pyramid doesn't look—has become
   not a triangle. It's become a bit more of a diamond. And we are

28      working very hard to recalibrate and reshape our labor pyramid so
   that it looks like the more classical pyramid that you should have in

any company and particularly in ES. If you don't have a whole host of young people who are learning how to do delivery or learning how to do these kinds of things, you will be in [for] real challenges.

. . . .

Now, that's not something that changes like that. Changing the same shape of your labor pyramid takes a couple of years, but we are on it, and we're amping up our early career hiring, our college hiring. And we put in place an informal rule to some extent which is, listen, when you are replacing someone, really think about the new style of IT skills.

22.     Ms. Whitman reiterated her position that HP needed to create a "labor pyramid" that was "quite flat" during another Securities Analyst Meeting held in September 2015, stating:

We have to fundamentally recreate the labor pyramid. Many of you heard me say our labor pyramid in Enterprise Services looks like a diamond and it needs to look like a triangle and quite frankly it needs to look like a quite flat triangle to be competitive.

23.     In November 2015, more than three years after implementing the 2012 WFR Plan, Ms. Whitman went on television to declare publicly that HP's goal was to get even younger still, stating as follows during a CNBC interview:

Interviewer:    You did announce significant job cuts about a month or so ago. . . . Is that going to be it for HP?

Ms. Whitman: That should be it. That will allow us to right-size our Enterprise Services business. . . to make sure that we've got a labor pyramid with *lots of young people* coming in right out of college and graduate school and early in their careers. That's an important part of the future of the company. . . . (emphasis added).

24.     These are just a few examples of Ms. Whitman's statements about what she intended for HP as its senior officer or director. As Ms. Whitman made clear, HP's objective over a period of years was to fire its older employees and replace them with younger ones.

25.     To carry out Meg Whitman's orders, over a period of years, HP's senior management team provided its managers throughout the country with two things simultaneously: (a) specific numbers of employees to be permanently laid off; and (2) specific numbers of requisitions for new hires. The layoff "slates" and "reqs" for new hires followed a distinct pattern. An upper-level manager would order the layoff of a designated number of experienced older

employees (e.g., "master level scientists") and then also simultaneously authorize a similar number of new requisition orders calling for the hiring of "college grads" or "entry level" employees to replace those whom HP just fired. During this process, HP often used certain terms when referring to older workers—specifically, HP called them "long term" or "LT" employees. HP's upper management (from Ms. Whitman on down) encouraged HP's hiring managers to slate "long term" employees for layoffs and replacement, following the "informal rule" to hire younger replacement employees, as discussed by Ms. Whitman during the October 2013 Securities Analyst Meeting.

26.     Because HP has used uniform, near-verbatim paperwork when terminating Plaintiffs and other class members, they all received the same vaguely worded, boilerplate explanations for being terminated: "Employees were selected for the reduction in force because the job they were performing will no longer continue, their skill set was not applicable to the Company's or organization's operations going forward, and/or other employees were viewed as better qualified because of past performance and competency evaluation, which may include skills, abilities, knowledge and experience." This boilerplate explanation was merely a pretext for HP's policies of overt age discrimination.

***Statistical Evidence Showing HP Fired its Older Workers***

27.     Based on available data regarding HP's layoffs under the WFR Plans, it is clear that HP conformed to its publicly-stated goal of getting younger. Older workers were statistically more likely to be laid off under HP's WFR Plans than younger ones.

28.     When HP laid employees off pursuant to the WFR Plans, it routinely failed to comply with the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f). HP provided laid off employees with documents called "Attachment A" forms, which ostensibly were meant to comply with the requirements of the OWBPA. However, these forms did not provide the data required by the OWBPA because, *inter alia*, they did not include the job titles and ages of all employees in the pertinent "decisional unit" impacted by HP's layoffs. Indeed, they did not even define the employee's "decisional unit." Rather than provide the required data for the relevant "decisional unit," HP regularly provided terminated employees Attachment A forms that focused

on only a small group of employees that HP deceptively suggested were part of the appropriate decisional unit, when in fact they were not.

29.     Even the limited data from the Attachment A forms demonstrates, however, that HP's employment practices in fact discriminated against older workers. Those practices had a statistically significant disparate impact on older employees, who were significantly more likely to have their employment terminated than younger employees.

30.     For example, a preliminary analysis of Attachment A forms provided to HP employees shows that older employees were significantly more likely to be terminated than younger employees, reaching a statistical confidence level of three standard deviations—in other words, to a statistical level of confidence in excess of 99%.

31.     Furthermore, this significant statistical disparity (more than 3 standard deviations) exists even though the Attachment A forms that HP prepared and distributed to former employees did not fully portray the negative impact of HP's employment policies on older employees. Indeed, HP improperly crafted its Attachment A forms far too narrowly and in such a manner as to understate the true impact of the employment terminations on older employees.

