BENJAMIN A. EMMERT, SBN 212157
bemmert@littler.com
LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, California 95113.2303
Telephone: 408.998.4150
Facsimile: 408.288.5686

LISA A. SCHRETER, admitted *pro hac vice*
lschreter@littler.com
RICHARD W. BLACK, admitted *pro hac vice*
rblack@littler.com
LITTLER MENDELSON, P.C.
3344 Peachtree Road NE, Suite 1500
Atlanta, GA 30326
Telephone: 404.233.0330
Facsimile: 404.233.2361

Attorneys for Defendants
HP INC. AND HEWLETT PACKARD ENTERPRISE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONNA J. FORSYTH, SIDNEY L. STATON III, ARUN VATTURI, DAN WEILAND, SHAFIQ RAHMAN, ED KAPLAN, KAREN BECKS, AND ALBERT R. DEVERE for and on behalf of themselves and other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HP INC. and HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>Defendants. | Case No. 5:16-CV-04775-EJD<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO ENJOIN CLASS ARBITRATION**<br><br>Date: February 8, 2018<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila<br>Dept.: Courtroom 4, 5th Floor<br><br>First Amended Complaint Filed: 12/19/2016 |

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION

CASE NO. 5:16-CV-04775-EJD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. THE COURT SHOULD ENJOIN THE CLASS ARBITRATION AND ORDER THE ARBITRATION PLAINTIFFS TO PROCEED WITH INDIVIDUAL ARBITRATIONS ............................................................................................................ 2

    A. The Four Factor Analysis Supports Enjoining the Class Arbitration Before the AAA ...................................................................................................... 2

        1. Likelihood of success on the merits .................................................... 2

        2. Irreparable Harm .................................................................................. 6

        3. Balance of the Hardships .................................................................... 8

        4. Public Interest .................................................................................... 11

    B. Any Later Determination On The CWA Does Not Preclude Individual Arbitrations ................................................................................................... 13

III. CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Alliance for the Wild Rockies v. Cottrell,
   632 F.3d 1127 (9th Cir. 2011) ............................................................................................... 6

AT&T Techs. Inc. v. Commc'ns Workers of Am.,
   475 U.S. 643 (1986) ........................................................................................... 1, 3, 6, 12

AT&T Mobility LLC v. Bernardi,
   2011 WL 5079549 (N.D. Cal. 2011) ...................................................................................... 6

Behr v. AADG, Inc.,
   No. 14-CV-3075-CJW, 2016 WL 4119692 (N.D. Iowa July 29, 2016) ............................. 10

Chiron Corp. v. Ortho Diagnostic Sys., Inc.,
   207 F.3d 1126 (9th Cir. 2000) ............................................................................................... 3

Dean Witter Reynolds Inc. v. Byrd,
   470 U.S. 213, 218 (1985) ....................................................................................................... 3

LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters
   Local 63,
   849 F.2d 1236 (9th Cir. 1988) ........................................................................................... 6, 7

Morgan Stanley & Co. LLC v. Couch,
   134 F.Supp.3d 1215 (E.D. Cal. 2015) ............................................................................... 6, 7

Pagliolo v. Guidant Corp.,
   483 F. Supp. 2d 847 (D. Minn. 2007) ................................................................................. 10

Parsons v. Pioneer Seed Hi-Bred Intern., Inc.,
   447 F.3d 1102 (8th Cir. 2006) ............................................................................................... 8

Ribble v. Kimberley-Clark Corp.,
   2012 WL 589252 (E.D. Wis. Feb. 22, 2012) ................................................................ 11, 12

Ribble v. Kimberly Clark Corp.,
   No. 09-C-643, 2010 WL 4627929 (E.D. Wis. Nov. 9, 2010) ........................................... 8, 9

Ribble v. Kimberly-Clark Corp.,
   No. 09-C-643, 2012 WL 589252 (E.D. Wis. Feb. 22, 2012) ............................................ 9, 11

Romero v. Allstate Ins. Co.,
   1 F. Supp. 3d 319 (E.D. Pa. 2014) ........................................................................................ 9

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION                    ii.                   CASE NO. 5:16-CV-04775-EJD

Rupert v. PPG Indus., Inc.,
  Civ. A. No. 07-cv-0705, 2009 WL 596014 (W.D. Pa. Feb. 26, 2009) ..................... 11

ServiceMaster Holding Corp. v. Hall,
  No. 2:13-cv-02980-JPM-dkv, 2014 WL 12531119 (W.D. Tenn. July 16, 2014) ............ 7, 12

Syverson v. Int'l Bus. Machines Corp.,
  472 F.3d 1072 (9th Cir. 2007) ...................................................... 11, 12

