UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONNA J. FORSYTH, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>HP INC., et al.,<br><br>　　　　Defendants. | Case No. 5:16-cv-04775-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO ENJOIN ARBITRATION; GRANTING DEFENDANTS' MOTION TO STAY**<br><br>Re: Dkt. Nos. 143, 144 |

Plaintiffs bring a variety of federal and state employment claims against Defendants. On September 20, 2017, this Court compelled arbitration and administratively closed the case. Dkt. No. 132. Fifteen of the currently named Plaintiffs[1] (the "Arbitration Plaintiffs") subsequently filed an arbitration demand, seeking to resolve the compelled arbitration matters in a single proceeding. Declaration of Richard W. Black ("Black Decl."), Ex. D, Dkt. No. 143-3. Now before the Court is a motion from Defendants to enjoin this arbitration and compel the Arbitration Plaintiffs to proceed with individual arbitrations. Dkt. No. 143 ("Arb. Mot."). Defendants also move to stay this case pending the resolution of those individual arbitrations. Dkt. No. 144 ("Stay Mot."). For the reasons discussed below, Defendants' motion to enjoin arbitration is DENIED and their motion to stay is GRANTED.

---

[1] The Arbitration Plaintiffs are Plaintiffs Staton, Becks, and Kaplan (Dkt. No. 75) and thirteen opt-in Plaintiffs (Dkt. Nos. 99-108).

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
1

## I.  BACKGROUND

Plaintiffs are former employees of Hewlett Packard ("HP")[2] who were terminated in the 2015-16 timeframe as part of a workforce reduction plan ("WFR"). First Am. Compl. ("FAC"), Dkt. No. 60 ¶¶ 16-23. Upon termination of their employment with HP, some Plaintiffs—the fifteen Arbitration Plaintiffs—each signed a release agreement ("RA")[3] in exchange for severance benefits. Arb. Mot. 4; Arb. Opp'n 3. The remaining 34 Plaintiffs (the "Non-Arbitration Plaintiffs") did not. Stay Mot. 5-6; Stay Opp'n 2.

The RA signed by the Arbitration Plaintiffs contains an arbitration clause which provides that

> [t]he parties agree to arbitrate any and all disputes or claims arising out of or Employee's employment or separation, or related to the validity, enforceability, interpretation, performance or breach of this Agreement, whether sounding in tort, contract, statutory violation or otherwise, or involving the construction or application or any of the terms, provisions, or conditions of this Agreement before a neutral arbitrator and/or arbitration sponsoring organization, selected by mutual agreement, in or near the city in which Employee was last employed by the Company. If the parties are unable to mutually agree upon an arbitrator, the arbitration shall be held through the American Arbitration Association ("AAA"). Any arbitration may be initiated by a written demand to the other party within the statute(s) of limitation provided by law for such claim(s). The arbitrator's written decision, except as provided herein, shall be final, binding, and conclusive.

RA § 13. In addition, the RA requires the parties to "submit the matter to non-binding mediation before a mutually selected neutral mediator" after the submission of a written claim for arbitration. *Id*. § 14.

The RA also contains a class action waiver provision ("Class Action Waiver"), stating that the employee "will not bring or participate in any class, collective, or representative action." RA § 5.7. The RA also provides that "[n]otwithstanding any other clause contained in this

---

[2] In 2012, Hewlett Packard Company was reorganized into two entities: HP Inc. and Hewlett Packard Enterprise Company. Dkt. No. 99 at 1, 3.
[3] Copies of the RAs for Plaintiffs Becks, Kaplan, Staton, Long, Seda Jr., Backer, Stefani, Reynolds, Bradley, Anderson, Meagher, Cobleigh, Genito, Hedrick, and Hardin are attached to declarations at Dkt. Nos. 75-1, 75-2, 99-1, and 100-2. The RAs are "virtually identical," Dkt. No. 109 at 1; Dkt. No. 113 at 1 n.2, and there are no material differences in the provisions relevant here. Thus, for simplicity, the Court will refer to the RAs collectively as "the RA."

