United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DONNA J. FORSYTH, et al.,

          Plaintiffs,

    v.

HP INC., et al.,

          Defendants.

Case No.  5:16-cv-04775-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 371

This class action arises out of Defendants HP Inc. ("HPI") and Hewlett Packard Enterprise Company ("HPE") alleged violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), the California Fair Employment and Housing Act ("FEHA"), and other California state laws.

Lead Plaintiffs Donna J. Forsyth, Dan Weiland, Shafiq Rahman, Albert R. Devere, Arun Vatturi, and Kevin Alviso worked for and were hired by Hewlett-Packard Co. ("HP Co.").  After HPE and HPI were formed, lead Plaintiffs worked for and were terminated by either HPI, HPE, or HP Co.  Plaintiffs argue they were terminated in violation of state and federal employment laws. Defendants contend that this Court must dismiss Plaintiffs' Third Amended Complaint for failure to state a claim upon which relief can be granted and/or for lack of standing.  Having considered the Parties' papers, the Court **GRANTS in part and DENIES in part** Defendants' motion to dismiss.[1]

---

[1] Pursuant to N.D. Cal. Civ. L.R. 7-1(b), this Court found this motion suitable for consideration
Case No.: 5:16-cv-04775-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

## I.      BACKGROUND

### A.  Factual Background

#### 1.  HP Co., HPI, and HPE's Employment Practices

In 2012, under the direction of Meg Whitman, HP Co. allegedly began implementing a company-wide initiative to replace thousands of existing, older workers with new, younger employees.  Third Amended Complaint ("TAC") ¶ 2, Dkt. 360.  This initiative was referred to as the "Workforce Restructuring Initiative." *Id.*  Whitman was (and remains) the President and Chief Executive Officer ("CEO") of HP Co.  *Id.*  When rolling out this initiative, Whitman said the goal was to restructure HP CO.'s workforce over a period of approximately five years, *i.e.* 2012 through 2017.  *Id.*  In Plaintiffs' view, through this statement, Whitman made it known that she regarded the age of HP's workforce as a problem that needed solving.  *Id.* ¶ 12.  Indeed, Whitman publicly stated several times that HP had a problem with its "labor pyramid," and that she intended to "restructure" it by replacing older workers with younger hires.  *Id.* ¶¶ 30–34; *see also id.* ¶ 3 ("In October 2013, Ms. Whitman admitted publicly during a Securities Analyst Meeting that the Initiative's overarching goal was to 'recalibrate and reshape' the workforce by 'replacing' existing workers with 'a whole host of young people.'").  In order to execute the Workforce Restructuring Initiative, Whitman caused HP to implement a two-pronged strategy that involved (1) pushing current, older workers out of the company, while (2) hiring large numbers of new, younger employees to replace them.  *Id.* ¶ 10.

In November 2015, HP Co. split into two companies, HPI and HPE.  *Id.* ¶ 4.  Since the split, Whitman served as the Chair of the Board of Directors for HPI until July 26, 2017 and as the CEO for HPE until February 1, 2018 and also served on the board of HPE until February 1, 2019. *Id.*  During her tenure at HPI and HPE, both companies allegedly continued to implement the age initiative in concert with one another.  *Id.* ¶ 5.  Plaintiffs allege that the companies shed thousands of employees starting in November 2015 and planned to continue to terminate thousands of other

without oral argument.  *See* Dkt. 380.
Case No.: 5:16-cv-04775-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1    employees through 2017. *Id.* Hence, according to Plaintiffs, all three HP Entities shared the

2    common goal of wanting to make the entire HP organization younger. *Id.* ¶ 6. All three entities

3    shed thousands of older workers, while aggressively recruiting and hiring younger employees to

4    replace them. *Id.*

5         To execute the first prong of the Workforce Restructuring Initiative, HP initiated the "2012

6    Workforce Reduction Plan" ("WFR"), which was adopted by both HPE and HPI and was

7    implemented over a period of years. *Id.* ¶ 10. However, contrary to the name, the WFR was not

8    meant to reduce the HP workforce, but was a means to restructure, recalibrate, and reshape the HP

9    workforce to make it younger. *Id.* ¶¶ 11, 30–34. This, Plaintiffs contend, is confirmed by

10   Whitman's public statements, in which Whitman made clear that she intended to make HP

11   "younger." *Id.* ¶ 11. During a 2013 Securities Analyst Meeting, for instance, Whitman confirmed

12   that HP was "working very hard to recalibrate and reshape [its] labor pyramid" so it would have a

13   "whole host of young people" at its base. *Id.* ¶ 31. Whitman also admitted that HP was "amping

14   up [its] early career hiring, [and] [its] college hiring." *Id.* Meanwhile, according to Plaintiffs, HP

15   was terminating thousands of existing employees pursuant to the WFR. *Id.* When replacing

16   employees that were terminated under the WFR, Whitman acknowledged that HP had an

17   "informal rule" requiring managers to "really think" about hiring a younger "early career"

18   employee. *Id.* Indeed, internal HP Co. documents dated July 2015 stated that anyone born

19   between 1930 and 1946 could be considered a "Traditionalist" who moves "slow and steady" and

20   seeks "part time work." *Id.* ¶ 60. "Baby Boomers" (born between 1946 and 1964) were

21   considered to be "rule breakers," which implies that they are "undesirable." *Id.* "Millennials," on

22   the other hand were highly desirable and HP Co. specifically adopted strategies for "integrat[ing]

23   millennials into the workforce" and "educat[ing] managers and others on millennial

24   characteristics." *Id.* Plaintiffs allege these policies were carried forth at HPE and HPI. *See infra.*

25        The Workforce Restructuring Initiative continued for years. In September 2015, when the

26   WFR had been ongoing for three years, Whitman stated that HP still needed to "fundamentally

27   
     Case No.: 5:16-cv-04775-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

1    recreate the labor pyramid" because the pyramid looked too much like "a diamond" and it needed

2    to look "like a quite flat triangle to be competitive." *Id.* ¶ 32.  In November 2015, just as Whitman

3    was preparing to take on senior leadership roles at HPI and HPE, Whitman confirmed in an

4    interview that the goal for HPE was to higher younger employees to replace laid-off employees.

5    *Id.* ¶ 33 ("[T]o make sure that we've got a labor pyramid with *lots of young people* coming in right

6    out of college and graduate school and early in their careers.  That is an important part of the

7    future of the company . . . ." (emphasis added)).

8         Moreover, as noted, HPI and HPE both used the same WFR process and paperwork that

9    HP used.  *See id.* ¶¶ 10, 24–25, 36.  The two companies also worked together to coordinate efforts

10   to implement the WFR, which Plaintiffs allege resulted in continued discriminatory employment

11   practices.  *Id.* ¶¶ 25, 35–39, 44–48, 56–57, 64–66, 155.  Plaintiffs further contend that the HP

12   entities worked together to impose a common ban on rehiring any employees discharged pursuant

13   to the WFR, regardless of what entity the employee was fired from.  *See id.* ¶¶ 25, 44–46

14   (describing the coordinated "blacklisting policy").  HPI and HPE also implemented similar early

15   retirement policies that were meant to pressure older employees to leave "voluntarily" or risk

16   being involuntarily fired under the WFR.  *Id.* ¶¶ 38–42.  Plaintiffs allege that the coordinated

17   efforts between HPI and HPE were at Whitman's direction as part of her ongoing initiative to

18   make *all* the HP entities "younger."  *Id.* ¶¶ 4, 7, 25.  Both HPI and HPE followed the two-step

19   workforce restructuring initiative outlined above.  *See id.* ¶¶ 35–37.  According to Plaintiffs, HPI

20   and HPE even used the same terminology as HP to review employees—existing employees slated

21   for termination under the WFR were called "slates," and the new hires that management hired to

22   replace them were called "reqs."  *Id.* ¶ 35.