32.     If the Attachment A forms were accurate and properly identified all of the younger employees who were not terminated or otherwise impacted by HP's employment practices, as well as the additional older workers who were terminated, then the statistical disparity between the impact on older employees versus younger ones would be even greater.

33.     HP's illegal age discrimination is demonstrated by its use of employment policies that on the surface appear to be facially neutral, but which unquestionably had a disparate negative impact on older employees. Moreover, HP engaged in its discriminatory practices willfully, with the clear intent to make the company younger based on the instructions of HP's most senior management. As a result, HP committed age discrimination under both the disparate impact and disparate treatment legal theories of liability.

COMPLAINT

1

*HP's Other Efforts to Force Out Older Workers*

2      34.     In addition to laying off older workers in disproportionate numbers, HP adopted

3  employment policies and implemented other programs that were designed to force HP's older

4  workers out of the company, so that younger workers could take their places.

5      35.     For example, in 2014 and 2016, HP implemented early phased retirement

6  programs under which HP employees over the age of 55 who had worked at HP for at least 10

7  years were encouraged to "voluntarily" phase out their employment with HP over a period of six,

8  12, or 18 months.

9      36.     HP proposed that Plaintiff Dan Weiland take early phased retirement in September

10  2014. However, Mr. Weiland declined to retire voluntarily because he wanted to continue

11  working. Nevertheless, Mr. Weiland's supervisor tried to persuade Mr. Weiland to participate in

12  the program, even though it offered no significant benefits to Mr. Weiland. It was simply a way

13  for HP to apply pressure on Mr. Weiland to leave the company "voluntarily."

14      37.     More recently, HP initiated a new early phased retirement program in 2016, which

15  was very similar to its 2014 program. By rebooting this program, HP was able to again apply

16  pressure on its older employees, including some who may have been too young to qualify for the

17  2014 program but who have now aged into eligibility for the 2016 program.

18      38.     The 2014 and 2016 phased retirement programs put older employees in a dilemma

19  that works much to HP's advantage. During meetings where HP offers these phased retirement

20  programs to the older employees, the elephant in the room is looming. Each person is thinking,

21  like Mr. Weiland did: "If I turn down this phased retirement program, am I just going to be laid

22  off by HP anyway?" In Mr. Weiland's case, and in thousands of others, that very question was

23  answered in the way Mr. Weiland feared. After Mr. Weiland turned down the 2014 phased

24  retirement program, his employment was simply terminated as part of HP's WFR Plan.

25      39.     HP adopted other policies that resulted in older employees being pressured to

26  leave the company. For example, before the 2012 WFR Plan was implemented, HP adopted new

27  employment policies that strongly encouraged HP's employees to work remotely from home.

28

7

40.     Then, after HP initiated its 2012 WFR Plan, Ms. Whitman reversed course and directed that all employees were required to come into the office regularly, with rare exceptions. This was a complete reversal of HP's prior policy and, in many cases, the offices where the employees were supposed to report were no longer large enough to hold everyone. In addition, many HP employees would have been forced to make hour-plus long commutes to travel back into offices where HP, just a year or so earlier, had been attempting to reduce its numbers. Many of the people who were negatively affected by this newly changed policy (often older employees) did not want to relocate their families again or make lengthy commutes (sometimes hundreds of miles) back into offices from which they had only recently moved. On information and belief, these policies had a disproportionately negative impact on older employees. Through these types of large-scale efforts and changes in employment policies, HP further demonstrated its intent to make HP "younger" by terminating the employment of older employees or forcing them out the door "voluntarily" while at the same time actively recruiting much younger employees to replace them.

### HP's Internal Policies to Hire Young Employees

41.     Even while HP was laying off thousands of its employees over several years under the WFR Plans that began in 2012, HP has been simultaneously hiring thousands of new employees to replace those terminated employees.

42.     In other words, since HP's so-called workforce "reduction" efforts began in 2012, HP has continued to hire aggressively. The only difference is that HP has hired a disproportionately large number of new employees under the age of 40 to replace employees aged 40 and older who were terminated.

43.     This is not a workforce "reduction." Rather, as Ms. Whitman herself admitted publicly, this is an effort to "recalibrate" (most modestly stated) or "fundamentally recreate" (most accurately stated) HP's workforce with a "whole host of young people." Regardless of whether HP believes it is recalibrating or fundamentally recreating its labor force, the simple fact is that it is engaging in illegal age discrimination.

44.     The fact that HP intentionally hired a disproportionately large number of younger workers to replace those it terminated is also supported by internal directives provided to HP's hiring managers by senior management.

45.     For example, in August 2013, HP's Human Resources department distributed written guidelines stating that HP's "New corporate requisition policy requires **75%** of all External hire requisitions be 'Graduate' or 'Early Career'" employees."