Tiffany v. KO Huts, Inc.,
  178 F.Supp.3d 1140 (W.D. Okla. 2016) .................................................. 7

United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,
  363 U.S. 574 (1960) ................................................................... 1

Wachovia Securities, LLC v. Raifman,
  2010 WL 4502360 (N.D. Cal. 2010) ..................................................... 12

Winters v. Natural Res. Def. Council, Inc.,
  555 U.S. 7 (2008) ..................................................................... 6

**Statutes**

9 U.S.C. § 4 ............................................................................. 3

29 U.S.C. § 626 ...................................................................... 8, 9

**Other Authorities**

29 C.F.R. § 1625 ......................................................................... 9

Rupert v. PPG Indus., Inc.,
  Civ. A. No. 07-cv-0705, 2009 WL 596014 (W.D. Pa. Feb. 26, 2009) ..................... 11

ServiceMaster Holding Corp. v. Hall,
  No. 2:13-cv-02980-JPM-dkv, 2014 WL 12531119 (W.D. Tenn. July 16, 2014) ............ 7, 12

Syverson v. Int'l Bus. Machines Corp.,
  472 F.3d 1072 (9th Cir. 2007) ...................................................... 11, 12

Tiffany v. KO Huts, Inc.,
  178 F.Supp.3d 1140 (W.D. Okla. 2016) .................................................. 7

United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,
  363 U.S. 574 (1960) ................................................................... 1

Wachovia Securities, LLC v. Raifman,
  2010 WL 4502360 (N.D. Cal. 2010) ..................................................... 12

Winters v. Natural Res. Def. Council, Inc.,
  555 U.S. 7 (2008) ..................................................................... 6

**Statutes**

9 U.S.C. § 4 ............................................................................. 3

29 U.S.C. § 626 ...................................................................... 8, 9

**Other Authorities**

29 C.F.R. § 1625 ......................................................................... 9

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION                iii.                    CASE NO. 5:16-CV-04775-EJD

## I. INTRODUCTION

In their opposition to Defendants' Motion to Enjoin Class Arbitration, Plaintiffs further confirm that they are seeking a single, joint arbitration on the issue of the enforceability of the releases signed by each Arbitration Plaintiff, so that a single arbitrator will render a single, global decision that would apply not only to each Arbitration Plaintiff, but to all potential claimants who signed Release Agreements (presumably including members of the putative class and collective). Plaintiffs make this claim despite the fact that the specific facts and circumstances relating to the execution of each release, including whether the disclosures relating to an individual employee's decisional unit comply with the OWBPA, are specific to each individual. Furthermore, Plaintiffs wrongly claim that the Court ordered a joint arbitration for all Arbitration Plaintiffs, which would violate the express terms of the parties' arbitration agreements. In reality, the Court granted Defendants' separate motions to compel individual arbitrations, each of which sought to compel arbitration in accordance with the terms of the parties' arbitration agreements.

Plaintiffs' position is illogical, is in violation of the arbitration agreement signed by each of the Arbitration Plaintiffs, conflicts with the Court's September 20 Order, and violates well-established law. Nowhere in their opposition brief do Plaintiffs claim that their Class Arbitration complies with the arbitration agreements signed by each Arbitration Plaintiff, the terms of which were enforced by the Court's September 20 Order compelling arbitration. Furthermore, Plaintiffs ignore well-settled precedent from the United States Supreme Court that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs. Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Plaintiffs also ignore the express language of the arbitration agreements barring joint arbitrations, requiring individual arbitrations, requiring pre-arbitration mediation, and requiring that individual arbitrations be conducted in the city where the employee last worked.

By their motion to enjoin, Defendants are merely seeking to enforce the express terms of the arbitration agreements requiring individual arbitrations, as ordered by the Court, and to enjoin the improper Class Arbitration. Plaintiffs' suggestion that Defendants' motion to enjoin is somehow

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION     1.     CASE NO. 5:16-CV-04775-EJD

improper, vexatious or an abuse of the litigation process is wholly unfounded and without any basis in fact or law.

## II. THE COURT SHOULD ENJOIN THE CLASS ARBITRATION AND ORDER THE ARBITRATION PLAINTIFFS TO PROCEED WITH INDIVIDUAL ARBITRATIONS.

Plaintiffs do not dispute that the Court has the power to enjoin the Class Arbitration. Similarly, Plaintiffs do not dispute that the four-factor analysis set forth in Defendants' motion is the appropriate standard to be applied by the Court. Rather, Plaintiffs argue only that the four factors do not favor an injunction in this case. Plaintiffs are wrong, as the four factors strongly favor enjoining the Class Action Arbitration currently before the AAA.