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
2

Agreement, any claim that all or part of the Class Action Waiver Is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." *Id*.

Plaintiffs filed this lawsuit in August 2018, alleging that HP discriminated against them on the basis of their age by terminating their employment under the WFR. Compl., Dkt. No. 1; FAC ¶¶ 1-15, Dkt. No. 60. Plaintiffs brought their claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., as well as a variety of state-law claims. FAC ¶¶ 156-88.

Defendants moved to dismiss. Dkt. No. 74. Defendants also moved to compel arbitration with respect to the Arbitration Plaintiffs. Dkt. Nos. 75, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108. On September 20, 2017, the Court issued an order granting Defendants' motions to compel arbitration. Dkt. No. 132 ("September 20 Order"). In so doing, it determined that,

> under the terms of the RA, "an arbitrator must first decide whether the release provision contained in the agreement is enforceable." Arb. Reply 4. Then, if the arbitrator determines that the release provision is enforceable, Plaintiffs' claims will be barred and the collective action issue will be moot. *Id*. Otherwise, the Court will then determine whether Plaintiffs claims may proceed on a class or collective basis. *Id*.

September 20 Order at 4.

Plaintiffs then approached Defendants to begin the arbitration process, indicating that they envisioned proceeding in a single arbitration to address the enforceability of the RA for the Arbitration Plaintiffs. Black Decl., Exs. A and B, Dkt. No. 143-2. Defendants disagreed with this approach. Black Decl., Ex. C, Dkt. No. 143-2. After reaching impasse, the Arbitration Plaintiffs filed a single arbitration demand with the American Arbitration Association (the "Pending Arbitration") seeking resolution on a single issue: "whether certain release provisions contained in [the RA] signed by the Claimants are valid and enforceable." Black Decl., Ex. D, Dkt. No. 143-3, at ¶ 4. The demand stated that the RA was not valid and enforceable because it failed to comply with the requirements of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), namely: (1) the waiver was not "knowing and voluntary" under § 626(f)(1); and (2) it did not meet the requirements with regard to how "decisional units" must be identified pursuant to

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY

3

§ 626(f)(1)(H)(i). *Id*. ¶¶ 23-28.

Defendants now move to enjoin the Pending Arbitration on the theory that, under the terms of the RA and the September 20 Order, the Arbitration Plaintiffs must arbitrate individually. Arb. Mot. Defendants also argue that the Pending Arbitration violates certain prerequisites required by the RA, namely that (1) it proceed before "neutral arbitrator and/or arbitration sponsoring organization, selected by mutual agreement, in or near the city in which Employee was last employed by the Company," RA § 13; and (2) "[a]fter submission of the written claim for arbitration, the parties shall submit the matter to non-binding mediation before a mutually selected neutral mediator," *id*. § 14. *Id*. at 16-17. Defendants also request, through their motion to stay, that the Court continue to stay the entire case until arbitration has concluded. Stay Mot.

## II. LEGAL STANDARD

### A. Enforcing or Enjoining Arbitration

Under the Federal Arbitration Act ("FAA"), written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract." 9 U.S.C. § 2 (2012). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). A district court's role is limited to determining (1) whether the parties agreed to arbitrate and, if so, (2) whether the claims at issue are within the scope of that agreement. *Id*. If the party seeking arbitration meets these two requirements, the court must compel arbitration. 9 U.S.C. § 4; *Chiron*, 207 F.3d at 1130.

If a contract contains an arbitration clause, the clause is presumed to be valid. *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co*., 925 F.2d 1136, 1139 (9th Cir. 1991). The party opposing arbitration has the burden of showing that an arbitration clause is invalid or otherwise

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
4

unenforceable. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997).

Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). General contract law principles govern the interpretation and enforcement of arbitration agreements. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).