23        Plaintiffs maintain that the slate and req process followed a "distinct pattern."  At both HPI

24   and HPE (and at HP before the split), upper-level managers directed subordinate managers to slate

25   certain numbers of older long-term or long-tailed ("LT") employees for termination under the

26   WFR.  *Id.*  Simultaneously, the upper-level managers authorized subordinate managers to hire a

27   

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS
                                                       4

*United States District Court*
*Northern District of California*

similar number of early career employees to replace them.  *Id.*  During this process, HP's human resources department distributed written guidelines in August 2013 that described a "requisition policy."  *Id.* ¶ 50.  This policy mandated that at least 75% of people hired to replace terminated LT employees be early career hires.  *Id.* ¶¶ 50-52.  Managers who resisted directives to slate and replace LT employees were allegedly in danger of being terminated.  For instance, Plaintiff DeVere was instructed to identify two employees from his team to slate for termination under the WFR.  *Id.* ¶ 67.  Plaintiff DeVere identified two employees for termination; he selected two younger early career hires who he believed were performing poorly.  *Id.*  Plaintiff DeVere's supervisor told him he should be slating LT employees rather than younger employees.  *Id.*  Plaintiff DeVere resisted the direction to slate LT employees and ultimately designated the two younger employees for termination.  *Id.*  This decision, however, was overruled by human resources and two older members of Plaintiff DeVere's team (over the age of 40) were fired under the WFR.  *Id.* ¶ 68.  Soon thereafter, Plaintiff DeVere, who was also over the age of 40, was fired under the WFR.  *Id.*  Plaintiffs argue that this, in combination with Whitman's other statements, show that older employees were terminated because of their age.  *Id.* ¶¶ 35, 67–68.

Defendants also projected their discriminatory employment practices through their public advertisements.  Plaintiffs maintain that HP entities' employment ads frequently contained unlawful discriminatory statements like:

- This position is for a recent college graduate.  To qualify, you must have graduated with your Bachelor's or Master's degree within the last 12 months.
- In order to be considered for this role, you must have graduated within 12 months of the start date.
- Must have graduated within 12 months of July 2016.
- This position is for a recent college graduate.  To qualify you must have received your last degree within the past 12 months.
- The candidate must be a recent graduate

Case No.: 5:16-cv-04775-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

- We are looking for recent college graduates and early career candidates.

- The successful candidate must be near degree completion (Dec 2015 or prior) or have graduated within the past 12 months.

- Must be a recent college graduate (2015) or graduating by January 2016.

- Must have completed degree within the past 12 months.

- We are seeking candidates who have recently graduated. Only applicants who have graduated within the past year (July 2014 – August 2015) will be considered for this role, and this will be verified during the background check.

- Recent college graduates preferred.

*Id.* ¶ 56. These statements, Whitman's public statements, and internal guidance allegedly created an atmosphere of hostility toward older workers, which, Plaintiffs allege, had a direct impact on managers' decisions about which employees to slate for termination under the WFR. *Id.* ¶¶ 35, 50, 53–54, 60, 63, 69. Plaintiffs argue that these facts show an intentional disparate treatment of older employees. In the alternative, to show disparate impact Plaintiffs provide a statistical analysis using the data available before filing this case which shows that older workers (age 40 and older) were substantially more likely to be terminated under the WFR than younger employees. *Id.* ¶¶ 69–79.

### 2. Plaintiffs and the Class

There are currently six named Plaintiffs and 30 opt-in Plaintiffs in this case, all of whom were terminated under the WFR. The six named Plaintiffs are:

1. **Donna Forsyth.** Plaintiff Forsyth was hired by HP Co. on or about July 12, 1999. *Id.* ¶ 75. Before she was terminated, Plaintiff Forsyth was working for HPE in Bellevue, Washington. *Id.* Plaintiffs allege that she always "met or exceeded her employer's expectations" and that she performed her duties in a satisfactory and competent manner. *Id.* ¶ 76. In May 2016, HPE notified Plaintiff Forsyth, who was 62 years old at the time, that she was being terminated pursuant to a WFR Plan. *Id.* ¶ 78. Plaintiffs allege that

United States District Court
Northern District of California

1    Forsyth was replaced with a "graduate" or "early career," *i.e.*, someone who is

2    significantly under the age of 40.  *Id.* ¶ 79.  Plaintiff Forsyth received a Notice of Right to

3    Sue from the EEOC dated August 2, 2016.  *Id.* ¶ 80.  She has thus exhausted her

4    administrative remedies.

5    2.   **Arun Vatturi.**  Plaintiff Vatturi was hired by HP Co. in 2001.  *Id.* ¶ 81.  Before he was

6    terminated, Plaintiff Vatturi worked for HPI in Palo Alto, California.  *Id.*  Plaintiff Vatturi

7    worked on internal systems to improve procedure and save money for HP Co.  *Id.* ¶ 83.

8    Plaintiffs allege that Vatturi was a competent and invaluable employee—he was one of the

9    0.5% of employees at HP Co. to receive the company's top performance review rating.  *Id.*

10   ¶¶ 82–83.  In January 2016, HPI notified Plaintiff Vatturi, who was 52 years old at the

11   time, that he was being terminated pursuant to a WFR Plan.  *Id.* ¶ 85.  Plaintiffs allege that

12   Vatturi was replaced with a "graduate" or "early career," *i.e.*, someone who is significantly

13   under the age of 40.  *Id.* ¶ 86.  Plaintiff Vatturi received a Notice of Right to Sue from the

14   EEOC dated August 2, 2016 and a notice of right to sue from the California Department of

15   Fair Employment and Housing on July 6, 2016.  *Id.* ¶ 87.  He has thus exhausted his

16   administrative remedies.

17   3.   **Dan Weiland.**  Plaintiff Weiland was hired by HP Co. as an independent contractor in

18   2010; in February 2012, he was hired by HP Co. as a full-time employee.  *Id.* ¶ 88.  Before

19   he was terminated, Plaintiff worked as a Project/Program Manager and Acting Chief of

20   Staff in the Test Operations & Technologies organization in Houston, Texas.  *Id.*  Plaintiffs

21   allege that Weiland was a competent and invaluable employee—before he as laid off, he

22   was praised as a "solid contributor" who brought a "positive, 'can do' attitude" and a

23   strong work ethic with him every day.  *Id.* ¶¶ 89, 90.  In 2014, Plaintiff Weiland received

24   the "Making a Difference" award.  *Id.* ¶ 90.  In September 2014, HP Co. notified Plaintiff

25   Weiland that he was eligible to participate in the 2014 Phased Retirement program.  *Id.*

26   ¶ 91. His manager had several conversations with Plaintiff Weiland to try to persuade him

27

28

United States District Court
Northern District of California

1    to participate in the retirement program. *Id.* Ultimately, Plaintiff Weiland declined to

2    participate in the program. *Id.* In July 2015, HP Co. notified Plaintiff Weiland, who was

3    63 years old at the time, that he was being terminated pursuant to a WFR Plan. *Id.* ¶ 92.

4    Plaintiffs allege that Weiland was replaced with a "graduate" or "early career," *i.e.*,

5    someone who is significantly under the age of 40. *Id.* ¶ 93. Plaintiff Weiland received a

6    Notice of Right to Sue from the EEOC dated October 5, 2015. *Id.* ¶ 94. He has thus

7    exhausted his administrative remedies.