46.     HP's use of the words "Graduate" and "Early Career" in this document summarizing HP's new employment policy demonstrates its intent to hire younger workers.

47.     As HP defined the term, a "Graduate" hire was someone who was about to graduate or graduated within the previous 12 months.

48.     An "Early Career" hire was somebody who had completed his or her degree and had ***up to*** five years of experience related to the job for which they were applying.

49.     Furthermore, across HP, managers were advised in writing to "look for and create opportunities to enhance [their] labor structure" through "Early Career hiring."

50.     HP's Human Resources employees were also instructed to "[h]elp convert or repurpose" their "current requisitions, as appropriate, to Early Career requisitions."

51.     HP's Human Resources department knew its focus on hiring younger employees might raise some concerns with it older "long term" employees. In an internal memorandum, HP management recognized a need to address the obvious—specifically, to "***[a]ddress [the] issue of long term employees being perceive[d] as bypassed by the next gen[eration].***"

52.     Nonetheless, to attract younger employees, HP continued to use online job openings that contained blatant statements such as:

- This position is for a recent college graduate. To qualify, you must have graduated with your Bachelor's or Master's degree within the last 12 months.

- In order to be considered for this role, you must have graduated within 12 months of the start date. . . [W]e can only consider graduates who have graduated between August 2014 and September 2015.

- Must have graduated within 12 months of July, 2016.

9

- This position is for a recent college graduate. To qualify you must have received your last degree within the past 12 months.

- The candidate must be a recent graduate.

- We are looking for recent college graduate and early career candidates. . . .

- The successful candidate must be near degree completion (Dec 2015 or prior) or have graduated within the past 12 months.

- Must be a recent graduate (2015) or graduating by January 2016.

- Must have completed degree within the past 12 months.

- We are looking for a future, or recent (within 12 months) College Graduate. . . .

- This position is for a recent university graduate.

- First Level University degree awarded within the past 12 months.

- Recent (graduation date between July 2014 and September 2015 only) college graduate. . . .

- We are seeking candidates who have recently graduated. . . . Only applicants who have graduated within the past year (July 2014 - August 2015) will be considered for this role, and this will be verified during the background check.

- Recent college graduates preferred.

### *HP's Age Discrimination Is Willful*

53.    HP knew its practice of firing old and hiring young was discriminatory but it continued doing it anyway, making its age discrimination willful.

54.    At one point, HP even acknowledged that it "need[ed] to remove references to maximums or limits on years of experience in [its] posting[s], job titles, classifications of jobs and policies as it relates to our Early Career definition to mitigate any potential risk and litigation regarding discrimination of protected classes against our employment practices."

55.    Notably, HP did not suggest that it should rethink or reconsider its discriminatory hiring practices, but decided it should simply avoid using certain words in its job postings and advertisements, to "mitigate" the potential litigation risk.

56.    In fact, as seen in other cases involving illegal employment discrimination (e.g., race or gender discrimination), HP made blanket, stereotypical statements about large groups of

10

employees based entirely on their age. For example, in internal documentation, HP stated that anyone born between 1930 and 1946 could be considered a "Traditionalist" who moves "slow and steady" and seeks "part time work." As for "Baby Boomers" (born between 1946 and 1964), HP considered them to be "rule breakers," implying that this was undesirable. Conversely, when it came to "Millennials," HP made it clear that hiring new employees from this generation was highly desirable. Indeed, HP specifically adopted strategies for "integrat[ing] millennials into the workforce" and "educat[ing] managers and others on millennial characteristics."

57.     HP's decision to define and refer to entire segments of its employees as "slow and steady" or "rule breakers" based on the year in which those employees were born is not only callous, but is at the heart of the very type of discrimination that the ADEA and similar California laws were intended to prohibit. Furthermore, promoting such stereotypes only further exacerbates unjustified biases against large portions of HP's workforce based entirely on age.

58.     Plaintiff Dan Weiland observed this first-hand from his then-supervisor, Mark Wade, who described a recent phone call he had with HP's human resources team as follows:

> The theme on the EER call was, you know, college, college, college. Everything was about *refreshing HP's golden workforce*. That was kind of the theme. I think they woke up and said, "man, everybody running around this place is old." (emphasis added).

59.     As these comments demonstrate, HP was certainly effective in communicating to its hiring managers that HP had a clear desire to "refresh" its "golden workforce" with younger employees.

### *The Named Plaintiffs' Background*

### Donna Forsyth

60.     Plaintiff Donna Forsyth was hired by Hewlett-Packard Company on or about July 12, 1999. Her most recent position was a Manager on the Capabilities Team in the Global Corporate Services organization. When her employment was terminated, Ms. Forsyth was working for Hewlett Packard Enterprise Company in Bellevue, Washington.

61.     Ms. Forsyth performed her job duties in a satisfactory and competent manner. She always met or exceeded HP's expectations.