### A. The Four Factor Analysis Supports Enjoining the Class Arbitration Before the AAA.

#### 1. Likelihood of success on the merits.

Plaintiffs concede that their Class Action Arbitration Demand does not comply with the terms of the arbitration agreements signed by the Arbitration Plaintiffs. Plaintiffs state: "Defendants essentially argue that the RA provides for individual arbitration, they sought to compel individual arbitration, and the Court granted individual arbitration. Preliminarily, this argument presupposes that the RAs have been found valid and must be enforced according to their terms, but this question has not yet been addressed."[1] The Arbitration Plaintiffs seek a joint arbitration requesting a single, global ruling on the validity and enforceability of the Release Agreements *before* proceeding with individual arbitration in accordance with the terms of the arbitration agreements. Plaintiffs make this claim without citing any language of the actual arbitration agreement or any case law to support their argument. Rather, Plaintiffs falsely claim Defendants requested, and the Court expressly ordered, a joint arbitration to make a single determination whether all Release Agreements at issue in this case are "valid" before individual arbitrations may proceed in accordance with the terms of the arbitration agreements. Plaintiffs misconstrue not only the fundamental nature of arbitration, but also the express language of the arbitration agreements in question, the Defendants' prior motions to compel, and the Court's September 20 Order.

---

[1] Dkt. No. 148 at 12:24-27.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION TO ENJOIN CLASS ARBITRATION

2.

CASE NO. 5:16-CV-04775-EJD

It is a fundamental principle of arbitration jurisprudence that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., 7 475 U.S. at 648 (internal quotations omitted). The district court is not authorized to modify arbitration agreements or direct parties to arbitration in a manner that fails to comply with the terms of the arbitration agreement. Rather, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead 'mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

Here, this fundamental principle requires that the parties proceed with individual arbitrations in accordance with the terms of the arbitration agreements signed by each Arbitration Plaintiff. As made clear in the multiple motions to compel filed by Defendants, each arbitration agreement precludes class or collective arbitration and requires individual arbitrations. In addition to the express prohibition to class and collective actions found in the CAW, the arbitration agreements require arbitrations be conducted "before a neutral arbitrator and/or arbitration sponsoring organization, selected by mutual agreement, in or near the city in which Employee was last employed by the Company."[2] Plaintiffs' joint, nation-wide Class Action Arbitration Demand directly violates these express terms.[3] In addition, Plaintiffs' assertion that San Francisco "is the most appropriate venue"[4] reflects Plaintiffs' disregard for compliance with the terms of the arbitration agreements signed by the Arbitration Plaintiffs, as San Francisco is not an appropriate venue for a

---

[2] Release Agreement § 13.
[3] Plaintiffs' claim that Defendants "refused to cooperate" is false. (Dkt. No. 148 at 5.) Upon receiving Plaintiffs' improper request for joint arbitration, Defendants informed Plaintiffs that the arbitrations should be individual. Dkt. No. 143-1, Decl. of R. Black ¶ 5, Exhibit C, Gibson Letter dated October 4, 2017. To acquiesce in Plaintiffs' attempt to initiate a single, classwide arbitration would have violated the Court's September 20 Order and the individual contracts that governed the arbitration of the claims of each individual Arbitration Plaintiff.
[4] Dkt. No. 148 at 6:13-14.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION           3.           CASE NO. 5:16-CV-04775-EJD

single Arbitration Plaintiff.[5]

Furthermore, the agreements state that, "[a]fter submission of the written claim for arbitration, the parties shall submit the matter to non-binding mediation before a mutually selected neutral mediator," and that the claim shall be submitted to binding arbitration only if the mediation is unsuccessful.[6] The Arbitration Plaintiffs have again violated the arbitration agreements by refusing to seek pre-arbitration mediation, as requested by Defendants. In addition, the arbitration agreements expressly state that they are to be "strictly construed."[7] Indeed, nothing in the Release Agreements or in the arbitration agreements, in particular, authorizes the joint, nation-wide arbitration seeking the class-wide relief demanded by the Arbitration Plaintiffs.

Furthermore, Defendants never requested any such joint, nation-wide Class Arbitration, and the Court never ordered any such proceeding. In their motions to compel, Defendants consistently and repeatedly requested an order compelling the Arbitration Plaintiffs to "arbitrate their claims in accordance with the terms of their agreements and staying this case in all other respects" and, specifically, "to arbitrate their claim that the Release Agreement is unenforceable in accordance with their respective agreements."[8] In addition, Defendants quoted the arbitration agreement to be enforced, including the provision requiring individual arbitration in the city in which the employee was last employed.[9] Recognizing that the state contract law applicable to each individual Arbitration Plaintiff would be different in each of the individual arbitration proceedings, Defendants filed eleven separate motions to compel to address the specific law applicable to each Arbitration Plaintiff.[10] Despite Plaintiffs' contention to the contrary,[11] Defendants never agreed to a joint arbitration on the issue of whether the release agreements are enforceable.