When a party initiates arbitration against another party that opposes it, the opposing party may immediately bring a motion to enjoin the arbitration, which is to be considered under the traditional preliminary factors. *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014). To prevail, the opposing party must show: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

**B.  Stay**

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. "A motion to stay, therefore, is mandatory and must be granted as to all matters within the scope of the arbitration agreement. It is, however, within a district court's discretion whether to stay, for 'considerations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration." *BrowserCam, Inc. v. Gomez, Inc.*, No. 08-CV-02959-WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).

In addition, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). "Where a stay is proposed,

United States District Court
Northern District of California

1 the court should weigh the competing interests that will be affected, including: the possible
2 damage which may result from granting the stay, the hardship or inequity which a party may
3 suffer in being required to go forward, and 'the orderly course of justice measured in terms of the
4 simplifying or complicating of issues, proof, and questions of law which could be expected to
5 result from a stay.'" *Roderick v. Mazzetti & Assocs., Inc.*, No. 04-CV-2436-MHP, 2004 WL
6 2554453, at *3 (N.D. Cal. Nov. 9, 2004) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.
7 1962)).

## III. DISCUSSION

### A. Motion to Enjoin

The Court analyzes Defendants' motion to enjoin arbitration under the *Winter* factors. On balance, these factors do not favor enjoining the Pending Arbitration.

#### i. Likelihood of Success on the Merits

"[W]hether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (quoting *AT & T Techs., Inc.*, 475 U.S. at 649) (emphasis omitted); *see also Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991) ("a party cannot be forced to arbitrate the arbitrability question") (internal quotation marks omitted). Questions of arbitrability are ones that the "contracting parties would likely have expected a court to have decided" and "are not likely to have thought . . . that an arbitrator would do so." *Howsam*, 537 U.S. at 83.

Defendants argue that they are likely to succeed on the merits because the Pending Arbitration violates the terms of the RA and the September 20 Order. In particular, Defendants contend that sections 5.7 and 13 of the RA and the September 20 Order require the Arbitration Plaintiffs to arbitrate individually. Defendants also contend that sections 13 and 14 of the RA set forth certain prerequisites to arbitration which the Arbitration Plaintiffs have not met, including participating in non-binding mediation and selecting a neutral arbitrator in or near the city(ies)

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
6

1    where the Arbitration Plaintiffs were last employed.

2           Defendants interpret the RA and the September 20 Order too narrowly. Although each

3    individual Arbitration Plaintiff entered into his or her own RA with Defendants, nothing in the RA

4    expressly prohibits arbitrating as a group. Section 13—the primary provision covering

5    arbitration—does not address this scenario. Instead, it simply states that "[t]he parties agree to

6    arbitrate," without restricting the format the arbitration must take. RA § 13. Similarly, it merely

7    states that "[a]ny arbitration may be initiated by a written demand to the other party" and that

8    "[t]he arbitrator's written decision . . . shall be binding, final and conclusive." *Id*. Neither of these

9    statements are so narrow that they preclude "written demands" or "written decisions" that involve

10   more than one ex-employee. *Id*. Further, although section 5.7 prohibits an Arbitration Plaintiff

11   from "participat[ing] in any class, collective, or representative action" against Defendants, the

12   currently pending arbitration is not, in substance, a class arbitration. Each Arbitration Plaintiff is

13   specifically identified in the arbitration demand and the relief sought is individualized: "whether

14   certain release provisions contained in [the RA] signed by the Claimants are valid and

15   enforceable." Black Decl., Ex. D, Dkt. No. 143-3, at ¶ 4. Although it may be the case that the

16   arbitrator can answer this question using facts common to all of the Arbitration Plaintiffs, nothing

17   about the arbitration demand will prevent the arbitrator from considering facts specific to certain

18   Arbitration Plaintiffs and making different, individualized determinations about each RA, if the

19   circumstances so require. Indeed, as discussed below, determining whether the RA is enforceable

20   under the OWBPA may require the application of subjective criteria; thus, in that case, the

21   arbitrator will need to consider individual circumstances in order to faithfully apply the law. As

22   such, the Pending Arbitration does not violate the terms of the RA.