8        4.   **Shafiq Rahman.** Plaintiff Rahman began working at Compaq in April 1997, which was

9        acquired by HP Co. in 2002. *Id.* ¶ 95. Before he was terminated, Plaintiff Rahman was a

10       Senior Engineer and developed computer servers for HPE. *Id.* Plaintiffs allege that

11       Rahman was a competent employee—before he was terminated, he was told his

12       performance was "good" and that he should consider himself "safe" from termination. *Id.*

13       ¶ 96. However, on July 18, 2016, when Plaintiff Rahman was 65 years old, he was

14       terminated pursuant to the WFR plan. *Id.* ¶ 97. Plaintiffs allege that Rahman was replaced

15       with a "graduate" or "early career," *i.e.*, someone who is significantly under the age of 40.

16       *Id.* ¶ 98. Plaintiff Rahman received a Notice of Right to Sue from the EEOC dated

17       September 29, 2016. *Id.* ¶ 98. He has thus exhausted his administrative remedies.

18       5.   **Albert R. DeVere.** Plaintiff DeVere began working for HP Co. in September 2010. *Id.*

19       ¶ 100. Before he was terminated in 2016, Plaintiff DeVere was a Manager of Solution

20       Architects for HPE. *Id.* Plaintiffs allege that DeVere was a competent employee who

21       always met or exceeded his employer's expectations. *Id.* ¶ 101. Indeed, Plaintiff DeVere

22       never received any negative performance reviews during his time at HP Co. and HPE. *Id.*

23       In July 2016, Plaintiff DeVere, who was 52 years old, was terminated under the WFR plan.

24       *Id.* ¶ 102. Plaintiffs allege that DeVere was replaced with a "graduate" or "early career,"

25       *i.e.*, someone who is significantly under the age of 40. *Id.* ¶ 103. Plaintiff DeVere filed a

26       charge of discrimination with the EEOC on October 5, 2016. *Id.* ¶ 104. He has thus

27

United States District Court
Northern District of California

1   exhausted his administrative remedies.

2   6.  **Kevin Alviso.**  Plaintiff Alviso began working for HP Co. in June 1997.  *Id.* ¶ 105.  Before

3   he was terminated, Plaintiff Alviso worked as a Research and Development Manager for

4   HPE.  *Id.*  Plaintiffs allege that Alviso was a competent employee who always met or

5   exceeded his employer's expectations.  *Id.* ¶ 106.  Indeed, Plaintiff Alviso never received

6   any negative performance reviews during his time at HP Co. and HPE—in fact, Plaintiff

7   Alviso received top ratings in each of his last five annual reviews.  *Id.* ¶ 106.  In October

8   2016, Plaintiff Alviso, who was 53 years old, was terminated under the WFR plan.  *Id.*

9   ¶ 107.  Plaintiffs allege that Alviso was replaced with a "graduate" or "early career," *i.e.*,

10   someone who is significantly under the age of 40.  *Id.* ¶ 108.  Plaintiff Alviso filed a charge

11   of discrimination with the EEOC on January 18, 2017 and received a Notice of Right to

12   sue on March 30, 2018.  *Id.* ¶ 109.  He has thus exhausted his administrative remedies.

13   The Complaint alleges two different classes: (1) a Nationwide Class and (2) a California

14   Class.  Each class is asserted against Defendants, *i.e.* HP Entities HPI and HPE.  Plaintiffs seek to

15   represent the Nationwide Class.  The Nationwide Class asserts an ADEA claim and includes all

16   individuals aged 40 and older who have not signed a Waiver and General Release Agreement, and

17   who had their employment terminated by an HP Entity pursuant to a WFR Plan on or after

18   December 9, 2014 for individuals terminated in deferral states and on or after April 8, 2015 for

19   individuals terminated in non-deferral states.  *Id.* ¶¶ 110, 111 135–46.  Plaintiffs Vatturi and

20   Alviso also seeks to represent the California class.  The California Class asserts (1) an FEHA age

21   discrimination claim, (2) an age discrimination in violation of public policy claim, and (3) an

22   unfair competition claim.  *See id.* ¶¶ 147–67.

23   **B.  Procedural History**

24   On August 18, 2016, Plaintiffs filed their Complaint.  *See* Dkt. 1.  Subsequently, on

25   November 14, 2016, Defendants moved to partially dismiss the original Complaint and to compel

26   arbitration of a former Plaintiff's claim.  *See* Dkt. 42, 44.  On November 15, 2016, Defendants

United States District Court
Northern District of California

1   moved to strike the proposed nationwide ADEA collective definition and the Rule 23 California

2   class definition.  Dkt. 46.  Plaintiffs then filed their First Amended Complaint, which mooted

3   Defendants initial motions.  Dkt. 60.  However, on January 30, 2017, Defendants move to partially

4   dismiss the First Amended Complaint and to compel arbitration for some former Plaintiffs.  Dkt.

5   74, 75.  On March 20, 2017, Defendants also moved to compel arbitration of the claims of 13 opt-

6   in Plaintiffs.  Dkt. 99–108.

7            On September 20, 2017, this Court granted Defendants' motion to compel arbitration as to

8   15 named and opt-in Plaintiffs, denied without prejudice Defendants' motion to partially dismiss

9   the First Amended Complaint, and stayed the action pending resolution of the arbitrations.  Dkt.

10   132.  On February 6, 2018, the Court continued the stay, but allowed Plaintiffs to amend the First

11   Amended Complaint to add additional plaintiffs.  Dkt. 152.  Plaintiffs then filed their Second

12   Amended Complaint, which added Alviso as the new named Plaintiff for the California class.

13   Dkt. 168.  On November 6, 2018, the Court dismissed with prejudice the claims of former

14   Plaintiffs Staton, Kaplan, Becks, and the other 13 opt-in Plaintiffs who were involved in

15   arbitration proceedings.  Dkt. 177.  Between November 16, 2018 and May 2, 2019, an additional

16   156 individuals joined the action.  Dkt. 179–82, 185, 190–334, 337, 342.  Ultimately, 145 of the

17   opt-in plaintiffs were found to have signed a Waiver and General Release Agreement and these

18   plaintiffs were dismissed after the parties mediated their claims.  Dkt. 336, 361, 367–68.

19            On January 7, 2020, Plaintiffs filed the TAC, which expressly excludes the claims of

20   individuals who have executed a Waiver and General Release Agreement.  *See* TAC.  None of the

21   remaining named or opt-in Plaintiffs have executed a Waiver and General Release Agreement.  On

22   February 6, 2020, Defendants filed a motion to dismiss Plaintiffs' TAC.  Defendants' Notice of

23   Motion and Motion to Dismiss Third Amended Complaint ("Mot."), Dkt. 371.  Defendants also

24   filed a request for judicial notice in support of their motion to dismiss.  Defendants' Request for

25   Judicial Notice in Support of Motion to Dismiss ("RJN"), Dkt. 372.  On March 9, 2020, Plaintiffs

26   filed an opposition to the motion to dismiss.  Plaintiffs' Memorandum of Points and Authorities in

27
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

United States District Court
Northern District of California

1    Opposition to Defendants' Motion to Dismiss ("Opp."), Dkt. 376.  Plaintiffs also filed a response

2    to Defendants' request for judicial notice.  Plaintiffs' Response to Defendants' Request for

3    Judicial Notice ("RJN Opp."), Dkt. 377.  On March 30, 2020, Defendants filed a reply.

4    Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Third Amended Complaint

5    ("Reply"), Dkt. 378.  Defendants also filed a second request for judicial notice in support of their

6    reply.  Defendants' Request for Judicial Notice in Support of Reply ("RJN 2"), Dkt. 379.