62.     At HP, Ms. Forsyth was involved with and knowledgeable about HP's Graduate and Early Career hiring efforts. She has first-hand knowledge of HP's aggressive efforts to hire younger "millennial" employees to replace the many thousands of employees terminated under HP's WFR Plans.

63.     In May 2016, HP notified Ms. Forsyth, then 62 years old, that she was being terminated pursuant to HP's ongoing WFR Plans. Her last day of work at HP was May 27, 2016.

64.     Consistent with HP's internal policies and practices as alleged in this Complaint, when Ms. Forsyth's employment was terminated, she was replaced with "Graduate" or "Early Career" hires who were significantly under the age of 40.

65.     Ms. Forsyth filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) that raised class-wide claims for relief, and she received a Notice of Right to Sue notice dated August 2, 2016. Therefore, Ms. Forsyth has exhausted her administrative remedies.

### Sidney Staton

66.     Plaintiff Sidney Staton was hired by Hewlett-Packard Company in February 2014. His most recent position was a Sales Enablement Specialist in the Enterprise Services organization. When his employment was terminated, Mr. Staton was working for Hewlett-Packard Company near Sacramento, California.

67.     Mr. Staton performed his job duties in a satisfactory and competent manner. He always met or exceeded HP's expectations.

68.     About six months prior to being laid off, Mr. Staton was handpicked to join another group within HP performing slightly different work. However, his then-manager insisted that Mr. Staton remain in his current group because he was an important part of his then-team. But then, after being forced to forego the new opportunity presented to him, HP shifted the duties of Mr. Staton's team to a group of new hires in their 20's and suddenly Mr. Staton was no longer considered important to that team.

69.     In April 2015, HP notified Mr. Staton, then 54 years old, that he was being terminated pursuant to HP's ongoing WFR Plans. His last day of work at HP was in April 2015.

70.     Consistent with HP's internal policies and practices as alleged in this Complaint, when Mr. Staton's employment was terminated, he was replaced with "Graduate" or "Early Career" hires who were significantly under the age of 40.

71.     After being terminated, Mr. Staton executed the Waiver and General Release Agreement that HP offered to him, which purported to waive Mr. Staton's age discrimination claims. However, like thousands of other employees who signed similar agreements presented to them by HP, Mr. Staton's waiver of claims was not knowing and voluntary. Specifically, the Waiver and General Release Agreement was, among other things, internally inconsistent and unclear and contained provisions that violate the ADEA and applicable regulations. Therefore, Mr. Staton's agreement, like the agreements of thousands of other former HP employees, was not written in a manner calculated to be understood by the average individual eligible for HP's WFR Plans. Any alleged waivers of age discriminations claims contained in those agreements are not legally valid.

72.     Additionally, for the reasons explained above, the "Attachment A" form supplied to Mr. Staton, like the Attachment A forms supplied to thousands of other former HP employees, did not inform Mr. Staton in a manner calculated to be understood by the average individual eligible to participate in HP's WFR Plans as to the job titles and ages of all individuals eligible or selected for the applicable WFR Plan as well as those not eligible and not selected for the same.

73.     Although Mr. Staton did not file a charge of discrimination with the EEOC, his claims are preserved by the filing of Mr. Weiland's charge of discrimination.

Arun Vatturi

74.     Plaintiff Arun Vatturi was hired by Hewlett-Packard Company in 2001. His most recent position at the company was a Master Black Belt of PC Quality. When his employment was terminated, Mr. Vatturi worked for HP Inc. in its Palo Alto, California offices.

75.     Mr. Vatturi performed his job duties in a satisfactory and competent manner. He always met or exceeded HP's expectations.

76.     Mr. Vatturi's job was essentially to work on HP's internal systems to improve procedures and save the company money. In one instance alone, Mr. Vatturi saved HP more than

13

1    $70 million through the implementation of his ideas. He was one of the 0.5% of employees at HP

2    who received the company's top performance review rating of "significantly exceeds

3    expectations" in HP's forced ranking system.

4        77.    Shortly before terminating Mr. Vatturi, and despite his stellar performance

5    reviews, HP moved him to a low-level data collection position working with two young

6    independent contractors located in India.

7        78.    In January 2016, HP notified Mr. Vatturi, then 52 years old, that he was being

8    terminated pursuant to HP's ongoing WFR Plans. His last day of work at HP was January 22,

9    2016.