Had Defendants intended to request a joint, nation-wide arbitration on the issue of the

---

[5] Dkt. No. 143-1, Decl. of R. Black ¶ 12, Exhibit J, Letter from L. Schreter, attached chart of Arbitration Plaintiffs at Exhibit C.
[6] Release Agreement § 13.
[7] Release Agreement § 13.
[8] Dkt. Nos. 75 at 1, 2, 17; see also Dkt. Nos. 99-108 at 1, 2, 15.
[9] Dkt. Nos. 75 at 4; Dkt. Nos. 99-108 at 4.
[10] Because Plaintiffs filed a consolidated opposition brief in response to the motions to compel the Opt-in Plaintiffs, Defendants filed a consolidated reply. Dkt. No. 113 at n.1.
[11] Dkt. No. 148 at 24.

enforceability of the Release Agreements outside the express terms of the arbitration agreement, Defendants could easily have done so, but they instead sought individual arbitrations in accordance with the terms of each individual's arbitration agreement.

In granting the Defendants' eleven motions to compel, the Court likewise never ordered a joint, nation-wide Class Arbitration of the kind the Arbitration Plaintiffs have filed with the AAA. The Court decided all eleven motions together due to their similarity, but the Court did not combine the motions or order a single arbitration. The Court granted the individual motions to compel,[12] each of which requested that each of the Arbitration Plaintiffs be compelled "to arbitrate their claim that the Release Agreement is unenforceable in accordance with their respective agreements." Rather than ordering a joint, nation-wide Class Arbitration in violation of the terms of each arbitration agreement, the Court granted the relief requested in Defendants' separate motions to compel, thereby ordering the Arbitration Plaintiffs to arbitrate their claims in accordance with their respective agreements, which require individual arbitration and expressly prohibit the type of joint, nation-wide arbitration demanded by the Arbitration Plaintiffs.

Plaintiffs make much of the fact that they have now clarified that they are not seeking class certification with respect to the Class Arbitration Demand before the AAA.[13] As an initial matter, Defendants' concerns were never focused on whether Plaintiffs' were seeking class certification. Rather, Defendants' have consistently been focused on ensuring that the arbitration proceedings were conducted as individual arbitrations in accordance with the parties' arbitration agreements and in accordance with the Court's September 20 Order. This was true even before the Arbitration Plaintiffs filed their Class Action Arbitration Demand and before the AAA decided to treat the demand as a class action arbitration and apply the rules related to class certification.[14] In addition, Plaintiffs' clarification does not change the fact that the Class Arbitration, however styled, violates

---

[12] Dkt. No. 132 at 5.
[13] Dkt. No. 148 at 19. Plaintiffs also make much of the fact that Defendants' motions to compel limited the use of the phrase "individual arbitration" to a footnote discussing what would occur in the event that the Release Agreements are found unenforceable. Dkt. No. 148 at 13. Yet, Plaintiffs ignore Defendants' multiple motions and repeated requests that the Arbitration Plaintiffs be compelled to arbitration in accordance with the terms of their respective arbitration agreements, which require individual arbitration (as well as pre-arbitration mediation).
[14] Dkt. No. 143-1, Decl. of R. Black ¶ 5, Exhibit C, Gibson Letter date October 4, 2017.

LITTLER MENDELSON, P.C.
50 W San Fernando, 7th Floor
San Jose, CA 95113 2303
408 998 4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION          5.          CASE NO. 5:16-CV-04775-EJD

the express terms of the arbitration agreements signed by each Arbitration Plaintiff. Moreover, Plaintiffs have made it clear they are seeking a global, "either/or" decision as to the enforceability of the releases that would apply for all signatories to the alleged "standard form" Release Agreement.[15] As was the case in the AT&T Mobility case, the Arbitration Plaintiffs' Class Action Demand bears the hallmarks of class and collective actions, and thus, runs afoul of the arbitration agreements' prohibition on class and collective proceedings, even though the Arbitration Plaintiffs claim to no longer seek to certify a class or collective in the arbitration proceeding. See AT & T Mobility LLC v. Bernardi, 2011 WL 5079549, at*6 (N.D. Cal. 2011).

Because the Arbitration Plaintiffs have initiated arbitration proceedings that violate their arbitration agreements and the September 20 Order, Defendants are likely to succeed on the merits, thereby demonstrating the first of the four factors for obtaining injunctive relief. See Winters v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). At a minimum, Defendants have raised "serious questions" going to the merits sufficient to warrant injunctive relief under the Ninth Circuit's "sliding scale" approach, as reaffirmed in Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011).