23          The Pending Arbitration also does not violate the September 20 Order. The September 20

24   Order simply requires that Plaintiffs arbitrate the enforceability of the RA before the Court

25   determines the validity of the Class Action Waiver. It is silent as to whether Plaintiffs must

26   arbitrate this issue individually or as a group. Indeed, the fact that both parties have argued that

27   the language of the September 20 Order support their position illustrates this point. *Compare*

28   Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY

Black Decl., Ex. C, Dkt. No. 143-2, at 2 (Defendants arguing that "proceedings" suggests that the Court envisioned multiple, individual arbitration proceedings); Arb. Opp'n 13 (Plaintiffs arguing that "the arbitrator" suggests that a single arbitrator should decide the enforceability of the RA in a single arbitration. Accordingly, the September 20 Order also does not support Defendants' narrow interpretation.

The Court also finds that the other prerequisites cited by Defendants do not provide grounds for enjoining the Pending Arbitration. First, as to the requirement under § 13 that the parties arbitrate "in or near the city in which Employee was last employed by the Company," Defendants read this provision out of context. The larger context in which this phrase appears reads:

> The parties agree to arbitrate . . . before a neutral arbitrator and/or arbitration sponsoring organization, selected by mutual agreement, in or near the city in which Employee was last employed by the Company. If the parties are unable to mutually agree upon an arbitrator, the arbitration shall be held through the American Arbitration Association ("AAA").

RA § 13. Because, here, the parties were not able to "select[] [an arbitrator] by mutual agreement," the first sentence—including its restriction on location—does not apply. Instead, the parties fall within the contingency expressed in the second sentence, which places no restriction on location. Thus, the Pending Arbitration does not violate the RA by taking place in San Francisco.

Second, as to the requirement under § 14 that the parties "submit the matter to non-binding mediation," the Court agrees with Defendants that the parties are required to comply with this provision and it does not appear that they have done so. However, this is not grounds for enjoining the Pending Arbitration. Instead, this is a separate requirement which, like any other provision within the RA, the parties must follow. There is no indication that the Arbitration Plaintiffs have refused to participate in mediation at this juncture; however, if they do, Defendants are free to seek relief from this Court for violation of § 14. There is no need to hold up the Pending Arbitration on this basis, however.

In sum, Defendants are not likely to succeed on the merits. This weighs against enjoining

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
8

the current arbitration.

### ii. Irreparable Harm

Turning to irreparable harm, the only harm that Defendants identify is that permitting the Pending Arbitration to go forward will force them into an arbitration to which they did not agree. Arb. Mot. 17. The Court agrees with Defendants that "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law," *UBS Secs., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011); *see also McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997). However, such is not the case here. As discussed above, the Pending Arbitration is permissible under the terms of the RA. As such, Defendants will not be irreparably harmed if it is not enjoined.

### iii. Balance of the Hardships

As to the balance of hardships, the Court notes as an initial matter that, at first blush, this factor seems neutral. On one hand, if the Pending Arbitration were allowed to proceed, Defendants would be forced to arbitrate the enforceability of the RAs in a single arbitration proceeding—a situation which, as discussed above, does not fall outside the bounds of what Defendants agreed to under the RA. On the other hand, if the Pending Arbitration were enjoined, the Arbitration Plaintiffs would be forced to initiate fifteen different arbitrations on the enforceability of their RAs. This is also a situation which the RA permits.