7    **II.      LEGAL STANDARD**

8        **A.  Rule 12(b)(1)**

9            To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule

10   12(b)(1) motion.  Fed. R. Civ. P. 12(b)(1).  A defendant may either challenge jurisdiction

11   "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting

12   extrinsic evidence (affidavits, etc.) demonstrating the lack of jurisdiction on the facts of the case.

13   *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d

14   1035, 1039 (9th Cir. 2004).

15           "In a facial attack, the challenger asserts that the allegations contained in a complaint are

16   insufficient on their face to invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  During a

17   facial attack, the court examines the complaint as a whole to determine if the plaintiff has "alleged

18   a proper basis of jurisdiction."  *Watson v. Chessman*, 362 F. Supp. 2d 1190, 1194 (S.D. Cal.

19   2005).  When evaluating a facial attack, the court assumes the complaint's allegations truth and

20   draws all reasonable inferences in the plaintiff's favor.  *Wolfe*, 392 F.3d at 362.  The court may not

21   consider evidence outside the pleadings when deciding a facial attack.  *See, e.g.*, *MVP Asset*

22   *Mgmt. (USA) LLC v. Vestbirk*, 2011 WL 1457424, at *1 (E.D. Cal. Apr. 14, 2011).

23           In contrast, in resolving a factual attack, the district court may review evidence beyond the

24   complaint without converting the motion to dismiss into one for summary judgment.  *Safe Air*, 373

25   F.3d at 1039.  No presumptive truthfulness attaches to the plaintiff's allegations and the existence

26   of disputed material facts will not preclude the trial court from evaluating the merits of

27   Case No.: 5:16-cv-04775-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
28   DISMISS

*United States District Court*
*Northern District of California*

1   jurisdictional claims.  *Gregory Vill. Partners, L.P. v. Chevron, U.S.A., Inc.*, 805 F. Supp. 2d 888,

2   895 (N.D. Cal. 2011).  Further, once the defendant presents extrinsic evidence, the plaintiff, must

3   establish jurisdiction with evidence from other sources.  *Id.*; *see also Savage v. Glendale Union*

4   *High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

### B.  Rule 12(b)(6)

6          To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

7   matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*,

8   556 U.S. 662, 678 (2009) (discussing Federal Rule of Civil Procedure 8(a)(2)).  A claim has facial

9   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

10  inference that the defendant is liable for the misconduct alleged.  *Id.*  The requirement that the

11  court "accept as true" all allegations in the complaint is "inapplicable to legal conclusions."  *Id.*  It

12  is improper for the court to assume "the [plaintiff] can prove facts that it has not alleged" or that

13  the defendant has violated laws "in ways that have not been alleged."  *Associated Gen.*

14  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

15         If there are two alternative explanations, one advanced by the defendant and the other

16  advanced by the plaintiff, both of which are plausible, the "plaintiff's complaint survives a motion

17  to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal

18  can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged

19  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

20  1990).  Hence, when a claim or portion of a claim is precluded as a matter of law, that claim may

21  be dismissed pursuant to Rule 12(b). *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975

22  (9th Cir. 2010) (discussing Rule 12(f) and noting that 12(b)(6), unlike Rule 12(f), provides

23  defendants a mechanism to challenge the legal sufficiency of complaints).  However, a complaint

24  should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts

25  in support of the claim that would entitle the plaintiff to relief.  *No. 84 Employer-Teamster Joint*

26  *Council v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

27  Case No.: 5:16-cv-04775-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
    DISMISS

### III.   JUDICIAL NOTICE

Defendants request for the Court to take judicial notice of several exhibits.  Federal Rule of Evidence 201(b) permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute," that is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Specifically, a court may take judicial notice of matters of public record.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Defendants first request for the Court to take judicial notice of Exhibits 1–3.  *See* RJN at 2.  Exhibits 1 and 2 are excerpts of HPI and HPE's Form 10-Ks for the fiscal year ending October 31, 2015.  *See* Declaration of Richard W. Black ("Black Decl.") ¶¶ 2–3, Dkt. 372-1.  Exhibit 3 is the Department of Fair Employment & Housing's ("DFEH") response to a public records request that states that DFEH found no records regarding Plaintiff Kevin Alviso.  *Id.* ¶ 4.  In response, Plaintiffs argue that while the Court may take judicial notice of public documents, the Court may not notice the factual content of the exhibits therein.  This is true.  "[A] court may take 'judicial notice of matters of public record,' but 'cannot take judicial notice of disputed facts contained in such public records.'"  *Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765, 774 (N.D. Cal. 2019) (quoting *Khoja*, 899 F.3d at 999).  Where the SEC filings are "subject to varying interpretations, and there is a reasonable dispute as to what the [SEC filings] establish[]," the court should refuse to take judicial notice of the truth of any factual assertions or statements contained therein.  *Baird*, 403 F. Supp. 3d at 775 (quoting *Khoja*, 899 F.3d at 1000).  Hence, with respect to Exhibits 1 and 2, while the Court takes judicial notice of the documents, it does not take judicial notice of any disputed facts therein.  *But see infra* IV.B. (finding the facts therein not subject to reasonable dispute).

Plaintiffs next argue that the Court may not take notice of Exhibit 3.  The Court agrees—Plaintiffs have provided Plaintiff Alviso's notice of right to sue letter from DFEH, which shows that DFEH made an error when it responded to Defendants' public records request.  See RJN Opp.

United States District Court
Northern District of California

1    at 2.  Accordingly, Defendants request for judicial notice is **GRANTED** as to Exhibit 1 and 2, but

2    **DENIED** as to Exhibit 3.

3        Defendants next request for the Court to take judicial notice of Exhibits 1 and 2 attached to

4    the Second Black Declaration.  *See* RJN 2 at 2.  Exhibit 1 is the charge that Plaintiff Kevin Alviso

5    filed with the EEOC.  *Id.* at 2.  Exhibit 2 is a copy of Exhibit 2.4 of HP Inc.'s 2015 Form 8-K,

6    which was filed with the SEC on November 5, 2015.  Because both exhibits sought to be noticed

7    are matter of public record and are not subject to reasonable dispute, Defendants' request for

8    judicial notice is **GRANTED**.

9    **IV.    DISCUSSION**

10       Defendants first argue that Plaintiffs have failed to state an ADEA/FEHA[2] because they

11   have failed to plead plausible facts that support either (1) disparate treatment or (2) disparate

12   impact.  Mot. at 8, 11.[3]  Defendants further argue that certain claims against Defendants HPE and

13   HPI must be dismissed for lack of standing and/or failure to state a claim.  *Id.* at 18, 24.

14   Defendants last argue that Plaintiffs are not entitled to injunctive relief.  *Id.* at 24.  The Court

15   addresses each argument in turn.