10       79.    Consistent with HP's internal policies and practices as alleged in this Complaint,

11   when Mr. Vatturi's employment was terminated, he was replaced with "Graduate" or "Early

12   Career" hires who were significantly under the age of 40.

13       80.    Mr. Vatturi filed a charge of discrimination with the EEOC that raised class-wide

14   claims for relief. He received a Notice of Right to Sue notice dated August 2, 2016. Therefore,

15   Mr. Vatturi has exhausted his administrative remedies.

16                                    Dan Weiland

17       81.    Plaintiff Dan Weiland was hired by Hewlett-Packard Company as an independent

18   contractor in 2010. In February 2012, he was hired by Hewlett-Packard Company as a full-time

19   employee. His most recent position at the company was Project/Program Manager and Acting

20   Group Chief of Staff in HP's Test Operations & Technologies organization. When his

21   employment was terminated, Mr. Weiland worked for Hewlett-Packard Corporation in its

22   Houston, Texas offices.

23       82.    Mr. Weiland performed his job duties in a satisfactory and competent manner. He

24   always met or exceeded HP's expectations.

25       83.    In his last performance review before being laid off, HP praised Mr. Weiland as a

26   "solid contributor" who brought a "positive, 'can do' attitude" with him every day. HP also said

27   Mr. Weiland was "[a] pleasure to work with, well grounded, [had] outstanding dependability, and

28   work ethic." In 2014, Mr. Weiland received HP's "Making a Difference" award.

84.     On or about September 9, 2014, HP notified Mr. Weiland that he was eligible to participate in HP's 2014 Phased Retirement program. His then-manager, Bland Quattlebaum, had several conversations with Mr. Weiland to try to persuade him to participate in the retirement program, which Mr. Weiland declined. Mr. Weiland wanted to continue working.

85.     In July 2015, HP notified Mr. Weiland, then 63 years old, that he was being terminated as part of HP's ongoing WFR Plans. His last day of work was July 24, 2015.

86.     Consistent with HP's internal policies and practices as alleged in this Complaint, when Mr. Weiland's employment was terminated, he was replaced with "Graduate" or "Early Career" hires who were significantly under the age of 40.

87.     Mr. Weiland filed a charge of discrimination with the EEOC on October 5, 2016, raising class-wide claims for relief. He received a Notice of Right to Sue dated August 11, 2016. Therefore, Mr. Weiland has exhausted his administrative remedies.

### *Class Allegations*

88.     The above-named Plaintiffs are representative of the following class for purposes of the ADEA:

#### The "Nationwide Class"

> All residents of the United States aged 40 and older who were employed by HP and had their employment terminated by HP pursuant to a WFR Plan on or after May 23, 2012.

89.     Plaintiffs and the members of the Nationwide Class were all: (a) aged 40 years or more at the time of termination, (b) terminated pursuant to Defendants' common WFR Plans, and (c) terminated pursuant to HP's common discriminatory employment policies, practices and procedures because of their age.

90.     HP's discriminatory practices and policies are centralized. As explained above, HP instituted a company-wide policy of firing HP's older employees (who aged 40 years or older) and hiring a disproportionately large number of significantly younger employees (who were under the age of 40). This policy was carried out through HP's Human Resources department, as alleged in greater detail above. HP's highest levels of management implemented the

discriminatory policies and practices described herein, and they were uniformly carried out through all levels of HP.

91.     Common questions of law and fact among Plaintiffs and the members of the Nationwide Class include, but are not limited to: (a) whether HP unlawfully terminated Nationwide Class members in violation of the ADEA, (b) whether HP engaged in a pattern and practice of age discrimination when selecting members of the Nationwide Class for termination pursuant to a WFR Plan, (c) whether HP through its WFR Plans willfully and intentionally discriminated against members of the Nationwide Class because of their age, (d) whether HP's common employment policies and practices adversely impacted members of the Nationwide Class; and (e) whether HP's purported reasons for laying off members of the Nationwide Class pursuant to a WFR Plan were pretextual.

92.     Counts for violations of the ADEA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by Plaintiffs, because their claims are similar to the claims of the members of the Nationwide Class.

93.     Plaintiffs and the members of the Nationwide Class are similarly situated because, among other things, (a) they all worked for HP and are all aged 40 and older, (b) they are all residents of the United States, (c) they were all subjected to the same company-wide policy of age discrimination, (d) they were all subjected to the same company-wide policies that adversely impacted them because of their age, (e) they were all terminated pursuant to a WFR Plan because of their age, and (e) they were all given the same boilerplate reason for being selected for the WFR Plans.

94.     Individual variations among Plaintiffs and members of the Nationwide Class, such as location, education, or job responsibilities, do not undermine common issues at stake here. Plaintiffs allege a single scheme of age discrimination initiated at the very top of HP and carried out through the entire company. Regardless of where an individual worked in the United States or to which manager the individual reported, each member of the Nationwide Class faced the same discrimination and discriminatory policies.

COMPLAINT

95.     Plaintiffs Sidney Staton and Arun Vatturi also seek to represent the following class for purposes of California state law claims pursuant to Rule 23 of the Federal Rules of Civil Procedure:

<u>The "California Class"</u>

> All persons aged 40 or older who were employed by HP in the State of California who had their employment terminated by HP pursuant to a WFR Plan on or after May 23, 2012.