2. Irreparable Harm.

Plaintiffs argue that Defendants will not suffer irreparable harm if the Class Arbitration proceeds because Defendants will only have to participate in a single arbitration, rather than 15 separate proceedings, thereby reducing the amount of human and monetary capital spent on arbitration.[16] Plaintiffs miss the mark on the meaning of irreparable harm.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., 7 475 U.S. at 648 (internal quotations omitted). "Although the Ninth Circuit apparently has not addressed the issue explicitly, it has indicated that irreparable injury presumptively would exist if a party is required to expend resources participating in an arbitration in which it has no duty to participate." Morgan Stanley & Co. LLC v. Couch, 134 F.Supp.3d 1215, 1235 (E.D. Cal. 2015) (citing LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib.,

---

[15] Dkt. No. 143-1, Decl. of R. Black ¶ 7, Exhibit E, Anderson Letter date December 14, 2017 at 3.
[16] Dkt. No. 148 at 15-16.

Teamsters Local 63, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988)). In LAWI/CSA Consolidators, the district court granted an employer's motion to enjoin continued arbitration of a labor grievance with a union because the employer's duty to arbitrate under the terms of the agreement lapsed once the parties reached an impasse. 849 F.2d at 1238. On appeal, the union argued that the employer failed to show irreparable harm from further arbitration of the dispute. The Ninth Circuit disagreed, holding that the employer "was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate." Id. at 1241 n.3.

In addition to the Ninth Circuit in LAWI/CSA, numerous courts have recognized that being forced to arbitrate under terms and conditions that violate an arbitration agreement or where there is otherwise no duty to arbitrate, by itself, constitutes irreparable harm, including with respect to forced participation in a class or representative arbitration when the parties only agreed to individual arbitration. See Morgan Stanley & Co. LLC v. Couch, 134 F.Supp.3d at 1236 (holding employer would suffer irreparable harm if it were forced to arbitrate a claim when it was "under no duty to participate in the FINRA arbitration" because employee had waived arbitration rights under otherwise enforceable arbitration agreement). In particular, an employer who only agrees to arbitrate individual employee's claims on their individual merits will suffer irreparable harm by forced participation in a class or representative arbitration resulting in a single finding. See ServiceMaster Holding Corp. v. Hall, No. 2:13-cv-02980-JPM-dkv, 2014 WL 12531119, at *9 (W.D. Tenn. July 16, 2014) (holding that employer would suffer irreparable harm if forced to class arbitration when arbitration agreement did not authorize class-wide arbitration and employees agreed to arbitrate only individual claims); Tiffany v. KO Huts, Inc., 178 F.Supp.3d 1140, 1148-49 (W.D. Okla. 2016) (after plaintiff initiated FLSA collective action arbitration in violation of class action waiver in arbitration agreement, court granted preliminary injunction, finding irreparable harm where defendant "forced to arbitrate in the absence of a duty to arbitrate."). Plaintiffs' assertion that courts only find irreparable harm when there is no arbitration agreement is simply wrong.

Here, neither Defendants nor any of the Arbitration Plaintiffs agreed to arbitrate the issue of the enforceability of the Arbitration Plaintiffs' release agreements in a single, joint arbitration seeking global, class-wide relief, and the Court never ordered any such arbitration. Moreover, the

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION                    7.                    CASE NO. 5:16-CV-04775-EJD

parties never agreed to arbitrate the claims of employees from all over the country in a single arbitration in San Francisco, and they never agreed to any arbitration without first engaging in mediation. Indeed, not a single Arbitration Plaintiff can claim San Francisco as an appropriate venue under the terms of the arbitration agreements. The Class Action Arbitration Demand filed by the Arbitration Plaintiffs is a violation of the terms and conditions of the arbitration agreement signed by each Arbitration Plaintiff and the Court's September 20 Order. As a result, Defendants will suffer irreparable harm if they are forced to participate in the Class Arbitration when there is no contractual duty to do so.

### 3. Balance of the Hardships.

Plaintiffs claim that the balance of hardships is in their favor because their challenge to the enforceability of the release agreements signed by each Arbitration Plaintiff is purportedly governed by an objective standard under the OWBPA that will not require any individualized determinations or subjective information.[17] Again, Plaintiffs miss the mark on the applicable standard under the OWBPA and its impact on this case.