However, on closer inspection, the nature of the issue to be arbitrated—the enforceability of the RA—tips the balance. The current arbitration demand argues that the RAs are not valid and enforceable because they failed to comply with the requirements of the OWBPA, namely: (1) the waiver was not "knowing and voluntary" under § 626(f)(1); and (2) it did not meet the requirements with regard to how "decisional units" must be identified pursuant to § 626(f)(1)(H)(i). Black Decl., Ex. D, Dkt. No. 143-3, at ¶¶ 23-28. Each of these legal theories involves common questions that will be the same across all Arbitration Plaintiffs:

First, to show that the RA was not "knowing and voluntary" under § 626(f), the Arbitration Plaintiffs will have to show, among other things, that the RA was not "written in a manner

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
9

calculated to be understood by such individual, or by the average individual eligible to participate." 29 U.S.C. § 626(f)(1)(A). This means that, in order to defeat this theory, Defendants could rely on either an entirely objective standard—that the RA was "written in a manner calculated to be understood . . . by the average individual eligible to participate"—or an entirely subjective standard—that the RA was "written in a manner calculated to be understood by [a particular Arbitration Plaintiff]." *Id*. Although the latter will certainly require individualized considerations, it is at least possible that—if Defendants defend the RA under the objective standard—this issue could be resolved entirely through considerations of the "average individual eligible" and not require a different analysis for each Arbitration Plaintiff.

Second, as to the "decisional units" requirement under § 626(f)(1)(H)(i), each of the Arbitration Plaintiffs raise the same complaint: their "decisional unit" was not specifically identified in the "Attachment A" disclosure. Dkt. Nos. 109-1 to 109-12. Thus, deciding whether this requirement was met will involve at least the same basic threshold question: did Defendants have to specifically identify an employee's "decisional unit" (regardless of what that "decisional unit" was) in order to comply with § 626(f)(1)(H)(i)? This too will not differ across each Arbitration Plaintiff.

Thus, on balance, the legal issues which the parties seek to arbitrate have common questions which would be the same across all Arbitration Plaintiffs. As such, it will be more efficient and less burdensome—for Plaintiffs *and* Defendants—to address them in a single arbitration rather than fifteen different arbitrations. Thus, the balance of hardships favors the Arbitration Plaintiffs' position.

### iv. Public Interest

The public interest also weighs in favor of Plaintiffs. At least two reasons compel this conclusion:

First, federal policy favors arbitration. *Volt Sciences, Inc. v. Bd. of Trsutees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989). Thus, enjoining the Pending Arbitration—an arbitration which has already been initiated and falls within the bounds of the parties' prior

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
10

1 agreement—is disfavored.

2 Second, "the public has an overriding interest in securing 'the just, speedy, and
3 inexpensive determination of every action.'" *In re Phenylpropanolamine (PPA) Prod. Liab.*
4 *Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting Fed. R. Civ. P. 1). Resolving the parties'
5 dispute in a single arbitration rather than multiple arbitrations spread across the country—
6 especially when, as discussed above, the legal questions involved are substantially similar—will
7 take less time and cost less money. Thus, allowing the arbitration to continue serves the public
8 interest for this reason as well.

9 Accordingly, the public interest also favors the Arbitration Plaintiffs.

### v. Conclusion

None of the *Winter* factors weigh in favor of enjoining the Pending Arbitration.
Accordingly, Defendants' motion to enjoin the currently pending arbitration is DENIED.

### B. Motion to Stay

The Court's September 20 Order stayed the entire case pending arbitration. In their motion to stay, Defendants argue that the Court should continue to stay this case because, if the stay were lifted, it would unnecessarily complicate the proceedings by allowing discovery to proceed with respect to some individuals (i.e., the Non-Arbitration Plaintiffs) but not others (i.e., the Arbitration Plaintiffs). Stay Mot. 10-11. Defendants argue that this could be especially troublesome in this case because the Court has not yet adjudicated class certification and, if the RA and Class Action Waiver are found unenforceable, some of the Arbitration Plaintiffs may even seek to act in a representative capacity. *Id*. In contrast, Defendants argue, Plaintiffs would not be significantly prejudiced by a stay because the primary remedy they seek is money damages and, because this is a large and complex collective action case, any delay caused by a stay would be small in comparison to the amount of time they should expect this case to be litigated in full. *Id*. at 11-13.