16       **A.    ADEA/FEHA Claims**

17       The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to

18   fail or refuse to hire or to discharge any individual or otherwise discriminate against any

19   individual with respect to compensation, terms, conditions, or privileges of employment, *because*

20   *of* such individual's age."  29 U.S.C. § 623(a)(1) (emphasis added).  The statute provides that it is

21

22   [2] California courts look to federal precedent when interpreting the FEHA because of its similarity
     to the ADEA.  *See Guz v. Bechtel*, 8 P.3d 1089 (Cal. 2000).  If Plaintiffs fail to plead a ADEA
23   claim, they will also fail to plead an FEHA claim.  In fact, California law applies a lesser standard
     of causation.  *See Harris v. City of Santa Monica*, 294 P.3d 49, 55 (Cal. 2013) ("Our precedent has
24   recognized, however, that 'but for' causation is not the only possible meaning of the phrase
     'because of' in the context of an antidiscrimination statute.").  Hence, because the Court holds
25   below that Plaintiffs have plead a ADEA claim, Plaintiffs by default have plead a claim under the
     "easier" FEHA standard.
26   [3] The Parties agree that the allegedly wrongful policy is facially neutral.  "Where, as here, a
     plaintiff is challenging a facially neutral policy, there must be a specific allegation of
27   discriminatory intent."  *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).
     Case No.: 5:16-cv-04775-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

United States District Court
Northern District of California

not unlawful for an employer to base employment decisions on "reasonable factors other than age," or to discharge an individual for "good cause." *Id.* § 623(f)(1). The United States Supreme Court has recognized two theories of employment discrimination in the context of the ADEA: disparate treatment and disparate impact. *See Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *18 (N.D. Cal. Dec. 5, 2017) (collecting cases). In a disparate treatment claim, the employer "treats some people less favorably than others because of their race, color, religion [or other protected characteristics]." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (alteration in original) (citation omitted). Disparate impact claims, by contrast, "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* (citation omitted).[4]

In a disparate treatment case, liability depends on whether the protected trait—age—actually motivated the employer's decision. *Hazen*, 507 U.S. at 610. Hence, to establish a violation of the ADEA under the disparate treatment theory of liability, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (collecting cases). The plaintiff thus must establish causation; the plaintiff must show that age was the "but-for" cause of the employer's adverse action. *Id.* at 177. To demonstrate but-for causation, ADEA plaintiffs may rely on either direct or circumstantial evidence. *Id.* 177–78.

Defendants argue that Plaintiffs have not pled sufficient facts to show that they were terminated because of their age. Mot. at 8. Defendants contend that Plaintiffs have failed to plausibly allege the critical element of causation. *Id.* at 9. Plaintiffs maintain that the TAC alleges both direct and circumstantial evidence of disparate treatment.

"Direct evidence, in the context of an ADEA claim, is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly

---

[4] Because the Court holds that Plaintiffs have plead a disparate treatment claim, the Court does not reach the disparate impact arguments. *See* Opp. at 16, 19.

1   reflecting the alleged discriminatory attitude," which are "sufficient to permit the fact finder to

2   infer that the attitude was more likely than not a motivating factor in the employer's decision."

3   *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004) (quotation marks

4   and citation omitted). Plaintiffs argue that the TAC alleges ample direct evidence to allow the

5   Court to infer that the WFR plan was created and implemented to discriminate against older

6   workers. *See* Opp. at 10–11 (citing TAC ¶¶ 2, 6–9, 13, 14, 25, 31–35, 37, 47–56, 57, 69–74).

7   Plaintiffs further argue that the TAC adequately alleges that each Plaintiff was terminated because

8   of the discriminatory WFR plan. *See* TAC ¶¶ 76, 82, 89, 96, 106, 139. The Court agrees—the

9   TAC alleges sufficient direct evidence to support a plausible ADEA claim based on a disparate

10  treatment theory.

11       As recounted above, starting in 2012, Whitman implemented a five-year workforce

12  restructuring initiative in 2012. *See supra*; *see also* TAC ¶¶ 30–35. Whitman was vocal about her

13  desire to recruit and hire young people; Whitman wanted a "whole host of young people." *See*

14  TAC ¶¶ 30–35. Curiously, Defendants contend that these statements do not evince a

15  discriminatory intent toward older-workers since they simply related to HP Co.'s "high-level goal

16  to prepare for the eventual retirement of portions of the workforce." Reply at 4. Yet, this is

17  exactly contrary to Whitman's stated goal of reshaping and recalibrating the HP workforce to

18  *immediately* include more young people. *See* TAC ¶ 32 ("We have to fundamentally recreate the

19  labor pyramid."); *see also id.* ¶ 33 (discussing job cuts at HP and how they relate to HP's goal of

20  filing its labor pyramid with "lots of young people"). Defendants argue that even if these

21  statements show a preference toward younger employees, they do not show that Plaintiffs were

22  terminated because of their age. *See* Mot. at 10; *see also* Reply at 4–5. But, there is no "smoking

23  gun" requirement—all that Plaintiffs must plead are facts that plausibly show that it is more likely

24  than not that they were discriminated against because of their age. *See Enlow*, 389 F.3d at 812.

25  Whitman's statements tend to show that the HP entities did not want to (1) hire older employees or

26  (2) retain older employees. *See Enoh v. Hewlett Packard Enterprise Co.*, 2018 WL 3377547, at

27

28  Case No.: 5:16-cv-04775-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
    DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   *11 (N.D. Cal. July 11, 2018)[5] (finding Whitman's comments about her desire for a younger

2   workforce to be "startling").

3          Moreover, Whitman's statements were not "contained" to just HP Co.  To the contrary,

4   according to Plaintiffs' TAC, these statements directly translated into discriminatory hiring and

5   firing practices at both HPI and HPE.  *See supra* I.A. (noting that HPI and HPE used the same

6   WFR process and worked together to implement the WFR).  Indeed, the TAC shows that both HPI

7   and HPE used the Workforce Restructuring Initiative to terminate older employees and hire

8   younger ones.  The Initiative and the related WFR were announced as means to reduce the HP

9   workforce.  TAC ¶ 11.  Yet, the Initiative did not result in a decreased HP workforce.  Rather, "in

10  the nearly five years since [HP Entities] began to implement the Initiative and the WFR

11  plans . . . the HP Entities have added thousands of new [and younger] employees to replace those

12  who were terminated under the WFR Plans."  *Id.*  In Plaintiffs' view, Whitman's ageist statements

13  explain why the Initiative did not result in a reduction of HP employees—the Initiative and WFR

14  were always meant to be used to replace older employees with younger employees.  This is

15  supported by the factual allegations.  As Plaintiffs allege, HP job postings stated that HP was only

16  hiring younger employees.  TAC ¶¶ 56.  HP Co. even acknowledged that they should remove

17  references to experience levels so as to avoid discrimination related litigation.  *Id.* ¶ 58.  More

18  damning, when older employees were laid off, managers were "strongly encouraged" to hire

19  recent college graduates.  *Id.* ¶ 31.  This is to say, Plaintiffs have provided sufficient facts to

20  support their theory that HPI and HPE were terminating older employees under cover of the WFR

21  plan.

22         However, a general background of discrimination is insufficient.  In order to support their

23  disparate impact theory, Plaintiffs must show *their* age was the "but-for" cause for their

24

25  ─────────────────────
    [5] Defendants argue that this case undermines Plaintiffs' disparate treatment theory.  Reply at 5.  To
26  the contrary, unlike in *Enoh* which addressed a disparate impact claim, Plaintiffs are alleging a
    disparate treatment claim *and* Plaintiffs have plead sufficient facts which link Whitman's
27  "startling comments" to Plaintiffs' terminations.  *Cf. Enoh*, 2018 WL 3377547, at *11.

termination.  *See Gross*, 557 U.S. at 176.  In other words, Plaintiffs must connect the allegedly

discriminatory animus to their eventual terminations.  To show this by direct evidence, Plaintiffs

must show that all the evidence (or plead facts) show that discrimination was "more likely than

not a motivating factor in the employer's decision." *Enlow*, 389 F.3d at 812.  Plaintiffs have met

this burden.  They have plead plausible facts which show that Plaintiffs were competently

performing their jobs.  *See supra* I.A.  The TAC alleges that most of the named Plaintiffs were

excelling at their jobs.  *Id.*  Moreover, Plaintiffs have alleged facts that show that managers were

*required* to terminate older employees because such employees were "old." *See* TAC ¶¶ 66–68;