96.     The California Class consists of hundreds if not thousands of former HP employees who were notified of their termination when they were aged 40 and older, making joinder of all members of the class impracticable.

97.     The common questions of law and fact among Plaintiffs Staton and Vatturi and the members of the California Class include, but are not limited to: (a) whether HP's conduct violated the California Fair Employment and Housing Act, (b) whether HP's conduct was unlawful, unfair or fraudulent in violation of California's Unfair Competition Law, (c) whether HP's conduct constitutes an unlawful employment practice in violation of public policy, (d) whether HP engaged in a pattern and practice of age discrimination when selecting individuals for termination pursuant to a WFR, (e) whether HP based its WFR selection process on reasonable factors other than age that were for a business necessity, (f) whether HP through its WFR Plans willfully and intentionally discriminated against California Class members because of their age, whether HP's discrimination had a disparate impact on members of the California Class, and (g) whether HP's purported reasons for laying off California Class members pursuant to the WFR Plans are pretextual.

98.     Plaintiffs Staton's and Vatturi's claims and the relief sought for those claims are typical of the claims and relief sought of the California Class. Like the members of the California Class, Staton and Vatturi are aged 40 or older and worked for HP in California until they were terminated pursuant to the WFR Plans. Staton and Vatturi were, therefore, subjected to the same discriminatory policies and practices as the other members of the California Class. The relief necessary to remedy Staton's and Vatturi's claims is the same relief necessary to remedy the claims of the California Class members in this case.

99.     Plaintiffs Staton and Vatturi will adequately represent the interests of the members of the California Class. Staton's and Vatturi's interests are co-extensive with those of the California Class. They seek to remedy HP's discriminatory employment policies, procedures and practices and will fairly and vigorously pursue claims on behalf of the California class. Staton and Vatturi are willing and able to represent the California Class fairly and vigorously as they pursue their individual claims in this action.

100.     Plaintiffs Staton and Vatturi have retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of Staton's and Vatturi's counsel to litigate completely the individual and class claims at issue in this case satisfy the adequacy of representation requirement.

101.     HP has acted or refused to act on grounds that apply generally to all members of the California Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the California Class as a whole pursuant to Rule 23(b)(2).

102.     HP has failed to create adequate incentives for its managerial and supervisory personnel to comply with laws regarding the employment policies, practices, and procedures described herein.

103.     HP has acted on grounds generally applicable to Plaintiffs Staton and Vatturi and the California Class by adopting and implementing systemic policies, practices, and procedures that are discriminatory. Disparate impact and systemic age discrimination are HP's standard operating procedures rather than sporadic occurrences.

104.     In addition, HP has, in a discriminatory way, refused to act on grounds generally applicable to the California Class by terminating them pursuant to a WFR Plan based on their age.

105.     HP's systemic discriminatory acts and refusals to act have made appropriate the requested final injunctive and declaratory relief with respect to the California Class as a whole.

106.     All requirements of Rule 23(b)(3) are satisfied here.

107.     The common issues of fact and law affecting the claims of Plaintiffs Staton and Vatturi and the California Class members predominate over any issues affecting only individual

claims. The answers to the common questions listed above will be the same for Plaintiffs Staton and Vatturi and all California Class members and will resolve all core issues in the case, once, on common evidence and on a class-wide basis.

108.    Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiffs Staton and Vatturi and the California Class members.

109.    Plaintiffs Staton and Vatturi and the California Class members were injured by the same discriminatory policies and practices, and these injuries are redressable through systemic relief and class-wide remedies.

110.    In order to achieve such class-wide relief, Plaintiffs Staton and Vatturi will establish the existence of systemic age discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the California Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs Staton and Vatturi, the California Class, and HP.

111.    The cost of proving the disparate treatment and impact of HP's policies, procedures and practices makes it impracticable for Plaintiffs Staton and Vatturi and members of the California Class to prosecute their claims individually.

112.    Class-wide liability and the relief sought herein present common issues capable of class-wide resolution, which would advance the interests of the parties in an efficient manner such that the requirements of Rule 23(c)(4) are also satisfied here.

## COUNT 1 –AGE DISCRIMINATION UNDER THE ADEA
### (On behalf of all Plaintiffs and the Nationwide Class)

113.    Plaintiffs hereby incorporate each paragraph above as though fully set forth here.

114.    This is a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) filed by the above-named Plaintiffs individually and on behalf of similarly situated persons who opt into this action by filing an appropriate notice.

115.     As more fully set forth elsewhere in this Complaint, HP engaged in an unlawful pattern or practice of age discrimination that adversely affected Plaintiffs and the Nationwide Class members in violation of 29 U.S.C. § 621, et seq.

116.     Plaintiffs and the Nationwide Class members were 40 years of age or older at the time of they were terminated.

117.     HP terminated Plaintiffs and the Nationwide Class members because of their age, and would not have terminated Plaintiffs or the Nationwide Class members but for their age.