First, Plaintiffs conveniently misquote the "knowing and voluntary" standard of the OWBPA. The actual language of the statute with respect to the general release language is as follows: "a waiver may not be considered knowing and voluntary unless at a minimum—(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood <u>by such individual, or</u> by the average individual eligible to participate[.]" 29 U.S.C. § 626(f)(1)(A). (Plaintiffs exclude the underlined language in their brief.) Accordingly, courts have recognized that subjective evidence of each individual's understanding and the employee's individual circumstances may be relevant to the "knowing and voluntary" inquiry. See Parsons v. Pioneer Seed Hi-Bred Intern., Inc., 447 F.3d 1102, 1105 (8th Cir. 2006) ("Issues of whether an employee expressed his misunderstanding or otherwise questioned a waiver go to an employee's subjective state of mind, which may be relevant to the ultimate issue of whether his waiver was in fact voluntary and knowing."); Ribble v. Kimberly Clark Corp., No. 09-C-643, 2010

---

[17] Dkt. 148 at 21-22.

WL 4627929, at *1 (E.D. Wis. Nov. 9, 2010) (holding subjective information regarding release relevant to "knowing and voluntary" standard; "Information about what people actually did and thought, although inherently subjective, could in fact shed light on objective questions as well."); Romero v. Allstate Ins. Co., 1 F. Supp. 3d 319 (E.D. Pa. 2014) (identifying additional individualized factors, such as the plaintiff's education and business experience, the amount of time the plaintiff had for deliberation about the release before signing it, and whether plaintiff knew or should have known his rights upon execution of the release).[18]

In addition to the general requirements applicable to all ADEA waivers, the OWBPA also includes specific disclosure requirements with respect to a waiver "requested in connection with an exit incentive or other employment termination program," including age-related information for the employee's specific decisional unit. 29 U.S.C. § 626(f)(1)(H). This information should be written "in a manner calculated to be understood by the average individual eligible to participate." Id. The Department of Labor's regulations implementing the OWBPA explain that the identification of the appropriate decisional unit depends on the employer's "organizational structure and decision-making process," such that a "decisional unit" should "reflect the process by which an employer chose certain employees for a [termination] program and ruled out others from that program." 29 C.F.R. § 1625.22(f)(3)(i)(B). Thus, "the particular circumstances of each termination program will determine the decisional unit." Id. § 1625.22(f)(3)(v). Moreover, the regulations advise that "[w]hen identifying the population of the decisional unit, the employer acts on a case-by-case basis, and thus the determination of the appropriate class, unit, or group, and job classification or organizational unit... also must be made on a case-by-case basis." Id. § 1625.22(f)(3)(ii)(A). Accordingly, in a case where the employer or employers have implemented multiple reductions in force, determination of the appropriate decisional unit is an individualized question. See, e.g., Ribble v. Kimberly-Clark Corp., No. 09-C-643, 2012 WL 589252, at *15-22 (E.D. Wis. Feb. 22, 2012) (in ADEA collective action regarding series of reductions in force over three years, court analyzed appropriate decisional unit for each plaintiff on individual basis, and concluded that some waivers were valid and some

---

[18] Notably, Plaintiffs wrongly cite to Ribble and Romero to argue that individual evidence and subjective information need not be considered.

LITTLER MENDELSON, P.C.
50 W San Fernando, 7th Floor
San Jose, CA 95113 2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION      9.      CASE NO. 5:16-CV-04775-EJD

were invalid); Pagliolo v. Guidant Corp., 483 F. Supp. 2d 847, 858-59 (D. Minn. 2007) (where parent company and its subsidiaries implemented reduction in force at 84 different facilities, court determined that each employer and each facility should have been separate decisional units, thus requiring different disclosures for the plaintiffs who worked at 9 different facilities); Behr v. AADG, Inc., No. 14-CV-3075-CJW, 2016 WL 4119692, at *10-12 (N.D. Iowa July 29, 2016), appeal denied, No. 16-8021, 2016 WL 10079092 (8th Cir. Dec. 22, 2016) (in conditionally certified ADEA collective action, court held that disclosures must include individualized "information by job classification or description so that the terminated employee can compare position and age in an understandable way before an employee can knowingly and voluntarily waive his or her rights to sue for age discrimination").