Plaintiffs disagree, arguing that a stay would significantly prejudice them in several specific ways: First, it would impair their ability to get the injunctive relief which they are also seeking—an order preventing Defendants from discriminating against older workers as it

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
11

1    continues with WFR terminations. Stay Opp'n 5. Second, 27 of the Plaintiffs are aged 60 or older

2    and an additional delay would only further increase the risk that over time memories will fade,

3    evidence will get lost, and witnesses will be lost to death or illness. *Id*. at 6. Third, the continued

4    administrative closure of this case has prevented other recently terminated individuals from opting

5    into this case. *Id*. In contrast to all of these considerations, Plaintiffs argue, lifting the stay will

6    not work any real hardship for Defendants because allowing the case to go forward will permit the

7    parties to start making progress on discovery and "there will be little to no new additional

8    discovery required if and when the [Arbitration] Plaintiffs are ultimately returned to the case." *Id*.

9         Balancing these competing concerns, the Court agrees with Defendants that this entire case

10   should be stayed. The arbitration proceedings concern a discrete issue: whether the RA is

11   enforceable under the OWBPA, 29 U.S.C. § 626(f). Compared to the total amount of time that it

12   will take to adjudicate this complex case in full, the potential delay that will be incurred by staying

13   this case pending arbitration is short. As such, the "the possible damage which may result from

14   granting the stay" is small. *Roderick*, 2004 WL 2554453, at *3. On the other hand, "the hardship

15   or inequity which a party may suffer in being required to go forward," *id*., could be significant, as

16   going forward could create real uncertainty regarding issues relating to class certification and

17   representation, as well as create unnecessary complexity for discovery and case management.

18   Further, Plaintiffs' time sensitivity concerns (i.e., relating to the availability of injunctive relief or

19   the age of certain Plaintiffs/witnesses) are belied by the fact they initiated this litigation: if,

20   presumably, the total amount of time that it will take to adjudicate this complex case was

21   acceptable to Plaintiffs, it is difficult to see why a small delay for arbitration is unacceptable.

22   Moreover, any prejudice that Plaintiffs stand to suffer from a stay pending arbitration is at least in

23   part a problem of their own making: Plaintiffs voluntarily chose to bring this lawsuit as a mixed

24   group—some who had signed an RA agreeing to arbitration and some who had not. If Plaintiffs

25   were truly concerned about the latter being held up by the former, they could have excluded those

26   who had signed the RA from this lawsuit. Finally, there is no doubt that the "orderly course of

27   justice," *id*., would be served by a stay, since it would allow discovery to proceed for the Non-

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
12

1  Arbitration Plaintiffs and Arbitration Plaintiffs (assuming they are ultimately allowed to
2  participate in this lawsuit) at the same time.
3  Accordingly, the Court agrees with Defendants that this case should continue to be stayed
4  in its entirety and GRANTS their motion to stay. This decision notwithstanding, the Court is
5  sympathetic to Plaintiffs' concerns regarding difficulties in adding plaintiffs due to the
6  administrative closure of this case. Accordingly, the Court will permit Plaintiffs to further amend
7  the FAC to include additional plaintiffs. In addition, Plaintiffs are advised that administrative
8  closure does not prevent them from electronically filing documents on ECF, if appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to enjoin arbitration. The entire case continues to be STAYED and administratively closed, except that the Court will allow further amendment of the FAC to include additional plaintiffs.

The parties shall notify the Court within 10 days of reaching a final resolution in the Pending Arbitration. The Court SETS a status conference for May 10, 2018. The parties shall file a joint status conference statement no later than May 3, 2018 informing the Court as to the status of the Pending Arbitration.

**IT IS SO ORDERED.**

Dated: February 6, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-04775-EJD
ORDER DENYING MOTION TO ENJOIN ARBITRATION; GRANTING MOTION TO STAY
13