*see also* 29 U.S.C. § 623(a)(1) (requiring the allegedly discriminatory action to be "because of"

the plaintiff's age).  They also have alleged facts that plausibly show that older employees were

terminated based on antiquated stereotypes.  *See* TAC ¶ 60 (stating that Defendants considered

older employees to move "slow and steady" and "undesirable"); *see also Hazen Paper Co.*, 507

U.S. at 610 ("Disparate treatment . . . captures the essence of what Congress sought to prohibit in

the ADEA.  It is the very essence of age discrimination for an older employee to be fired because

the employer believes that productivity and competence decline with old age.").  These pleadings,

coupled with the general age-animus demonstrated by Whitman, support Plaintiffs' theory that

Plaintiffs' age (*i.e.*, their protected trait) was the *cause of* their termination.  *See Hazen Paper Co.*,

507 U.S. at 610.

  Contrary to Defendants' motion, *Eclectic Properties East, LLC v. Marcus & Millichap

Co.*, 751 F.3d 990 (9th Cir. 2014) does not change this analysis.  There, the Ninth Circuit reviewed

the *Twombly*/*Iqbal* pleading standard and discussed the meaning of "plausible." *Eclectic Props.*,

751 F.3d at 996.  Specifically, the court noted that:

> When faced with two *possible* explanations, only one of which can
> be true and only one of which results in liability, plaintiffs cannot
> offer allegations that are merely consistent with their favored
> explanation but are also inconsistent with the alternative
> explanation.  Something more is needed, such as facts tending to
> exclude the possibility that the alternative explanation is true, in
> order to render plaintiffs' allegations plausible.

United States District Court
Northern District of California

1    *Id.* at 996–97 (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir.

2    2013) (emphasis added).  Here, Plaintiffs' TAC offers facts that tend to exclude Defendants'

3    innocuous alternative explanation (*i.e.*, that HP entities were merely planning for older employees'

4    eventual retirement).  *See supra* (discussing Plaintiffs' allegations that they were fired without

5    cause and that managers were instructed to terminate older employees).  Hence, *Eclectic*

6    *Properties* does not change this Court's conclusion that Plaintiffs have plead direct evidence of

7    disparate treatment.[6]  Accordingly, Defendants' motion to dismiss Plaintiffs' ADEA/FEHA claims

8    is **DENIED.**

9         **B.  Standing**

10        It is well established that Article III standing must be satisfied prior to bringing any claim

11   in federal court.  *See Bruce v. United States*, 759 F.2d 755, 757 (9th Cir. 1985).  Standing is a

12   jurisdictional limitation; it is an "essential and unchanging part of the case-or-controversy

13   requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To

14

15   ―――――――――――――――

16   [6] Plaintiffs also argue that they have plead facts which show circumstantial evidence of disparate treatment.  Circumstantial evidence of age discrimination exists where a plaintiff is (1) at least forty years old at the time of discharge, (2) meets the requisite qualifications for the job, and (3) is

17   discharged while younger employees were retained.  *Enlow*, 389 F.3d at 812 (citing *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000)); *see also Brazill v. Cal. Northstate*

18   *College of Pharmacy, LLC*, 904 F. Supp. 2d 1047, 1052–53 (E.D. Cal. 2012).  If a plaintiff meets these factors, the burden shifts to the defendant to show that the plaintiff was terminated for a

19   legitimate, non-discriminatory reason.  *Enlow*, 389 F.3d at 812.  Hence, by pleading a *McDonnell Douglas* prima facie case of employment discrimination, plaintiffs can survive the motion to

20   dismiss phase.  *See, e.g.*, *Brazill*, 904 F. Supp. 2d at 1053.

21   After the Supreme Court's decision in *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020), the Court is unsure whether or not simply

22   pleading a *prima facie* case is sufficient.  In *Comcast*, the Supreme Court held that to plead a 42 U.S.C. § 1981 discrimination claim, the "plaintiff must initially plead and ultimately prove that,

23   *but for* race, it would not have suffered the loss of a legally protected right."  140 S. Ct. at 1019. The Supreme Court also noted that "*McDonnell Douglas* can provide no basis for allowing a

24   complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim."  *Id.*  Section 1981 and Section 623(a)(1) both require but-for causation to be initially plead

25   and ultimately proved.  Causation is thus an essential element of the discrimination claim. Therefore, simply pleading *prima facie* case of employment discrimination, without showing but-

26   for causation, is insufficient.  The Court held above that Plaintiffs have plead direct evidence to support causation.  Hence, the Court need not assess Plaintiffs' circumstantial evidence or resolve

27   the effect of *Comcast* on this case.

     Case No.: 5:16-cv-04775-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  establish Article III standing, a plaintiff must allege facts sufficient to show: (1) that she has

2  suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not

3  conjectural or hypothetical; (2) that the injury is "fairly traceable" to the challenged action of the

4  defendant; and (3) it is likely, as opposed to "merely speculative" that the injury will be redressed

5  by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

6  167, 180–81 (2000).  The burden to show standing is on the party who seeks the exercise of

7  jurisdiction in his or her favor to "clearly . . . allege facts demonstrating that he is a proper party to

8  invoke judicial resolution of the dispute." *United States v. Hays*, 515 U.S. 737, 743 (1995).  And,

9  when subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the

10  plaintiff bears the burden of proving jurisdiction in order to survive the motion. *Stock West, Inc. v.*

11  *Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

12        Only "employees" have standing to sue under the ADEA.  *See* 29 U.S.C. § 623(a); *see also*

13  *Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1312 (9th Cir. 1998) ("A claimant under . . . the

14  ADEA must establish himself as an 'employee.'").  Likewise, California law requires an

15  employment relationship to confer standing under the FEHA.  *See* Cal. Gov't Code § 12940; *see*

16  *also Estrada v. City of L.A.*, 159 Cal. Rptr. 3d 843, 846 (Ct. App. 2013) ("In order to recover

17  under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be

18  an employee." (quotation marks and citation omitted)); *Cavallaro v. UMass Mem'l Health Care,*

19  *Inc.*, 971 F. Supp. 2d 139, 146 (D. Mass. 2013) (stating that where liability is predicated on an

20  employment relationship, a plaintiff's alleged injuries "are only traceable to, and redressable by,

21  [the entities] who are deemed by law to have employed [them]").

22        Plaintiffs allege that they worked for *either* HPE or HPI.  Yet, Plaintiffs generally assert

23  claims against "HP Entities."  *See, e.g.*, TAC ¶ 112.  Defendants argue that this is improper

24  because some Plaintiffs were not employed by the company that they assert a discriminatory

25  termination claim.  Mot. at 3.[7]  Hence, in Defendants' view, some Plaintiffs lack standing to

26

27  [7] Defendants initially argued in their motion to dismiss that Plaintiff Alviso failed to exhaust his
Case No.: 5:16-cv-04775-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS
20

1    pursue discriminatory termination claims against HPE and/or HPI and so such Plaintiffs claims

2    must be dismissed pursuant to Rule 12(b)(1).  Plaintiffs argue that they have standing to pursue

3    claims against *any* HP entity because of (1) the integrated enterprise doctrine, (2) aiding and

4    abetting liability, or (3) assumption of liability.  The Court addresses each theory in turn.

**1.  Integrated Enterprise Doctrine**

6            Under the "single employer" or "integrated enterprise" doctrine, two or more business

7    entities may be treated as a single employer or integrated-enterprise.  The default presumption is

8    that "separate corporate entities have distinct identities" and plaintiffs bear a "heavy burden under

9    both California and federal law when they seek to rebut this presumption and hold multiple

10   corporate entities liable as a single employer."  *Rhodes v. Sutter Health*, 2012 WL 662462, at *5

11   (E.D. Cal. Feb. 28, 2012).  Courts weigh four factors when analyzing whether entities constitute

12   an integrated enterprise: (1) "interrelation of operations," (2) "common management," (3)

13   "centralized control of labor relations," and (4) "common ownership or financial control."  *Kang*

14   *v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002).