118.     The unlawful pattern or practice of age discrimination by HP alleged herein constitutes a willful violation of the ADEA. Plaintiffs' charges of discrimination filed with the EEOC asserted claims on behalf both of the Plaintiffs themselves and others similarly situated, and adequately placed HP on notice that a collective action was forthcoming.

119.     Plaintiffs and others similarly situated were adversely affected by the pattern or practice of unlawful, willful age discrimination by HP as elsewhere described herein. Plaintiffs and all similarly situated individuals have suffered actual damages in an amount to be determined at trial.

120.     This is also a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) filed by the above-named Plaintiffs individually and on behalf of similarly situated persons who opt into this action by filing an appropriate notice, and an individual action under the ADEA.

121.     Plaintiffs and members of the Nationwide Class were 40 years of age or older at the time they were terminated.

122.     HP used WFR Plans that had a significantly adverse or disproportionate impact on Plaintiffs and the Nationwide Class members and caused Plaintiffs and the Nationwide Class members to be terminated. HP's policies and practices have had a disparate impact on Plaintiffs and the Nationwide Class members and were not based upon a reasonable factor other than age.

123.     As set forth more fully above, HP has utilized practices, policies and procedures that have disparately impacted former employees of HP, resulting in an unlawful pattern or practice of age discrimination in violation of the ADEA, 29 U.S.C. § 621 et seq. There was no

20

1  legitimate, non-discriminatory reason for its action, and any reasons HP may advance are

2  pretextual.

3      124.   The above-named Plaintiffs and others similarly situated were disparately

4  impacted by HP's practices, policies and procedures, in violation of the ADEA.

5      125.   Each of the above-named Plaintiffs has been disparately impacted by HP's

6  practices, policies and procedures, in violation of the ADEA.

7      126.   As a direct and proximate result of the aforesaid age discrimination by HP, each of

8  the Plaintiffs and all others similarly situated have suffered damages in an amount to be

9  determined at trial.

10  **COUNT 2 – AGE DISCRIMINATION UNDER THE FEHA**
**(On behalf of Plaintiffs Sidney Staton and Arun Vatturi and the California Class only)**

11

12      127.   Plaintiffs Staton and Vatturi hereby incorporate each paragraph above as though

13  fully set forth here.

14      128.   This is a representative action under the California Fair Employment and Housing

15  Act, Cal. Gov't Code § 12900, *et seq*. ("FEHA"). The FEHA prohibits employers from

16  discriminating on the basis of age. Cal. Gov. Code § 12940(a). Plaintiffs Staton and Vatturi bring

17  their FEHA claims on behalf of themselves and a class of similarly situated individuals.

18      129.   HP has engaged in a pattern and practice of discriminating against individuals

19  aged 40 and older by knowingly and intentionally firing a disproportionately large number of

20  workers aged 40 and older while simultaneously hiring a disproportionately large number of

21  workers under the age of 40.

22      130.   As a direct and proximate result of HP's intentional discrimination, Plaintiffs

23  Staton and Vatturi and a class of similarly situated individuals have had their employment

24  terminated.

25      131.   HP has used employment policies and practices related to hiring and firing that

26  have had a disparate impact on the basis of age (discriminating against workers who are aged 40

27  and older) that are not job-related for the positions at issue, not consistent with business necessity,

28  and are not necessitated by a reasonable factor other than age.

132.    HP's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiffs Staton and Vatturi and the California Class members, entitling them to punitive damages.

133.    HP's policies, procedures, and practices have produced a disparate impact on Plaintiffs Staton and Vatturi and the California Class members with respect to the terms and conditions of their employment.

134.    By reason of the continuous nature of HP's discriminatory conduct, which persisted throughout the employment of Plaintiffs Staton and Vatturi and the California Class members, they are entitled to application of the continuing violations doctrine to all violations alleged herein.

135.    HP's actions constitute unlawful discrimination in violation of the FEHA.

136.    As a direct and proximate result of the aforesaid age discrimination by HP, Plaintiffs Staton and Vatturi and all similarly situated individuals have suffered damages in an amount to be determined at trial.

## COUNT 3 – AGE DISCRIMINATION IN VIOLATION OF PUBLIC POLICY
**(On behalf of Plaintiffs Sidney Staton and Arun Vatturi and the California Class only)**

137.    Plaintiffs Staton and Vatturi hereby incorporate each paragraph above as though fully set forth here.

138.    HP discriminated against Plaintiffs Staton and Vatturi and the California Class members by terminating their employment on the basis of their age.

139.    HP's discrimination constitutes an unlawful employment practice in violation of California public policy.

140.    As a proximate result of HP's discriminatory conduct, Plaintiffs Staton and Vatturi and the California Class members have been injured in their health, strength, and activity, all of which have caused and continue to cause them to suffer mentally and emotionally.