Here, Plaintiffs admit that they are challenging the validity of the releases due to, among other reasons, the purported insufficiency of disclosures relating to each Arbitration Plaintiff's decisional unit.[19] Plaintiffs' challenge includes the allegation that each Arbitration Plaintiff's individual Attachment A failed to comply with the OWBPA by failing to "disclose the job titles and ages of all employees in the pertinent 'decisional unit,' identifying those who were terminated under the WFR and those who were not."[20] Ironically, in arguing that individual and subjective evidence is irrelevant to the "knowing and voluntary" inquiry, Plaintiffs cite to individual declarations provided by each Arbitration Plaintiff regarding the disclosures that each received.[21] In the declarations, the Arbitration Plaintiffs provide individualized testimony regarding the information regarding each individual's decisional unit identified on their Attachment As, their specific organizational and reporting structure under which they worked, information regarding co-workers who allegedly should have been included in the decisional unit disclosure but were not, and their subjective understanding of the disclosures in the Attachment A.[22] The Arbitration Plaintiffs' own testimony

---

[19] Dkt. 148 at 17.
[20] Decl. of R. Black ¶ 18, Exhibit P, Amended Arbitration Demand, at ¶ 24.
[21] Dkt. Nos. 109-1 to 109-13. All but two of the Arbitration Plaintiffs are from different decisional units, as stated on the Attachment As; Danette Hardin and Camille Hedrick provided the same Attachment A. See Dkt. Nos. 109-10 and 109-12.
[22] Id. Although Plaintiffs claim that Defendants conceded in the initial motion to compel that the Release Agreements "are substantively identical," (Dkt. No. 148 at 23, citing to Dkt. No. 75 at 3) Defendants' statement clearly referenced the general waiver language in the Release Agreement, not

reflects the individualized nature of the "knowing and voluntary" inquiry, particularly with respect to decisional unit disclosures.

The cases relied on by Plaintiffs are unavailing. In one case cited—Ribble v. Kimberley-Clark Corp., 2012 WL 589252 (E.D. Wis. Feb. 22, 2012)—the court expressly recognized that decisional unit disclosures may be sufficient for one employee, but insufficient for another. The court granted in part the plaintiffs' motion for partial summary judgment, finding OWBPA disclosures were deficient for three of the eight decisional units at issue, but also granted in part employer's motion on the ground that the disclosures were sufficient as to the remaining "decisional units." Id. at *1, *22. The other cases cited by Plaintiffs do not address the sufficiency of individualized decisional unit disclosures, but rather merely recognize that general release language common to each employee's agreement may be found insufficient based on the "average individual" standard without looking at individualized evidence. See Syverson v. Int'l Bus. Machines Corp., 472 F.3d 1072, 1087 (9th Cir. 2007) (holding that that common language in release, including a covenant not to sue, caused confusion about whether ADEA claims were covered or excepted); Rupert v. PPG Indus., Inc., Civ. A. No. 07-cv-0705, 2009 WL 596014, at *49 (W.D. Pa. Feb. 26, 2009) (adopting magistrate's report and recommendation that common language in release agreement "written in a manner that reasonably could be understood by the average eligible participant to bar a challenge to its validity fails to satisfy the understandability requirement of OWBPA").

Although they would prefer a joint arbitration for strategic reasons, the Arbitration Plaintiffs will have the full chance to litigate their claims in individual arbitrations, in compliance with the arbitration agreements and the Court's September 20 Order. The Arbitration Plaintiffs will not be harmed by conducting the arbitrations in precisely the manner to which each agreed. Accordingly, the balance of the hardships weighs in favor of enjoining the Class Arbitration.

4. Public Interest.

Plaintiffs' public interest argument regarding the efficiency of a single, joint arbitration ignores the Court's September 20 Order and the parties' agreement, which expressly precludes the individualized information regarding each employee's decisional unit contained in each Attachment A.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113 2303
408 998 4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION                11.               CASE NO. 5:16-CV-04775-EJD

very joint arbitration the Arbitration Plaintiffs seek. Public policy does not support forcing litigants to arbitrate in a manner that violates the parties' arbitration agreement. See AT&T Techs., 475 U.S. at 648. In such instances, public interest weighs in favor of enjoining an improper arbitration that is in violation of the parties' arbitration agreement. See Wachovia Secs., 2010 WL 4502360, at *10 (N.D. Cal. 2010) ("Defendants are not 'customers' of Plaintiffs, and, therefore, Plaintiffs did not agree to submit to arbitration of Defendants' claims. As such, this factor also weighs in favor of granting Plaintiffs' motion."). Furthermore, courts have found that enforcing written agreements prohibiting class and collective arbitrations does not frustrate public interest by limiting arbitration to the two contracting parties. See ServiceMaster Holding Corp. v. Hall, No. 2:13-cv-02980-JPM-dkv, 2014 WL 12531119, at *11 (W.D. Tenn. July 16, 2014) (finding that public interest "neither served nor harmed" by issuing injunction precluding class arbitration in favor of individual arbitration).