**a.  Interrelation of Operations and Common Management**

16           To make a sufficient claim for interrelation of operations, a plaintiff must plead facts

17   showing that the alleged integrated enterprises have a greater interrelation than normal.[8]  *Lackey v.*

18   *Fed. Express Corp.*, 2018 WL 6174719, at *3 (C.D. Cal. June 11, 2018) (quotation marks and

19

20   _____

21   administrative remedies as required under FEHA.  *See* Mot. at 3.  Plaintiffs rebutted this by filing
     a copy of Defendant Alviso's right-to-sue letter from the DFEH.  Opp. at 20.  Defendants argue in

22   response that the Court should ignore the letter because Plaintiffs failed to provide Defendants
     with this letter earlier.  Of course, there is no requirement at this stage that such a letter be

23   presented to Defendants.  In the alternative, Defendants argue that the Court should ignore the
     letter because it was presented for the first time in opposition papers.  But, the contrary is true—

24   Defendants raised this issue in their motion papers, Plaintiffs are entitled to rebut Defendants'
     allegations with documents subject to judicial notice.  The Court thus declines to examine
     Defendants' exhaustion argument any further.

25   [8] Typically, the integrated enterprise doctrine is applied to parent-subsidiary relationships.
     Defendants argue that on this ground alone, the integrated enterprise doctrine is not available to

26   Plaintiffs.  *See* Reply at 11.  Yet, Defendants provide no precedent to support this argument.  The
     Court does not see why the integrated enterprise doctrine would be unavailable outside the parent-

27   subsidiary context.
     Case No.: 5:16-cv-04775-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

1  citation omitted).  "Shared management is shown when the parent corporation shares directors

2  with the subsidiary and controls the selection of board members for the subsidiary." *Id.* at *4.

3        The TAC has no specific allegations regarding interrelation of operations or common

4  management.  *See generally* TAC.  The TAC only alleges that Whitman orchestrated the split of

5  HP Co. into HPI and HPE and that she continued to "exert control and substantial influence over

6  the implementation of the Initiative at the post-split entities, HPI and HPE."  *Id.* ¶ 7; *see also id.*

7  ¶ 25 (alleging that both entities had virtually identical discriminatory policies and practices).

8  Plaintiffs argue that HPI and HPE's use of the same WFR processes, terminology, and paperwork

9  as HP Co. shows interrelation.  *See id.* ¶ 36.  However, such bare allegations about Defendants'

10  shared management and WFR processes are insufficient to show interrelation of operations.

11  *Lackey*, 2018 WL 6174719, at *3; *see also Rhodes*, 2012 WL 662462, at *6 ("Some overlap

12  between the management of corporations, though, is not necessarily inappropriate.").  That both

13  HPI and HPE used the same WFR processes and paperwork is irrelevant—the question is whether

14  the companies were so interrelated that they operated as one.  Plaintiffs do not allege this.  To the

15  contrary, they argue that the companies were interrelated because they *seperately* used the same

16  WFR processes.

17        There is only one common manger alleged: Meg Whitman.  Yet, there is no allegation that

18  Whitman did not respect HPE and HPI's separate corporate identities or that HPI controlled

19  HPE's board of directors (or vice versa).  *See Rhodes*, *Rhodes*, 2012 WL 662462, at *6.

20  Accordingly, Plaintiffs have failed to show common ownership and management.

21                  **b.  Centralized Control of Labor Relations**

22        "Although courts consider the four factors together, they often deem centralized control of

23  labor relations the most important [factor]."  *Lackey*, 2018 WL 6174719, at *3 (quotation marks

24  and citation omitted).  The critical question is, "what entity made the final decisions regarding

25  employment matters related to the person claiming discrimination?"  *Id.* (quoting *Rhodes*, 2012

26  WL 662462, at *5).

27  

28  
Case No.: 5:16-cv-04775-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

22

United States District Court
Northern District of California

1    The TAC fails satisfy the control prong because it fails to specify how HPE managers and

2    supervisors took part in day-to-day employment decisions about HPI employees (and vice versa).

3    *See Rhodes*, 2012 WL 662462, at *6 (noting that complaint failed to allege facts suggesting any

4    centralized control of employment matters in the parent or that the parent played any role in the

5    employment actions at issue).  Indeed, here, there is no allegation that HPI directed HPE's hiring

6    and/or firing decisions.  The TAC is devoid of any allegations that connect the alleged misconduct

7    to each of the named Defendants.  *See Piccirillo v. Testequity, Inc.*, 2015 WL 4778823, at *4

8    (C.D. Cal. Apr. 13, 2015).  Allegations that simply lump HPI and HPE together by calling them

9    "the HP Entities" fail to state a valid claim because they do not articulate the manner in which

10   HPI/HPE took part in the employment actions at issue.  For these reasons, Plaintiffs have failed to

11   plead facts that show centralized control.

12                        **c.  Common Ownership or Financial Control**

13   Lastly, while the TAC alleges that HPE and HPI are "HP Entities," judicially-noticed facts

14   show that HPI and HPE are separate corporations.  *See* RJN, Ex. 1 & 2.  Moreover, "common

15   ownership or control alone is never enough to establish parent liability."  *Lackey*, 2018 WL

16   6174719, at *4.  Accordingly, because the FAC does not include allegations sufficient to satisfy

17   any of the above factors, the FAC fails to plausibly allege that Defendants are an integrated

18   enterprise.

19                              **2.  Aiding and Abetting Liability**

20   Under the FEHA, those who aid or abet another in any discriminatory practice are jointly

21   and severally liable.  Cal. Gov't Code § 12940(i) (making it an unlawful employment practice for

22   "any person to aid, abet, incite, compel or coerce the doing of any acts forbidden" by the FEHA).

23   To plead aiding and abetting liability under the FEHA, Plaintiffs must specifically allege that each

24   Defendant knew the other's conduct amounted to discrimination and gave substantial assistance to

25   that discrimination.  *See Hall v. Hamilton Family Ctr.*, 2014 WL 1410555, at *4 (N.D. Cal. Apr.

26   11, 2014) (noting that FEHA does not define "aiding or abetting" and that courts have adopted the

27   Case No.: 5:16-cv-04775-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    common law definition).

2    　　　The TAC does not plead facts that show Defendants knew the other's conduct amounted to

3    discrimination.  For instance, Plaintiffs argue that after Plaintiff Rahman was terminated by HPI

4    pursuant to the WFR plan, HPE refused to hire him because he was laid off under a WFR Plan.

5    *See* TAC ¶ 46.  Lacking in this allegation, however, is *any* indication that HPE (1) knew that

6    Plaintiff Rahman was terminated pursuant to a WFR plan *or* (2) knew that HPI's conduct was

7    discriminatory.  *But see Hall*, 2014 WL 1410555, at *5 (analyzing when aiding and abetting

8    liability attaches); *Alch v. Superior Court*, 19 Cal. Rptr. 3d 29 (Ct. App. 2004).  While Plaintiffs

9    plead that Plaintiff Rahman applied to the HPE job via the 60 Day Preferential Rehire Period, it is

10   unclear whether or not applicants were specifically labeled as preferential rehires, such that HPE

11   would know that Rahman as terminated pursuant to a WFR plan.  This Court thus cannot conclude

12   that Defendants knew about each other's discriminatory conduct.