141.    As a further proximate result of the conduct alleged herein, Plaintiffs Staton and Vatturi and the California Class members have lost earnings, lost employment opportunities, and will lose job benefits in an amount yet to be ascertained.

142.    HP discriminated on the basis of age with fraud, oppression, and malice. Plaintiffs Staton and Vatturi and the California Class members are therefore entitled to exemplary and punitive damages in an amount to be determined at trial.

**COUNT 4 – UNFAIR COMPETITION**
**CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ***
**(On behalf of Plaintiffs Sidney Staton and Arun Vatturi and the California Class only)**

143.    Plaintiffs Staton and Vatturi hereby incorporate each paragraph above as though fully set forth here.

144.    Each of the Defendants is a "person" as defined under California Business & Professions Code § 17021.

145.    HP's discrimination against its older employees, as alleged herein, constitutes unlawful and/or unfair and/or fraudulent activity prohibited by the California Business & Professions Code § 17200. As a result of its unlawful and/or unfair and/or fraudulent acts, HP reaped and continues to reap unfair benefits at the expense of Plaintiffs Staton and Vatturi and the California Class members. HP should be enjoined from these activities.

146.    Accordingly, Plaintiffs Staton and Vatturi and the California Class members are entitled to restitution with interest and other equitable relief.

**JURY DEMAND**

147.    Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court make orders and enter judgment in their favor and against HP as follows:

1.    Making such orders as are necessary and appropriate to certify this case for treatment as a collective action under the ADEA;

2.    Making such orders as are necessary and appropriate to certify the California claims for class relief;

3.    Designating the above-named Plaintiffs as representatives of the Nationwide Class;

23

1    4.    Designating Plaintiffs Sidney Staton and Arun Vatturi as representatives of the

2  California Class;

3    5.    Designating the undersigned as class counsel;

4    6.    Granting injunctive relief ordering HP to stop discriminating against its older

5  workers based on age;

6    7.    Awarding each of the Plaintiffs and all members of the Nationwide Class and

7  California Class damages in an amount to be determined at trial, including but not limited to back

8  pay and benefits, together with interest thereon;

9    8.    Restoring each of the Plaintiffs and all members of the Nationwide Class and

10  California Class to positions comparable to those from which they were terminated or, in lieu of

11  reinstatement, awarding each Plaintiff and all members of the Nationwide Class and California

12  Class front pay and benefits for the period remaining until that person's expected retirement age;

13    9.    Awarding each Plaintiff and all members of the Nationwide Class liquidated

14  damages pursuant to the ADEA in an amount equal to that person's back pay and benefits award,

15  together with interest thereon;

16    10.    Awarding Plaintiffs Sidney Staton and Arun Vatturi and all members of the

17  California Class compensatory damages, restitution, and punitive damages pursuant to their state

18  law claims;

19    11.    Awarding Plaintiffs and all members of the Nationwide Class and the California

20  Class their attorneys' fees and costs pursuant to the ADEA and California state law;

21    12.    Awarding prejudgment interest, costs and disbursements; and

22    13.    Awarding such other and further relief, including but not limited to declaratory

23  relief, as the Court and/or jury deems equitable, appropriate, and just.

24  DATE: August 18, 2016                          ANDRUS ANDERSON LLP

25                                                  By: _____ /s/ Jennie Lee Anderson _____
                                                            Jennie Lee Anderson
26

27                                                  Jennie Lee Anderson (SBN 203586)
                                                    jennie@andrusanderson.com
28                                                  ANDRUS ANDERSON LLP

1                        155 Montgomery Street, Suite 900
San Francisco, CA 94104

2                        Phone:     (415) 986-1400
Fax:        (415) 986-1474

3

4                        DOUGLAS P. DEHLER *pro hac vice pending*
doug.dehler@wilaw.com

5                        PAUL W. ZIMMER *pro hac vice pending*
paul.zimmer@wilaw.com

6                        O'NEIL, CANNON, HOLLMAN,
  DEJONG & LAING S.C.

7                        111 East Wisconsin Avenue, Suite 1400
Milwaukee, WI 53202

8                        Phone:     (414) 276-5000
Fax:        (414) 276-6581

9                        BRUSE LOYD
bruse@jgl-law.com

10                      JONES, GILLASPIA & LOYD LLP
4400 Post Oak Parkway, Suite 2360

11                      Houston, TX 77027
Phone:     (713) 225-9000

12                      Fax:        (713) 225-6126

13                      BRIAN H. MAHANY
brian@mahanylaw.com

14                      MAHANY LAW
8112 W. Bluemound Road, Suite 101

15                      Milwaukee, WI 53213
Phone:     (414) 258-2375

16                      Fax:        (414) 258-2521

17                      *Attorneys for Plaintiffs and the Proposed Classes*

18

19

20

21

22

23

24

25

26

27

28

25

---

COMPLAINT