Plaintiffs' argument that individual arbitrations will result in inconsistent rulings again misrepresents both the nature of each Arbitration Plaintiff's challenge to the releases and the law as to whether any decision relating to any individual Arbitration Plaintiff would have any preclusive effect as to any other individual claimant. Each Arbitration Plaintiff is challenging their specific release on an individualized basis—namely, that the Attachment As failed to include the requisite information relating to the each Arbitration Plaintiffs' decisional unit. As such, the releases may be found enforceable as to some Arbitration Plaintiffs, but not others. See Ribble v. Kimberley-Clark Corp., 2012 WL 589252 at *1, *22 (holding disclosures deficient for three of the eight decisional units at issue, but holding disclosures for remaining decisional units sufficient). Such rulings would not be "inconsistent," as the legal issue depends on facts and circumstances specific to the disclosures of the particular decisional unit disclosure in question. Such is the case anytime individual employees sign agreements, particularly where enforceability depends on disclosure of information specific to each employee's decisional unit under the OWBPA. Furthermore, the Ninth Circuit has made it clear that consideration of any facts specific to any individual Arbitration Plaintiff would, by itself, render any decision regarding the enforceability of the release with respect to that Arbitration Plaintiff inapplicable to any other member of the putative class. See Syverson,

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113 2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION

12.

CASE NO. 5:16-CV-04775-EJD

472 F.3d at 1081 ("Because the Eighth Circuit's reasoning did not end with analysis of the language of the SGRA Agreement, but instead, expressly took into account facts specific to the individual plaintiff in that case, we conclude that the issues are not sufficiently identical between that case and this one for offensive nonmutual issue preclusion to apply."). Thus, Plaintiffs' argument that a joint arbitration will promote the public interest by resulting in a single ruling applicable to all claimants makes no sense in light of the fact that the Arbitration Plaintiffs have already presented individualized declarations regarding the enforceability of each release.

### B. Any Later Determination On The CWA Does Not Preclude Individual Arbitrations

To conclude their argument, Plaintiffs seem to suggest that the Court's September 20 Order to defer any ruling on the enforceability of the CAW until after rulings on the enforceability of the releases signed by the Arbitration Plaintiffs somehow precludes individual arbitrations. Plaintiffs' argument is incorrect.

The Defendants requested, and the Court ordered, individual arbitrations in accordance with the terms of the parties' arbitration agreements. In the event that any Arbitration Plaintiff succeeds in challenging the enforceability of the release, the Court will then determine the validity of the CAW. The Court's consideration of the CAW will occur regardless of whether one Arbitration Plaintiff is successful in challenging the release, or all are successful. Defendants will not burden the Court with a further response to Plaintiffs' attempt to rehash their arguments over the timing of the Court's consideration of the CAW, as that issue has been resolved by the Court and need not be relitigated.

### III. CONCLUSION

For all of the reasons set forth above and in their motion to enjoin, Defendants respectfully request an order from this Court enjoining the Arbitration Plaintiffs from proceeding with the Class Arbitration before the AAA, and ordering the Arbitration Plaintiffs to proceed with individual arbitrations to determine the enforceability of the releases signed by each Arbitration Plaintiff, in accordance with the Court's September 20 Order and the parties' arbitration agreements.

We hereby attest that we have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113 2303
408 998 4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION

13.

CASE NO. 5:16-CV-04775-EJD

Dated: January 12, 2018

Respectfully submitted,

LITTLER MENDELSON, P.C.

*/s/ Benjamin A. Emmert*
BENJAMIN A. EMMERT
LISA A. SCHRETER, *pro hac vice*
RICHARD W. BLACK, *pro hac vice*
LITTLER MENDELSON, P.C.

Attorneys for Defendants
HP INC. AND HEWLETT PACKARD ENTERPRISE COMPANY

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION

14.

CASE NO. 5:16-CV-04775-EJD

**PROOF OF SERVICE BY ELECTRONIC TRANSMISSION**

I hereby certify that on January 12, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing on the following attorneys:

Jennie Lee Anderson
jennie@andrusanderson.com
Andrus Anderson LLP
155 Montgomery Street
Suite 900
San Francisco, CA 94104

Douglas P. Dehler
doug.dehler@wilaw.com
Paul W. Zimmer
paul.zimmer@wilaw.com
O'Neil, Cannon, Hollman, Dejong & Laing S.C.
111 E. Wisconsin Avenue, Suite 1400
Milwaukee, WI 53202

/s/ Pauline R. Lopez
PAULINE R. LOPEZ

Firmwide:152144224.5 066902.1112

LITTLER MENDELSON, P.C.
50 W San Fernando, 7th Floor
San Jose, CA 95113 2303
408 998 4150

DEFENDANTS' REPLY BRIEF ISO MOTION
TO ENJOIN CLASS ARBITRATION             15.             CASE NO. 5:16-CV-04775-EJD