### 3.  Assumption of Liability

14   　　　Plaintiffs last argue that both HPI and HPE are responsible for age discrimination that

15   occurred before HP split into HPI and HPE.  In Plaintiffs' view, the "Separation and Distribution

16   Agreement," which separated the "Enterprise Business" from HP Co. and created HPE, shows that

17   HPE assumed liability for HP Co.'s discrimination that occurred prior to the split.  Opp. at 21.

18   Plaintiffs further maintain that the Agreement holds both HPI and HPE responsible for age

19   discrimination that occurred before HP split into HPI and HPE.  *Id.*

20   　　　The "Employee Matters Agreement," which was attached to the "Separation and

21   Distribution Agreement," states that neither HPE or HPI assumed liability associated with the

22   termination of employees who did not primarily perform work for that entity.  *See* RJN 2, Ex. 2 at

23   § 2.2(a) (stating that HPI will pay and compensate only HPI employees); *id.* § 2.2(b) (same); *see*

24   *also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not,

25   however, accept as true allegations that contradict matters properly subject to judicial notice or by

1    exhibit.").  The Court thus finds that Defendants did not assume HP Co.'s liabilities.[9]

2    To clarify, Plaintiffs who worked for and were terminated by HPE cannot allege claims

3    against HPI and Plaintiffs who worked for and were terminated by HPI cannot allege claims

4    against HPE.  Likewise, Plaintiffs who worked for HP Co. cannot assert claims against HPI or

5    HPE.  Moreover, such Plaintiffs cannot represent a class asserting such claims.  *See Warth v.*

6    *Seldin*, 422 U.S. 490, 502 (1975) (holding that a putative class action plaintiff cannot manufacture

7    an injury by relying on the purported injuries "suffered by other, unidentified members of [a]

8    class").[10]  Accordingly, Defendants motion to dismiss claims asserted against HPI by non-HPI

9    employees and claims asserted against HPE by non-HPE employees is **GRANTED**.

10   ### C.  UCL Claim

11   The UCL "establishes three varieties of unfair competition [claims]—acts or practices

12   which are unlawful, or unfair, or fraudulent."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

13   20 Cal. 4th 163, 180 (1999).  Plaintiff Vatturi and Alviso assert a UCL claim based on the alleged

14   discriminatory practices outlined above and argue that these practices are "unlawful, unfair, and/or

15   fraudulent."  *See* TAC ¶ 166.  Defendants concede that as plead, the alleged discriminatory

16   practices amount to an unlawful and/or unfair business practice.  *See* Mot. at 23 (arguing only that

17   Plaintiff Alviso's claim must be dismissed because he failed to exhaust his administrative

18   remedies); *but see supra* n.7 (noting that Plaintiff Alviso did exhaust his administrative remedies).

19   However, Defendants argue that Plaintiffs have not plead enough facts to support their

20   fraudulent UCL claim.  Mot. at 24.  Rule 9(b)'s particularity requirement applies to UCL claims

21   bought in federal court where a fraudulent business practice is alleged.  *See Kearns v. Ford Motor*

22   *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Under Rule 9(b), averments of fraud must be

23   accompanied by "the who, what, when, where, and how" of the misconduct charged.  *Vess v.*

24

---

25   [9] The Court notes that the TAC is unclear as to which employee worked for which HP entity;
     without such clarity, the Court cannot determine the scope of the relevant classes.  The Court
26   instructs Plaintiffs to clarify this when they amend their complaint.
     [10] This reasoning applies equally to Plaintiffs' derivative UCL claims.  *See Stevenson v. Superior*
27   *Court*,16 Cal. 4th 880, 904–06 (1997).
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

United States District Court
Northern District of California

1    *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The TAC does not allege the "who,

2    what, when, where, and how" of the misconduct charged. Rather, it only mentions "fraud" in

3    passing without specifying the conduct that amounted to fraud. *See* TAC ¶¶ 163, 166. These

4    bare-bones allegations amount to legal conclusions and are thus insufficient to establish a UCL

5    claim under the "fraud prong." For this reason, Defendants' motion to dismiss the fraudulent UCL

6    claim is **GRANTED.**

7            **D.  Injunctive Relief**

8            Defendants last argue that Plaintiffs are not entitled to injunctive relief. *See* TAC at 30

9    (requesting an injunction that orders Defendants to stop discriminating against older workers

10   based on age). Defendants argue that Plaintiffs have not plead facts sufficient to show that

11   Defendants' allegedly discriminatory conduct is ongoing or likely to recur such that injunctive

12   relief would remedy present and ongoing discrimination.

13           Former employees typically lack standing to bring claims for injunctive relief against their

14   former employers—such employees typically cannot meet the "redressability" requirement of

15   Article III. *See Walsh*, 471 F.3d at 1037; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

16   364–65 (2011) (finding that a plaintiff who cannot reasonably be expected to benefit from

17   prospective relief lacks standing for an injunction). Courts have carved out a limited exception: a

18   non-employee or former employee may have standing to sue an employer for injunctive relief if

19   such individuals are in the process of seeking reinstatement to their former positions or if they are

20   seeking work from that employer. *See id.* (collecting cases). Indeed, past exposure to illegal

21   conduct "does not itself show a present case or controversy regarding injunctive relief . . . if

22   unaccompanied by any continuing, present adverse effects." *O'Neal v. City of Seattle*, 66 F.3d

23   1064, 1066 (9th Cir. 1995) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also*

24   *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (noting that claims for

25   injunctive relief become moot once it is clear the conduct alleged as the basis for the requested

26   relief "could not reasonably be expected to recur").

27   Case No.: 5:16-cv-04775-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

The last named Plaintiff, Plaintiff Alviso, was terminated in October 2016.  *See* TAC ¶¶ 16–21.  There are no allegations that the discriminatory conduct either (1) continued after October 2016 *or* (2) that the discriminatory conduct continued to personally affect Plaintiffs.  Indeed, none of the Plaintiffs' specific allegations involve conduct that occurred after 2017.  *See id.* ¶ 2 (alleging that Defendants planned to restructure the workforce from 2012 through 2017).  Likewise, no Plaintiff alleges that they are seeking reemployment from Defendants.  Plaintiffs thus have not shown that they are "reasonably likely" to benefit from prospective relief and so, Plaintiffs lack standing to pursue injunctive relief.  *See Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (dismissing request for injunctive relief at the pleadings stage where claim of injury was "precisely the type of hypothetical injury that is fatal to a claim for injunctive relief"); *cf.* Opp. at 22 (arguing that at the pleading stage, courts should not strike remedies).  Accordingly, Defendants motion to dismiss Plaintiffs' request for injunctive relief is **GRANTED**.

## V.    LEAVE TO AMEND

When dismissing a complaint for failure to state a claim, a court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Defendants argue that this Court should not grant Plaintiffs leave to amend since this is Plaintiffs' third amended complaint.  The Court will, however, allow Plaintiffs one more opportunity to amend their complaint since it is possible Plaintiffs can cure their allegations by alleging, among other things, more particular facts to support an (1) aiding and abetting theory of liability and (2) injunctive relief.  Accordingly, the Court finds amendment would not be futile and **GRANTS** Plaintiff leave to amend.

United States District Court
Northern District of California

1

**VI.     CONCLUSION**

2       For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part and**

3   **DENIED in part**.  Plaintiff may file an amended complaint curing the deficiencies discussed

4   herein by **July 9, 2020.**  Plaintiff may not add new claims or parties without leave of the Court or

5   stipulation by the Parties pursuant to Federal Rule of Civil Procedure 15.

6       **IT IS SO ORDERED.**

7   Dated: May 18, 2020

8

_____
EDWARD J. DAVILA
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:16-cv-04775-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS