1   JENNIE LEE ANDERSON (SBN 203586)
    jennie@andrusanderson.com
2   LELAND H. BELEW (SBN 293096)
    leland@andrusanderson.com
3   ANDRUS ANDERSON LLP
    155 Montgomery Street, Suite 900
4   San Francisco, CA 94104
    Phone: (415) 986-1400
5   Fax:    (415) 986-1474

6   DOUGLAS P. DEHLER (admitted *pro hac vice*)
    doug.dehler@wilaw.com
7   PAUL W. ZIMMER (admitted *pro hac vice*)
    paul.zimmer@wilaw.com
8   O'NEIL, CANNON, HOLLMAN, DEJONG & LAING S.C.
    111 East Wisconsin Avenue, Suite 1400
9   Milwaukee, WI 53202
    Phone: (414) 276-5000
10  Fax:    (414) 276-6581

11  Attorneys for Plaintiffs and the Proposed Classes

12

13                    UNITED STATES DISTRICT COURT

14              FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                          SAN JOSE DIVISION

16

| | |
|---|---|
| 17  DONNA J. FORSYTH, ARUN VATTURI, DAN WEILAND, SHAFIQ RAHMAN, AND KEVIN ALVISO, for and on behalf of themselves and other persons similarly situated, | Case No. 5:16-cv-04775-EJD |
| | **CLASS ACTION** |
| 20                    Plaintiffs, | **FOURTH AMENDED COMPLAINT** |
| 21          vs. | **JURY TRIAL DEMANDED** |
| 22  HP INC. f/k/a/ HEWLETT-PACKARD COMPANY and HEWLETT PACKARD ENTERPRISE COMPANY, | |
| 24                    Defendants. | |

25

26

27

28

Plaintiffs Donna J. Forsyth, Arun Vatturi, Dan Weiland, Shafiq Rahman, and Kevin Alviso ("Plaintiffs"), on behalf of themselves and other persons similarly situated, hereby file this Fourth Amended Complaint against HP Inc. (formerly known as Hewlett-Packard Company) and Hewlett Packard Enterprise Company pursuant to the Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 381) dated May 18, 2020.  As and for their claims against HP Inc. and Hewlett Packard Enterprise Company, Plaintiffs allege and state as follows:

**INTRODUCTION**

1.      Defendants HP, Inc. ("HPI") and Hewlett Packard Enterprise Company ("HPE"), through coordinated employment policies and practices, have unlawfully discriminated against Plaintiffs and other similarly situated employees because of their age.

2.      Until November 1, 2015, HPI was doing business as Hewlett-Packard Company. Effective November 1, 2015, Hewlett-Packard Company was renamed HPI and, at the same time, HPI spun off its enterprise division to create a new entity: Defendant HPE.  Hereinafter, the term "Hewlett-Packard Company" refers to both HPI and HPE, prior to November 1, 2015.

3.      In 2012, under the direction of Ms. Meg Whitman, who was then its President and Chief Executive Officer (CEO), Hewlett-Packard Company began implementing a company-wide initiative to replace thousands of existing, older workers with new, younger employees. (hereinafter, referred to as the "Workforce Restructuring Initiative" or "Initiative").  The Initiative encompassed multiple workforce reduction plans implemented during Ms. Whitman's tenure, both before and after Hewlett-Packard Company split into HPI and HPE.

4.      In October 2013, Ms. Whitman admitted publicly during a Securities Analyst Meeting that the Initiative's overarching goal was to "recalibrate and reshape" the workforce by "replacing" existing workers with "a whole host of young people."

5.      Effective November 1, 2015, after Hewlett-Packard Company was renamed HPI and HPE was spun off as a separate entity, Ms. Whitman served as the Chair of the Board of Directors for HPI until July 26, 2017. She also served as the CEO for HPE until February 1, 2018 and served on HPE's Board of Directors until February 1, 2019.

6.      During Ms. Whitman's tenure, both HPI and HPE continued to implement the Workforce Restructuring Initiative in concert with one another, shedding thousands of additional employees.

7.      Ms. Whitman repeatedly admitted that her goal was to make the entire organization younger. In pursuit of this goal, HPI and HPE have shed thousands of older workers, while at the same time aggressively recruiting younger employees to replace them.

8.      Ms. Whitman not only implemented and controlled the Workforce Restructuring Initiative, she also continued to exert control and substantial influence over the implementation of the Initiative after Hewlett-Packard Company was renamed HPI and HPE was formed, including by initiating new rounds of discriminatory terminations at both entities.

9.      HPI and HPE may contend that the Workforce Restructuring Initiative was always meant to be age-neutral. However, the Initiative and the programs and plans implemented under it have had a clear and substantially adverse impact on older employees.

10.     At worst, HPI and HPE each intentionally designed and carried out the Initiative to discriminate willfully against older workers in an effort to get younger. At best, the Initiative was comprised of facially neutral policies that disproportionately and adversely impacted both HPI's and HPE's older workers.

11.     Since the Workforce Restructuring Initiative was first implemented beginning in 2012, it has involved a coordinated two-prong strategy: (1) pushing current, older workers out of both HPI (formerly Hewlett-Packard Company) and HPE, while (2) simultaneously hiring a large number of new, younger employees to replace them. As just one means of executing the first prong of this strategy, under Ms. Whitman's direction,  Hewlett-Packard Company (which later became HPI) implemented the "2012 Workforce Reduction Plan," which continued to be implemented by both HPI and HPE as part of the greater Initiative (hereinafter, the pre- and post-split Workforce Reduction Plans initiated by Defendants during Ms. Whitman's tenure are referred to collectively as the "WFR Plans"). Upon information and belief, the Workforce Restructuring Initiative is ongoing.

FOURTH AMENDED COMPLAINT

12.     Although the titles of the WFR Plans suggested they would result in a "workforce reduction," Ms. Whitman herself admitted that the true goal of the Initiative has been to restructure, recalibrate and reshape the workforces of both HPI and HPE to make them younger. Indeed, in the years since they began to implement the Initiative and the WFR Plans in 2012, HPI and HPE have added thousands of new employees to replace those terminated under the WFR Plans.

13.     As many in the technology industry know, HPI and HPE are generally regarded as being among the oldest companies in Silicon Valley, with employees having a higher average age compared to companies such as Facebook or Google. When Ms. Whitman took over in 2012, she perceived the age of the workforce at HPI (then called Hewlett-Packard Company) to be a problem that needed solving, rather than an asset to be harnessed. With this mindset, Ms. Whitman began the Initiative to make the company younger, and that Initiative has been ongoing since then.

14.     Plaintiffs, along with thousands of other similarly situated former employees of HPI and HPE, are among those who were discarded as part of the Initiative because they were considered too old.

15.     The Initiative violated federal laws and California state laws prohibiting age discrimination in employment. The Initiative was designed and implemented to discriminate intentionally against employees based on age. In addition, the WFR Plans and other employment programs that were used to implement the Initiative's goals have had a substantially adverse impact on employees aged 40 or older.

16.     For these reasons, as well as those set forth in greater detail below, Plaintiffs bring this action on behalf of themselves and others similarly situated to recover damages and seek other relief available under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, as well as under the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12900, *et seq.*, and other California state laws.

## THE PARTIES

17.     Plaintiff Donna Forsyth is a resident of the State of Washington. She worked at HPE (and previously at Hewlett-Packard Company, before HPE was spun off) until she was laid

FOURTH AMENDED COMPLAINT

off in May 2016, when she was 62 years old. Plaintiff Forsyth was terminated while employed by HPE.

18.     Plaintiff Arun Vatturi is a resident of the State of California. He worked at HPI (both when it was named Hewlett-Packard Company and after it was named HPI) until he was laid off in January 2016, when he was 52 years old. Plaintiff Vatturi was terminated while employed by HPI.

19.     Plaintiff Dan Weiland is a resident of the State of Texas. He worked at HPI (formerly Hewlett-Packard Company) until he was laid off in July 2015, when he was 63 years old. Plaintiff Weiland was terminated while employed by HPI when it was still named Hewlett-Packard Company.

20.     Plaintiff Shafiq Rahman is a resident of the State of Texas. He worked at HPE (and previously Hewlett-Packard Company, before HPE was spun off) until he was laid off in July 2016, when he was 65 years old. Plaintiff Rahman was terminated while employed by HPE.

21.     Plaintiff Kevin Alviso is a resident of the State of California. He worked at HPE (and previously Hewlett-Packard Company, before HPE was spun off) until he was laid off in October 2016, when he was 53 years old. Plaintiff Alviso was terminated while employed by HPE.

22.     Defendant HP Inc. is a corporation organized under the laws of the State of California with its headquarters and principal place of business located at 1501 Page Mill Road, Palo Alto, California. HPI was previously named Hewlett-Packard Company. Effective as of November 1, 2015, Hewlett-Packard Company was renamed HPI.

23.     Defendant Hewlett Packard Enterprise Company is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business located at 6280 America Center Dr., San Jose, California. HPE was spun off from HPI effective November 1, 2015.

24.     It is undisputed that the corporate entity once known as Hewlett-Packard Company still exists but was renamed HPI effective November 1, 2015.  In its 2015 Form 10-K, HPI states:

> In connection with the Separation, **_Hewlett-Packard Company changed its name to HP Inc._** Accordingly references to the 'company' in this report refer to Hewlett-Packard Company with respect to events occurring on or prior to October 31, 2015 and to

HP Inc. with respect to events occurring after October 31, 2015.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this action pursuant to the ADEA, 29 U.S.C. § 621, *et seq.*

26.     This Court has supplemental jurisdiction over the California state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

27.     This Court has personal jurisdiction over Defendants because they are headquartered and do substantial business in the State of California.

28.     Venue is proper in the Northern District of California, San Jose Division, pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because a substantial part of the events giving rise to Plaintiffs' claims arose in this District, and because both Defendants are headquartered here.

## FACTUAL ALLEGATIONS

### *HPI and HPE's Publicly Stated Goal to Get Younger*

29.     Throughout the time that HPI and HPE were developing and carrying out the Workforce Restructuring Initiative, Ms. Whitman held senior leadership positions at both companies. She was the CEO of HPI when it was doing business as Hewlett-Packard Company and continued on as the Chair of HPI's Board of Directors (after November 1, 2015) and became the CEO of HPE (effective November 1, 2015). Throughout this time, Ms. Whitman publicly revealed that her overarching goal was to make HPI and HPE younger.

30.     Ms. Whitman candidly admitted this objective when discussing the need to change the pre-split company's "labor diamond" into a "labor pyramid" or a "quite flat triangle" with large numbers of young people at its base. Specifically, during an October 2013 Securities Analyst Meeting, Ms. Whitman said:

> [A]s we think about our overall labor pyramid at Hewlett-Packard, we need to return to a labor pyramid that really looks like a triangle where you have a lot of early career people who bring a lot of knowledge who you're training to move up through your organization, and then people fall out either from a performance perspective or whatever.
>
> And over the years, our labor pyramid doesn't look—has become not a triangle. It's become a bit more of a diamond. And *we are working very hard to recalibrate and reshape our labor pyramid so that it looks like the more classical pyramid* that you should have

FOURTH AMENDED COMPLAINT

1
2
3

in any company and particularly in ES. If you don't have **a whole host of young** people who are learning how to do delivery or learning how to do these kinds of things, you will be in [for] real challenges.

. . . .

4
5
6
7

Now, that's not something that changes like that. Changing the same shape of your labor pyramid takes a couple of years, but we are on it, and **we're amping up our early career hiring, our college hiring**. And we put in place an informal rule to some extent which is, listen, when you are **replacing** someone, really think about the new style of IT skills. (emphasis added.)

8
9
10
11
12

31.     Two years later, at another Securities Analyst Meeting held in September 2015 (just before the anticipated name change to HPI and spin-off of HPE effective November 1, 2015), Ms. Whitman reiterated her position that her goal was to create a "labor pyramid" that was "quite flat," stating:

13
14

We have to fundamentally recreate the labor pyramid. Many of you heard me say our labor pyramid in Enterprise Services looks like a diamond and it needs to look like a triangle and quite frankly it needs to look like a quite flat triangle to be competitive.

15
16
17
18
19

32.     In November 2015, more than three years after implementing the Initiative and the 2012 WFR Plan, and as Ms. Whitman was continuing senior leadership positions at both HPI and HPE, Ms. Whitman again declared publicly during an interview on CNBC that the goal was for HPI and HPE to get younger:

20
21
22
23

Interviewer:     You did announce significant job cuts about a month or so ago. . . . Is that going to be it for HP?

Ms. Whitman: That should be it. That will allow us to right-size our Enterprise Services business . . . to make sure that we've got a labor pyramid with **lots of young people** coming in right out of college and graduate school and early in their careers. That's an important part of the future of the company. . . . (emphasis added).

24
25
26
27
28

33.     Notably, Ms. Whitman answered the CNBC interviewer's question about **job cuts** by saying that HPI and HPE would be doing a lot of additional **hiring** of "young" people. These statements demonstrated the true purpose of the Initiative: to reduce the **age** of the companies' workforces, not the size.

34.     When carrying out the Initiative, senior management at both Hewlett-Packard Company (now named HPI) and HPE (both acting under the direction of Ms. Whitman) provided managers throughout the country with two simultaneous orders: (1) terminate a specific number of employees, called "slates," pursuant to a WFR Plan; and (2) hire a specific number of requisitions ("reqs") to replace them, focusing on new, younger hires. The issuance of these "slates" and "reqs" followed a distinct pattern: an upper-level manager would order a subordinate manager to lay off a designated number of experienced, older, tenured "LT" (meaning "long-term" or "long-tailed") employees, while simultaneously providing that manager a similar number of new "reqs" authorizing the hiring of recent "graduate" or "early career" employees to replace those just fired.

35.     HPI and HPE used uniform, near-verbatim paperwork when terminating Plaintiffs and other class members, who all received the same vaguely worded, boilerplate reasons for being terminated, regardless of which of entity they worked for after the name change and spin-off on November 1, 2015. Those notices at both HPI and HPE, before and after the split, generically state: "Employees were selected for the reduction in force because the job they were performing will no longer continue, their skill set was not applicable to the Company's or organization's operations going forward, and/or other employees were viewed as better qualified because of past performance and competency evaluation, which may include skills, abilities, knowledge and experience." This broadly worded, proffered justification for firing these employees was merely a pretext for policies of overt age discrimination.

36.     Even when a terminated employee's specific job title or position was eliminated, consistent with Ms. Whitman's statements about the Workforce Restructuring Initiative generally, those positions were not truly eliminated, but were simply staffed with new, younger hires at both entities.

### *Defendants' Other Efforts to Eliminate Older Workers*

37.     In addition to terminating employees under the WFR Plans, HPI and HPE used other tactics to push current, older workers out—thereby further fulfilling the first prong of the Initiative. For example, in 2012 and 2014, Hewlett-Packard Company implemented early and

1   phased retirement programs under which employees having a combined number of years in terms

2   of age and tenure were strongly encouraged to "voluntarily" phase out their employment.

3         38.    In 2016, HPI initiated nearly the same phased retirement program it had

4   implemented when it was doing business as Hewlett-Packard Company, and HPE also

5   implemented similar retirement policies to strongly encourage older employees to leave the

6   company. Indeed, as recently as 2020, HPE initiated a similar retirement program to encourage

7   older employees to leave the company.

8         39.    For example, HPI proposed that Plaintiff Dan Weiland take early phased retirement

9   in September 2014. However, Mr. Weiland declined because he was not ready to retire and wanted

10  to continue working. Nevertheless, Mr. Weiland's supervisor tried to persuade him to participate

11  in the program, even though it offered no significant benefits to Mr. Weiland. It was simply a way

12  for HPI to apply pressure on Mr. Weiland to leave the company "voluntarily."

13        40.    The retirement programs have put older employees in a dilemma. During meetings

14  with older employees where the various phased retirement programs are explained and promoted

15  by management, the elephant in the room is looming: each person is thinking, like Mr. Weiland

16  did, "If I turn down this retirement program, am I just going to be laid off anyway?"

17        41.    In Mr. Weiland's case, and in thousands of others, that question was answered just

18  how Mr. Weiland feared: shortly after he turned down the 2014 phased retirement program,

19  Mr. Weiland's employment was simply terminated under Hewlett-Packard Company's WFR Plan.

20  As time went on, older employees at both HPI and HPE received the message: they were in serious

21  jeopardy of losing their jobs.

22        42.    HPI, before spinning off HPE into its own company, also employed a bait-and-

23  switch strategy with its employees regarding work-at-home policies. Specifically, just before

24  implementing the 2012 WFR Plan, Hewlett-Packard Company adopted new employment policies

25  that strongly encouraged employees to work remotely from home. But then, shortly after it initiated

26  its 2012 WFR Plan, Hewlett-Packard Company (acting at Ms. Whitman's direction) reversed

27  course and suddenly required all employees to appear regularly at physical office locations. Not

28  only was this a complete reversal of the prior policy (which was only recently implemented), in

many cases, the offices where these employees previously worked had been closed. Thus, many employees found themselves needing to make hour-plus long commutes to new offices that often did not even have room for them. This policy change disproportionately impacted older employees and amplified the ongoing hostility toward older workers.

43.     Pursuant to their Workforce Restructuring Initiative, HPI and HPE also implemented bans on hiring employees who were terminated pursuant to any WFR Plan implemented by either HPI or HPE. In other words, HPI and HPE effectively blacklisted employees who were terminated under the WFR Plans by either company. This ensured that the current, older workers would not be re-hired by either HPI or HPE.

44.     This blacklisting policy was implemented even though both HPI and HPE claimed to have a "60 Day Preferential Rehire Period" during which those terminated under a WFR Plan were encouraged to apply for new positions within either HPE or HPI (both before and after the name change and spin-off). These employees were told they would receive preferential hiring status for 60 days following their termination. However, although apparently meant to be facially neutral, in practice, the 60-day Preferential Rehire Period was a farce for older employees.

45.     For example, after Mr. Rahman was terminated, HPE created a new job opening for a nearly identical position in Colorado Springs, Colorado. Mr. Rahman was appropriately qualified for that position and applied for it during his 60 Day Preferential Rehire Period, but HPE refused to hire him because he was laid off under a WFR Plan. Both HPI and HPE engaged in this policy of blacklisting their own and each other's former employees in order to prevent them from being rehired.

### *Defendants' Internal Policies to Hire Young Employees*

46.     While pushing out older workers as part of the first prong of the Initiative, both HPI and HPE also hired (and continue to hire) thousands of new, younger workers as part of the Initiative's second prong.

47.     In other words, between the date when the so-called workforce "reduction" began in 2012 and the present, both HPI and HPE have continued to hire aggressively. The primary difference is that, since 2012, both HPI and HPE have hired a disproportionately large number of

new, younger employees (under the age of 40) to replace older employees (aged 40 and older) who were terminated.

48.     Thus, neither HPI nor HPE were actually engaging in a workforce "reduction." Rather, as Ms. Whitman admitted publicly, the Initiative has always been an effort to "recalibrate" (most modestly stated) or "fundamentally recreate" (most accurately stated) the workforces at both HPI and HPE with a "whole host of young people." Regardless of which words are used, HPI and HPE have been engaging in illegal age discrimination.

49.     The discriminatory intent is also shown by internal directives provided to hiring managers by senior management and the human resources departments at Hewlett-Packard Company (now HPI and HPE). For example, in August 2013, the combined companies' human resources department distributed written guidelines stating that its "[n]ew corporate requisition policy requires 75% of all External hire requisitions be 'Graduate' or 'Early Career'" employees. A similar policy of promoting "graduate" and "early career" hires has continued at both HPE and HPI in the years after the renaming and split occurred on November 1, 2015.

50.     The use of the words "graduate" and "early career" in this August 2013 document (and others like it) provide additional evidence of the intent to discriminate against older workers in hiring decisions.

51.     For purposes of the August 2013 directive, a "graduate" hire was someone who either was about to graduate or had graduated within the previous 12 months. Similarly, an "early career" hire was somebody who had completed his or her degree and had *up to* five years of experience related to the job for which they were applying.

52.     Furthermore, across Hewlett-Packard Company, hiring managers were advised in writing to "look for and create opportunities to enhance [their] labor structure" through "Early Career hiring."

53.     Human resources employees at Hewlett-Packard Company were also told to "[h]elp convert or repurpose" the hiring managers' "current requisitions, as appropriate, to Early Career requisitions."

54.     Hewlett-Packard Company's human resources department knew, however, that focusing on hiring younger employees might raise some concerns with its older "long term" employees. Thus, in an internal memorandum issued in 2013, management demonstrated that they knew there was a need to disguise the discriminatory hiring policies and, specifically, to "*[a]ddress [the] issue of long term employees being perceive[d] as bypassed by the next gen[eration]."* (emphasis added).

55.     Despite knowing that it was improper, Hewlett-Packard Company (now known as HPI) and HPE have used and benefitted from online job postings that contained blatantly discriminatory statements. Such statements included:

- This position is for a recent college graduate. To qualify, you must have graduated with your Bachelor's or Master's degree within the last 12 months.

- In order to be considered for this role, you must have graduated within 12 months of the start date. . . [W]e can only consider graduates who have graduated between August 2014 and September 2015.

- Must have graduated within 12 months of July, 2016.

- This position is for a recent college graduate. To qualify you must have received your last degree within the past 12 months.

- The candidate must be a recent graduate.

- We are looking for recent college graduate and early career candidates. . . .

- The successful candidate must be near degree completion (Dec 2015 or prior) or have graduated within the past 12 months.

- Must be a recent graduate (2015) or graduating by January 2016.

- Must have completed degree within the past 12 months.

- We are looking for a future, or recent (within 12 months) College Graduate. . . .

- This position is for a recent university graduate.

- First Level University degree awarded within the past 12 months.

- Recent (graduation date between July 2014 and September 2015 only) college graduate. . . .

- We are seeking candidates who have recently graduated. . . . Only applicants who have graduated within the past year (July 2014 - August 2015) will be considered for this role, and this will be verified during the background check.

- Recent college graduates preferred.

*Defendants' Age Discrimination Is Willful*

56.    The Workforce Restructuring Initiative was designed by Ms. Whitman to achieve one discriminatory goal: to make the Hewlett-Packard organization, including its progeny HPI and HPE, younger. HPI and HPE knew that their practices of firing old and hiring young were discriminatory but pursued those practices regardless, making their age discrimination willful.

57.    At one point, in 2014, Hewlett-Packard Company even acknowledged that it "need[ed] to remove references to maximums or limits on years of experience in [its] posting[s], job titles, classifications of jobs and policies as it relates to our Early Career definition to mitigate any potential risk and litigation regarding discrimination of protected classes against our employment practices."

58.    Notably, Hewlett-Packard Company did not suggest it should rethink or reconsider its discriminatory employment practices but decided it should simply avoid using certain words in its job postings and advertisements to "mitigate" against the potential litigation risk.

59.    As seen in cases involving other types of illegal employment discrimination (*e.g.*, race or gender discrimination), stereotypical statements were made at Hewlett-Packard Company about large groups of employees based entirely on their age. For example, internal Hewlett-Packard Company documentation dated July 2015 stated that anyone born between 1930 and 1946 could be considered a "Traditionalist" who moves "slow and steady" and seeks "part time work." As for "Baby Boomers" (born between 1946 and 1964), they were considered to be "rule breakers," implying that they were undesirable. Conversely, when it came to "Millennials," Hewlett-Packard Company made it clear that hiring new employees from this generation was highly desirable. Indeed, Hewlett-Packard Company specifically adopted strategies for "integrat[ing] millennials into the workforce" and "educat[ing] managers and others on millennial characteristics." These attitudes toward different age groups continued at both HPI and HPE after Hewlett-Packard Company changed its name and HPE was spun off from Hewlett-Packard Company.

60.     Referring to entire segments of employees as "slow and steady" or "rule breakers" based on the year in which they were born is not only callous but is at the heart of the very type of discrimination that the ADEA and similar California laws were intended to prohibit. Furthermore, promoting such stereotypes only further exacerbates unjustified bias against large parts of the workforces of both HPI and HPE based solely on age.

61.     Plaintiff Dan Weiland observed this first-hand during a team meeting involving his then-supervisor, Mark Wade, who described a phone call with Hewlett-Packard Company's human resources team as follows:

> The theme on the EER call was, you know, college, college, college. Everything was about **refreshing HP's golden workforce**. That was kind of the theme. I think they woke up and said, "man, **everybody running around this place is old**." (emphasis added).

62.     As these comments demonstrate, HPI and HPE were effective in communicating to their lower level managers that the Initiative was designed to "refresh" its "golden workforce" with younger employees. In these ways, HPI's and HPE's upper-level managers directed their lower level managers, both directly and indirectly, to select older workers to be terminated under the WFR Plans.

### *Facial Neutrality of the Workforce Restructuring Initiative*

63.     As Ms. Whitman's public statements and the other allegations set forth herein demonstrate, the intent behind the Workforce Restructuring Initiative was (and still is) to discriminate willfully against older workers to make HPI and HPE younger. However, to hide their discriminatory goals, HPI and HPE may claim that the Initiative and the policies implemented in connection with that Initiative were age-neutral.

64.     However, even if facially neutral, HPI's and HPE's policies had a substantial discriminatory impact on employees aged 40 and over. For instance, the mandate that 75% of all new hires be "graduate" or "early career" hires does not, on its face, mention age. Hypothetically, an older worker could be a recent college graduate, or starting a new career, such that the worker might meet the definitions of an "early career" or "graduate" employee. However, in practice, the

overwhelming majority of the early career and recent graduate hires by both HPI and HPE under the Workforce Restructuring Initiative were younger workers in their 20's or 30's.

65.     In addition, while the upper management and human resources departments at both HPI and HPE arguably may have communicated facially neutral criteria to lower level managers about who they should select to be terminated under the WFR Plans (*i.e.*, instructions to fire more tenured employees or those who work remotely), the upper management and human resources departments at both HPI and HPE made the final decisions regarding which individuals to terminate under the WFR Plans. Indeed, although lower level managers would initially be asked to select individuals for termination, the upper management and human resources departments at both HPI and HPE always could (and did) override those selections consistent with the discriminatory intentions of the Initiative.

66.     For example, when lower level HPE manager, Albert R. DeVere, was asked to select two employees from his team to be terminated under the WFR Plan, he selected two who he felt had the worst performance: specifically, two younger, early career or graduate recent hires. But, Mr. DeVere's boss, a director named Mark Moreno, told Mr. DeVere he should not be laying off recent graduates or early career hires. Nonetheless, Mr. DeVere submitted his selections to HPE's human resources department, which promptly vetoed his selections.

67.     Instead, two older team members from Mr. DeVere's team were fired. In addition, two other workers over the age of 40 were terminated at about the same time—specifically, both Mr. DeVere *and* Mr. Moreno.

### Statistical Evidence Showing Discrimination

68.     In implementing the Workforce Restructuring Initiative, regardless of any facially neutral criteria HPI or HPE allegedly used, the end result was that older workers were disproportionately selected to be laid off under the WFR Plans. Indeed, based on available data regarding layoffs under the WFR Plans, HPI and HPE clearly conformed to Ms. Whitman's publicly stated goal of trying to make the companies younger. Older workers were statistically more likely to be laid off under the WFR Plans than younger ones.

69.     HPI and HPE provided "Attachment A" forms to terminated employees. However, these forms were drafted in a manner that underrepresented the discriminatory impact of the Initiative.

70.     The Attachment A forms did not include the job titles and ages of all employees in the pertinent "decisional unit" impacted by the layoffs. Indeed, they did not even define the employee's "decisional unit." Rather than provide the required data for the relevant "decisional unit," HPI and HPE regularly provided Attachment A forms that improperly focused on a small group of employees that HPI and HPE deceptively suggested were part of the appropriate decisional unit, when in fact they were not.

71.     A preliminary statistical analysis of Attachment A forms provided to employees who were terminated by HPI (both before and after the name change) shows that older employees of HPI were significantly more likely to be terminated than younger employees, reaching a statistical confidence level of at least two standard deviations; in other words, the statistical level of confidence in this disparity is at least 95%.

72.     The same type of preliminary statistical analysis of Attachment A forms provided to employees who were terminated by HPE similarly shows that older employees of HPE were significantly more likely to be terminated than younger employees, likewise reaching a statistical confidence level of at least two standard deviations; in other words, the statistical level of confidence in this disparity is at least 95%.

73.     The disparity exists even though the Attachment A forms that HPI and HPE prepared and distributed to these former employees did not fully portray the negative impact of their employment policies on older employees. Indeed, HPI and HPE improperly crafted their Attachment A forms to understate the true impact of the employment terminations on older employees.

74.     If, instead, the Attachment A forms were accurate and properly identified all of the younger employees who were hired or retained pursuant to the Initiative, as well as the additional older workers who were terminated pursuant to the Initiative, then the known statistical disparity

1   between the impact on older employees in the Nationwide Classes or California Classes versus

2   younger employees would be even greater.

3                               ***The Named Plaintiffs' Backgrounds***

4                                     <u>Donna Forsyth</u>

5       75.     Plaintiff Donna Forsyth was hired by Hewlett-Packard Company on or about July

6   12, 1999. Following the name change and spin-off on November 1, 2015, Ms. Forsyth became

7   employed by HPE. Her most recent position was a Manager on the Capabilities Team in the Global

8   Corporate Services organization. When her employment was terminated, Ms. Forsyth was working

9   for HPE in Bellevue, Washington.

10       76.     Ms. Forsyth performed her job duties in a satisfactory and competent manner. She

11   always met or exceeded her employer's expectations.

12       77.     Ms. Forsyth was involved with and knowledgeable about Hewlett-Packard

13   Company's and HPE's graduate and early career hiring efforts. She has first-hand knowledge of

14   the aggressive efforts used to hire younger "millennial" employees to replace the many thousands

15   of employees terminated under the WFR Plans. She also has first-hand knowledge that the

16   discriminatory practices described above which had originated at Hewlett-Packard Company

17   continued at HPE.

18       78.     In May 2016, HPE notified Ms. Forsyth, then 62 years old, that she was being

19   terminated pursuant to a WFR Plan. Her last day of work at HPE was May 27, 2016.

20       79.     Upon information and belief, and consistent with HPE's internal policies and

21   practices as alleged in this Complaint, when Ms. Forsyth's employment was terminated, she was

22   replaced with a "graduate" or "early career" hire who is significantly under the age of 40, or with

23   someone else who is younger than her.

24       80.     Ms. Forsyth filed a charge of discrimination with the Equal Employment

25   Opportunity Commission (EEOC) that raised class-wide claims for relief on July 8, 2016. More

26   than 60 days have passed since she filed that charge. She received a Notice of Right to Sue from

27   the EEOC dated August 2, 2016. This lawsuit was filed within 90 days after receiving her Notice

28   of Right to Sue. Ms. Forsyth has exhausted her administrative remedies.

Arun Vatturi

81.     Plaintiff Arun Vatturi was hired by Hewlett-Packard Company in 2001. Following the name change on November 1, 2015, Mr. Vatturi remained employed by HPI. His most recent position at the company was a Master Black Belt of PC Quality. When his employment was terminated, Mr. Vatturi worked for HPI in its Palo Alto, California offices.

82.     Mr. Vatturi performed his job duties in a satisfactory and competent manner. He always met or exceeded his employer's expectations.

83.     Mr. Vatturi's job was essentially to work on internal systems to improve procedures and save money. In one instance alone, Mr. Vatturi saved HPI more than $70 million through the implementation of his ideas. He was one of the 0.5% of employees at Hewlett-Packard Company who received the company's top performance review rating of "significantly exceeds expectations" in its forced ranking system.

84.     Shortly before terminating Mr. Vatturi, and despite his stellar performance reviews, HPI moved him to a low-level data collection position working with two young independent contractors located in India.

85.     In January 2016, HPI notified Mr. Vatturi, then 52 years old, that he was being terminated pursuant to a WFR Plan. His last day of work was January 22, 2016.

86.     Upon information and belief, and consistent with HPI's internal policies and practices as alleged in this Complaint, when Mr. Vatturi's employment was terminated, he was replaced with a "graduate" or "early career" hire who is significantly under the age of 40, or with someone else who is younger than him.

87.     Mr. Vatturi filed a charge of discrimination with the EEOC on July 5, 2016. In that EEOC charge, Mr. Vatturi raised class-wide claims for relief. He received a Notice of Right to Sue dated August 2, 2016. In addition, Mr. Vatturi filed the same charge of discrimination with the California Department of Fair Employment and Housing on July 5, 2016 and received a Notice of Right to Sue from that state agency dated July 6, 2016. More than 60 days have passed since Mr. Vatturi filed his discrimination charge. This lawsuit was brought within 90 days of receiving his Notice of Right to Sue. Mr. Vatturi has exhausted his federal and state administrative remedies.

<u>Dan Weiland</u>

88.     Plaintiff Dan Weiland was hired by Hewlett-Packard Company as an independent contractor in 2010. In February 2012, he was hired by Hewlett-Packard Company as a full-time employee. His most recent position at the company was Project/Program Manager and Acting Group Chief of Staff in the Test Operations & Technologies organization. When his employment was terminated, Mr. Weiland was working for HPI, then doing business as Hewlett-Packard Corporation, in its Houston, Texas offices.

89.     Mr. Weiland performed his job duties in a satisfactory and competent manner. He always met or exceeded his employer's expectations.

90.     In his last performance review before being laid off, Hewlett-Packard Company praised Mr. Weiland as a "solid contributor" who brought a "positive, 'can do' attitude" with him every day. Hewlett-Packard Company also said Mr. Weiland was "[a] pleasure to work with, well grounded, [had] outstanding dependability, and work ethic." In 2014, Mr. Weiland received the "Making a Difference" award.

91.     On or about September 9, 2014, Hewlett-Packard Company notified Mr. Weiland that he was eligible to participate in the 2014 Phased Retirement program. His then-manager, Bland Quattlebaum, had several conversations with Mr. Weiland to try to persuade him to participate in the retirement program, which Mr. Weiland declined. Mr. Weiland wanted to continue working.

92.     In July 2015, Hewlett-Packard Company (now known as HPI) notified Mr. Weiland, then 63 years old, that he was being terminated as part of a WFR Plan. His last day of work was July 24, 2015.

93.     Upon information and belief, and consistent with the internal policies and practices of Hewlett-Packard Company (now known as HPI), as alleged in herein, when Mr. Weiland's employment was terminated, he was replaced with a "graduate" or "early career" hire who is significantly under the age of 40, or with someone else who is younger than him.

94.     Mr. Weiland filed a charge of discrimination with the EEOC on October 5, 2015, raising class-wide claims for relief against Hewlett-Packard Company. Shortly after Hewlett-

Packard Company changed its name to HPI and spun off HPE effective November 1, 2015, Mr. Weiland notified the EEOC that he was charging both HPE and HPI with discrimination. Mr. Weiland received a Notice of Right to Sue letter dated August 11, 2016. More than 60 days have passed since this filing of his discrimination charge. This lawsuit was filed within 90 days of receiving his Notice of Right to Sue. Mr. Weiland has exhausted his administrative remedies.

Shafiq Rahman

95.     Plaintiff Shafiq Rahman began working at Compaq in April 1997, which was acquired by Hewlett-Packard Company in 2002. Following the name change and spin-off on November 1, 2015, Mr. Rahman became employed by HPE. At the time of his termination, on July 29, 2016, Mr. Rahman was a Senior Engineer developing computer servers for HPE.

96.     Throughout the nearly twenty years of his employment, Mr. Rahman performed his job duties in a satisfactory and competent manner, and consistently received positive reviews. Indeed, during a mid-year review that took place shortly before his termination, Mr. Rahman was told his performance was good and he should consider himself "safe" from termination.

97.     Nevertheless, soon thereafter, on July 18, 2016, when Mr. Rahman was 65 years old, he was informed he was being terminated under a WFR Plan. His last day of work was July 29, 2016.

98.     Upon information and belief, and consistent with HPE's internal policies and practices as alleged in this Complaint, when Mr. Rahman's employment was terminated, he was replaced with a "graduate" or "early career" hire who is under the age of 40, or with someone else who is younger than him.

99.     Mr. Rahman filed a charge of discrimination with the EEOC on September 29, 2016 that raised class-wide claims for relief. More than 60 days have passed since the charge was filed. He has exhausted his administrative remedies.

Kevin Alviso

100.    Plaintiff Kevin Alviso began working for the Hewlett-Packard Company in June 1997. Following the name change and spin-off on November 1, 2015, Mr. Alviso became

FOURTH AMENDED COMPLAINT

employed by HPE. When he was terminated in October 2016, he was a Research and Development Manager for HPE.

101.    Mr. Alviso consistently performed his job duties in a satisfactory and competent manner, and always met or exceeded his employer's expectations. He never received any negative performance reviews during his time at Hewlett-Packard Company and HPE. In fact, Mr. Alviso significantly exceeded his employer's expectations, and he received top ratings in each of his last five annual reviews.

102.    On October 28, 2016, when he was 53 years old, Mr. Alviso was terminated under a WFR plan.

103.    Upon information and belief, and consistent with the internal policies and practices of HPI (formerly Hewlett-Packard Company) and HPE, as alleged in this Complaint, when Mr. Alviso's employment was terminated, he was replaced with a "graduate" or "early career" hire who was under the age of 40, or with someone else who is younger than him.

104.    Mr. Alviso filed a charge of discrimination with the EEOC on December 19, 2016, that raised class-wide claims for relief. More than 60 days have passed since the charge was filed. On January 18, 2017, the EEOC issued Mr. Alviso a Notice of Right to Sue. In addition, Mr. Alviso filed the same charge of discrimination with the California Department of Fair Employment and Housing on December 19, 2016 and received a Notice of Right to Sue from that state agency dated January 18, 2017. Mr. Alviso has exhausted his administrative remedies.

### *Class Allegations*

105.    Plaintiffs Weiland and Vatturi are representatives of the following class for purposes of the ADEA:

### The "HPI Nationwide Class"

> All individuals who had their employment terminated by HP, Inc. (including when HP, Inc. was named Hewlett-Packard Company) pursuant to a WFR Plan on or after December 9, 2014 for individuals terminated in deferral states; and on or after April 8, 2015 for individuals terminated in non-deferral states, and who were 40 years or older at the time of such termination.

106.    Plaintiffs Forsyth, Rahman, and Alviso are representatives of the following class for purposes of the ADEA:

<u>The "HPE Nationwide Class"</u>

> All individuals who had their employment terminated by Hewlett Packard Enterprise Company pursuant to a WFR Plan on or after November 1, 2015, and who were 40 years or older at the time of such termination.

107.    Excluded from the HPI and HPE Nationwide Classes (together, the "Nationwide Classes") are: (a) individuals who signed a Waiver and General Release Agreement[1]; (b) individuals who signed an Agreement to Arbitrate Claims[2]; and (c) any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

108.    Plaintiffs and the members of the Nationwide Classes were all: (a) aged 40 years or more at the time of termination, (b) terminated pursuant to the Workforce Restructuring Initiative and common WFR Plans without signing a Waiver and General Release Agreement (as defined in footnote 1) or Agreement to Arbitrate Claims (as defined in footnote 2), and (c) terminated because of their age pursuant to common discriminatory employment policies, practices and procedures.

109.    The discriminatory practices and policies of both HPI and HPE have been centralized. As explained above, HPI and HPE instituted company-wide policies of firing older employees (who were aged 40 years or older) and hiring a disproportionately large number of significantly younger employees (who were under the age of 40). This policy was carried out through the upper management and human resources departments at both HPI and HPE, as alleged in greater detail herein. The highest levels of management at both HPI and HPE implemented the

---

[1] Individuals who were terminated pursuant to a WFR Plan were offered certain severance and other benefits in exchange for signing a general release agreement that released claims relating to their employment and termination ("Waiver and General Release Agreement"). The Waiver and General Release Agreements included an arbitration clause and a class action waiver. Individuals who signed a Waiver and General Release Agreement are excluded from the Nationwide Classes and the California Classes.

[2] The phrase "Agreement to Arbitrate Claims" as used herein is defined to mean the four-page form titled "Agreement to Arbitrate Claims" attached hereto as *Exhibit A*, to the extent the form (or a substantially identical form) was included as part of (1) arbitration agreements executed by newly hired employees of Hewlett-Packard Company (now known as HPI) on or after May 12, 2014 and by newly hired employees of HPE (*i.e.*, who did not previously work for HPI/Hewlett-Packard Company) on or after November 1, 2015, and (2) arbitration agreements executed by Hewlett-Packard Company (now known as HPI) sales employees with a sales commission plan on or after November 1, 2014 and by HPE sales employees with a sales commission plan between November 1, 2015 and October 31, 2016.

FOURTH AMENDED COMPLAINT

discriminatory policies and practices described herein, and they were uniformly carried out through all levels of HPI and HPE.

110.   Common questions of law and fact among Plaintiffs and the members of the Nationwide Classes include, but are not limited to:

(a) whether HPI and HPE (respectively) unlawfully terminated members of the Nationwide Classes in violation of the ADEA;

(b) whether HPI and HPE (respectively) engaged in a pattern and practice of age discrimination when selecting members of the Nationwide Classes for termination pursuant to the WFR Plans;

(c) whether HPI and HPE (respectively) through their WFR Plans willfully and intentionally discriminated against members of the Nationwide Classes because of their age;

(d) whether HPI and HPE (respectively) used common employment policies and practices that adversely impacted members of the Nationwide Classes; and

(e) whether HPI and HPE (respectively) provided purported reasons for laying off members of the Nationwide Classes pursuant to the WFR Plans that were pretextual.

111.   Counts for violations of the ADEA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by Plaintiffs, because their claims are similar to the claims of the members of their respective Nationwide Classes.

112.   Plaintiffs and the members of the Nationwide Classes are similarly situated because, among other things, (a) they all worked for HPE or HPI (respectively) and are all aged 40 and older, (b) they are all residents of the United States, (c) they were all subjected to the same company-wide policy of age discrimination, (d) they were all subjected to the same company-wide policies that adversely impacted them because of their age, (e) they were all terminated pursuant to the Workforce Restructuring Initiative and the WFR Plans because of their age, (f) they were all given the same boilerplate reason for having their employment terminated; and (g) they all

declined to sign the Waiver and General Release Agreements (as defined in footnote 1) and an Agreement to Arbitrate Claims (as defined in footnote 2).

113.    Individual variations among Plaintiffs and members of the Nationwide Classes, such as location, education, or job responsibilities, do not undermine the common issues at stake here. Plaintiffs allege a single scheme of age discrimination initiated at the very top of HPI and HPE and carried out through the entire structure of the companies. Regardless of where an individual worked in the United States or to which manager the individual reported, each member of each Nationwide Classes faced the same discrimination and discriminatory policies.

114.    Plaintiff Arun Vatturi also seeks to represent the following class for purposes of his California state law claims pursuant to Rule 23 of the Federal Rules of Civil Procedure:

The "HPI California Class"

> All individuals who had their employment terminated by HP, Inc. (including when HP, Inc. was named Hewlett-Packard Company) in California pursuant to a WFR Plan on or after August 18, 2012, and who were 40 years or older at the time of such termination.

115.    Plaintiff Kevin Alviso also seeks to represent the following class for purposes of his California state law claims pursuant to Rule 23 of the Federal Rules of Civil Procedure:

The "HPE California Class"

> All individuals who had their employment terminated by Hewlett Packard Enterprise Company in California pursuant to a WFR Plan on or after November 1, 2015, and who were 40 years or older at the time of such termination.

116.    Excluded from the HPI and HPE California Classes (together, the "California Classes") are: (a) individuals who signed a Waiver and General Release Agreement (as defined in footnote 1, *supra*); (b) individuals who signed an Agreement to Arbitrate Claims (as defined in footnote 2, *supra*); (c) any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

117.    The California Classes consist of hundreds or thousands of former employees, which makes joining all members of these classes impracticable.

118.    The common questions of law and fact among Plaintiffs Vatturi, Alviso, and the California Classes' members include, but are not limited to:

        (a) whether HPI's and HPE's (respectively) conduct violated the California Fair Employment and Housing Act;

        (b) whether HPI's and HPE's (respectively) conduct was unlawful or unfair in violation of California's Unfair Competition Law;

        (c) whether HPI and HPE (respectively) engaged in conduct that constitutes an unlawful employment practice in violation of public policy;

        (d) whether HPI and HPE (respectively) engaged in a pattern and practice of age discrimination when selecting individuals for termination pursuant to the Workforce Restructuring Initiative and the WFR Plans;

        (e) whether HPI and HPE (respectively) based their processes for selecting employees for termination on reasonable factors other than age that were a business necessity;

        (f) whether HPI and HPE (respectively) through the WFR Plans willfully and intentionally discriminated against the members of the California Classes because of their age;

        (g) whether HPI's and HPE's (respectively) discrimination had a disparate impact on members of the California Classes; and

        (h) whether HPI and HPE (respectively) gave purported reasons for laying off members of the California Classes pursuant to the WFR Plans that were pretextual.

119.    Plaintiffs Vatturi's and Alviso's claims and the relief sought for their claims are typical of the claims and relief sought for the California Classes. Like the members of the California Classes, Plaintiffs Vatturi and Alviso are aged 40 or older and worked for HPI and HPE, respectively, in California until they were terminated pursuant to the WFR Plans and did not sign a Waiver and General Release Agreement (as defined in footnote 1) or execute an Agreement to Arbitrate Claims (as defined in footnote 2). Plaintiffs Vatturi and Alviso were, therefore, subjected

1    to the same discriminatory policies and practices as the other members of their respective

2    California Classes. The relief necessary to remedy Vatturi's and Alviso's claims is the same relief

3    necessary to remedy the claims of the members of the California Classes in this case.

4        120.    Plaintiffs Vatturi and Alviso will adequately represent the interests of the members

5    of the California Classes. Plaintiffs Vatturi's and Alviso's interests are co-extensive with those of

6    the California Classes. They seek to remedy the discriminatory employment policies, procedures

7    and practices of both HPI and HPE and will fairly and vigorously pursue claims on behalf of the

8    California Classes. Plaintiffs Vatturi and Alviso are willing and able to represent the California

9    Classes fairly and vigorously as they pursue their individual claims in this action.

10        121.    Plaintiffs Vatturi and Alviso have retained counsel who are qualified, experienced,

11    and able to conduct this litigation and to meet the time and fiscal demands required to litigate an

12    employment discrimination class action of this size and complexity. The combined interests,

13    experience, and resources of Vatturi's and Alviso's counsel to litigate completely the individual

14    and class claims at issue in this case satisfy the adequacy of representation requirement.

15        122.    HPI and HPE have acted or refused to act on grounds that apply generally to all

16    members of the California Classes. HPI and HPE have failed to create adequate incentives for their

17    managerial and supervisory personnel to comply with laws regarding the employment policies,

18    practices, and procedures described herein.

19        123.    HPI and HPE have acted on grounds generally applicable to Plaintiffs Vatturi and

20    Alviso and the California Classes by adopting and implementing systemic policies, practices, and

21    procedures that are discriminatory. Disparate impact and systemic age discrimination have been

22    HPI's and HPE's standard operating procedures rather than sporadic occurrences.

23        124.    In addition, HPI and HPE have, in a discriminatory way, refused to act on grounds

24    generally applicable to the California Classes by terminating class members pursuant to a WFR

25    Plan based on their age.

26        125.    HPI's and HPE's systemic discriminatory acts and refusals to act make it

27    appropriate to grant the requested relief with respect to the California Classes.

28        126.    All requirements of Rule 23(b) are satisfied here.

127.    The common issues of fact and law affecting the claims of Plaintiffs Vatturi and Alviso, and the members of the California Classes predominate over any issues affecting only individual claims. The answers to the common questions listed above will be the same for Plaintiffs Vatturi and Alviso, and all members of the California Classes and will resolve all core issues in the case, once, on common evidence and on a class-wide basis.

128.    Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiffs Vatturi and Alviso, and the members of the California Classes.

129.    Plaintiffs Vatturi and Alviso, and the members of the California Classes were injured by the same discriminatory policies and practices, and these injuries are redressable through systemic relief and class-wide remedies.

130.    In order to achieve such class-wide relief, Plaintiffs Vatturi and Alviso will establish the existence of systemic age discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the California Classes is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs Vatturi and Alviso, the California Classes, and HPI and HPE.

131.    The cost of proving the disparate treatment and impact of the policies, procedures and practices of both HPI and HPE makes it impracticable for Plaintiffs Vatturi and Alviso, and members of the California Classes, to prosecute their claims individually.

132.    Class-wide liability and the relief sought herein present common issues capable of class-wide resolution, which would advance the interests of the parties in an efficient manner such that the requirements of Rule 23(c)(4) are also satisfied here.

**COUNT 1 –AGE DISCRIMINATION UNDER THE ADEA AGAINST HPI**
**(On behalf of Plaintiffs Weiland and Vatturi and the HPI Nationwide Class)**

133.    Plaintiffs hereby incorporate each paragraph above as though fully set forth here.

134.    This is a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) filed by the above-named Plaintiffs individually and on behalf of similarly situated persons who opt into this action by filing an appropriate notice.

135.    As more fully set forth elsewhere in this Complaint, HPI (formerly doing business as Hewlett-Packard Company) engaged in an unlawful pattern or practice of age discrimination that adversely affected Plaintiffs and the members of the HPI Nationwide Class in violation of 29 U.S.C. § 621, *et seq.*

136.    Plaintiffs and the members of the HPI Nationwide Class were 40 years of age or older at the time of they were terminated.

137.    HPI terminated Plaintiffs and the members of the HPI Nationwide Class because of their age and would not have terminated Plaintiffs or the members of the HPI Nationwide Class but for their age.

138.    The unlawful pattern or practice of age discrimination by HPI alleged herein constitutes a willful violation of the ADEA. Plaintiffs' charges of discrimination filed with the EEOC asserted claims on behalf of both the Plaintiffs themselves and others similarly situated, and adequately placed HPI on notice that a collective action was forthcoming.

139.    Plaintiffs and others similarly situated were adversely affected by the pattern or practice of unlawful, willful age discrimination by HPI as elsewhere described herein. Plaintiffs and all similarly situated individuals have suffered actual damages in an amount to be determined at trial. Plaintiffs and others similarly situated seek the opportunity to have their employment reinstated or, alternatively, front pay.

140.    This is also a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) filed by the above-named Plaintiffs individually and on behalf of similarly situated persons who opt into this action by filing an appropriate notice, and an individual action under the ADEA.

141.    HPI used WFR Plans that had a significantly adverse or disproportionate impact on Plaintiffs and the members of the HPI Nationwide Class and caused Plaintiffs and the members of the HPI Nationwide Class to be terminated. HPI's policies and practices have had a disparate

impact on Plaintiffs and the members of the HPI Nationwide Class and were not based upon a reasonable factor other than age.

142.    As set forth more fully above, HPI has utilized practices, policies and procedures that have disparately impacted former employees of HPI, resulting in an unlawful pattern or practice of age discrimination in violation of the ADEA, 29 U.S.C. § 621, *et seq.* There was no legitimate, non-discriminatory reason for its action, and any reasons HPI may advance are pretextual.

143.    The above-named Plaintiffs and others similarly situated were disparately impacted by HPI's practices, policies and procedures, in violation of the ADEA.

144.    As a direct and proximate result of the aforesaid age discrimination by HPI, each of the Plaintiffs and all others similarly situated have suffered damages in an amount to be determined at trial.

### <u>COUNT 2 –AGE DISCRIMINATION UNDER THE ADEA AGAINST HPE</u>
**(On behalf of Plaintiffs Forsyth, Rahman and Alviso and the HPE Nationwide Class)**

145.    Plaintiffs hereby incorporate each paragraph above as though fully set forth here.

146.    This is a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) filed by the above-named Plaintiffs individually and on behalf of similarly situated persons who opt into this action by filing an appropriate notice.

147.    As more fully set forth elsewhere in this Complaint, HPE engaged in an unlawful pattern or practice of age discrimination that adversely affected Plaintiffs and the members of the HPE Nationwide Class in violation of 29 U.S.C. § 621, *et seq.*

148.    Plaintiffs and the members of the HPE Nationwide class were 40 years of age or older at the time of they were terminated.

149.    HPE terminated Plaintiffs and the members of the HPE Nationwide Class because of their age and would not have terminated Plaintiffs or the members of the HPE Nationwide Class but for their age.

150.    The unlawful pattern or practice of age discrimination by HPE alleged herein constitutes a willful violation of the ADEA. Plaintiffs' charges of discrimination filed with the

EEOC asserted claims on behalf of both the Plaintiffs themselves and others similarly situated, and adequately placed HPE on notice that a collective action was forthcoming.

151.     Plaintiffs and others similarly situated were adversely affected by the pattern or practice of unlawful, willful age discrimination by HPE as elsewhere described herein. Plaintiffs and all similarly situated individuals have suffered actual damages in an amount to be determined at trial. Plaintiffs and others similarly situated seek the opportunity to have their employment reinstated or, alternatively, front pay.

152.     This is also a representative action under 29 U.S.C. §§ 626(b) and (c) and 29 U.S.C. § 216(b) filed by the above-named Plaintiffs individually and on behalf of similarly situated persons who opt into this action by filing an appropriate notice, and an individual action under the ADEA.

153.     HPE used WFR Plans that had a significantly adverse or disproportionate impact on Plaintiffs and the members of the HPE Nationwide Class and caused Plaintiffs and the members of the HPE Nationwide Class to be terminated. HPE's policies and practices have had a disparate impact on Plaintiffs and the members of the HPE Nationwide Class and were not based upon a reasonable factor other than age.

154.     As set forth more fully above, HPE has utilized practices, policies and procedures that have disparately impacted former employees, resulting in an unlawful pattern or practice of age discrimination in violation of the ADEA, 29 U.S.C. § 621, *et seq.* There was no legitimate, non-discriminatory reason for its action, and any reasons HPE may advance are pretextual.

155.     The above-named Plaintiffs and others similarly situated were disparately impacted by HPE's practices, policies and procedures, in violation of the ADEA.

156.      As a direct and proximate result of the aforesaid age discrimination by HPE, each of the Plaintiffs and all others similarly situated have suffered damages in an amount to be determined at trial.

### **COUNT 3 – AGE DISCRIMINATION UNDER THE FEHA AGAINST HPI**
**(On behalf of Plaintiff Vatturi and the HPI California Class)**

157.     Plaintiffs hereby incorporate each paragraph above as though fully set forth here.

158.     This is a representative action under the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. ("FEHA"). The FEHA prohibits employers from discriminating on the basis of age. Cal. Gov. Code § 12940(a). Plaintiff Vatturi brings his FEHA claims on behalf of other similarly situated individuals.

159.     HPI has engaged in a pattern and practice of discriminating against individuals aged 40 and older by knowingly and intentionally firing a disproportionately large number of workers aged 40 and older while simultaneously hiring a disproportionately large number of workers under the age of 40.

160.     As a direct and proximate result of HPI's intentional discrimination, Plaintiff Vatturi and other of similarly situated individuals have had their employment terminated.

161.     HPI has used employment policies and practices related to hiring and firing that have had a disparate impact on the basis of age (discriminating against workers who are aged 40 and older) that are not job-related for the positions at issue, not consistent with business necessity, and are not necessitated by a reasonable factor other than age.

162.     HPI's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff Vatturi and class members, entitling them to punitive damages.

163.     HPI's policies, procedures, and practices have produced a disparate impact on Plaintiff Vatturi and class members with respect to the terms and conditions of their employment.

164.     HPI's actions constitute unlawful discrimination in violation of the FEHA.

165.     Plaintiffs and others similarly situated seek the opportunity to have their employment reinstated or, alternatively, front pay.

166.     Pursuant to California Government Code Section 12940(i), it is unlawful "for any person to aid, abet, incite, compel or coerce" discrimination forbidden by the act.

167.     As a direct and proximate result of the aforesaid age discrimination by HPI, Plaintiff Vatturi and all similarly situated individuals have suffered damages in an amount to be determined at trial.

## COUNT 4 – AGE DISCRIMINATION UNDER THE FEHA AGAINST HPE
### (On behalf of Plaintiff Alviso and the HPE California Class)

168.    Plaintiffs hereby incorporate each paragraph above as though fully set forth here.

169.    This is a representative action under the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. ("FEHA"). The FEHA prohibits employers from discriminating on the basis of age. Cal. Gov. Code § 12940(a). Plaintiff Alviso brings FEHA claims on behalf of himself and all other similarly situated individuals.

170.    HPE has engaged in a pattern and practice of discriminating against individuals aged 40 and older by knowingly and intentionally firing a disproportionately large number of workers aged 40 and older while simultaneously hiring a disproportionately large number of workers under the age of 40.

171.    As a direct and proximate result of HPE's intentional discrimination, Plaintiff Alviso and similarly situated individuals have had their employment terminated.

172.    HPE has used employment policies and practices related to hiring and firing that have had a disparate impact on the basis of age (discriminating against workers who are aged 40 and older) that are not job-related for the positions at issue, not consistent with business necessity, and are not necessitated by a reasonable factor other than age.

173.    HPE's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff Alviso and others similarly situated entitling them to punitive damages.

174.    HPE's policies, procedures, and practices have produced a disparate impact on Plaintiff Alviso and others similarly situated with respect to the terms and conditions of their employment.

175.    HPE's actions constitute unlawful discrimination in violation of the FEHA.

176.    Plaintiffs and others similarly situated seek the opportunity to have their employment reinstated or, alternatively, front pay.

177.    Pursuant to California Government Code Section 12940(i), it is unlawful "for any person to aid, abet, incite, compel or coerce" discrimination forbidden by the act.

178.     As a direct and proximate result of the aforesaid age discrimination by HPE, Plaintiff Alviso and all similarly situated individuals have suffered damages in an amount to be determined at trial.

## COUNT 5 – AGE DISCRIMINATION IN VIOLATION OF PUBLIC POLICY AGAINST HPI
**(On behalf of Plaintiff Vatturi and the HPI California Class)**

179.     Plaintiff Vatturi hereby incorporates each paragraph above as though fully set forth here.

180.     HPI discriminated against Plaintiff Vatturi and the HPI California Class members by terminating their employment on the basis of their age.

181.     HPI's discrimination constitutes an unlawful employment practice in violation of California public policy.

182.     As a proximate result of HPI's discriminatory conduct, Plaintiff Vatturi and the HPI California Class members have been injured in their health, strength, and activity, all of which have caused and continue to cause them to suffer mentally and emotionally.

183.     As a further proximate result of the conduct alleged herein, Plaintiff Vatturi and the HPI California Class members have lost earnings, lost employment opportunities, and will lose job benefits in an amount yet to be ascertained.

184.     HPI discriminated on the basis of age with fraud, oppression, and malice. Plaintiff Vatturi and the HPI California Class members are therefore entitled to exemplary and punitive damages in an amount to be determined at trial.

## COUNT 6 – AGE DISCRIMINATION IN VIOLATION OF PUBLIC POLICY AGAINST HPE
**(On behalf of Plaintiff Alviso and the HPE California Class)**

185.     Plaintiff Alviso hereby incorporates each paragraph above as though fully set forth here.

186.     HPE discriminated against Plaintiff Alviso and the HPE California Class members by terminating their employment on the basis of their age.

187.     HPE's discrimination constitutes an unlawful employment practice in violation of California public policy.

188.    As a proximate result of HPE's discriminatory conduct, Plaintiff Alviso and the HPE California Class members have been injured in their health, strength, and activity, all of which have caused and continue to cause them to suffer mentally and emotionally.

189.    As a further proximate result of the conduct alleged herein, Plaintiff Alviso and the HPE California Class members have lost earnings, lost employment opportunities, and will lose job benefits in an amount yet to be ascertained.

190.    HPE discriminated on the basis of age with fraud, oppression, and malice. Plaintiff Alviso and the HPE California Class members are therefore entitled to exemplary and punitive damages in an amount to be determined at trial.

**COUNT 7 – UNFAIR COMPETITION**
**CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.***
**AGAINST HPI**
**(On behalf of Plaintiff Vatturi and the HPI California Class)**

191.    Plaintiff Vatturi hereby incorporates each paragraph above as though fully set forth here.

192.    HPI is a "person" as defined under California Business & Professions Code section 17021.

193.    HPI's discrimination against its older employees, as alleged herein, constitutes unlawful and/or unfair and/or fraudulent activity prohibited by the California Business & Professions Code § 17200, *et seq.* As a result of their unlawful or unfair acts, HPI reaped and continues to reap unfair benefits at the expense of Plaintiff Vatturi and the HPI California Class members.

194.    Accordingly, Plaintiff Vatturi and the HPI California Class members are entitled to restitution with interest and other equitable relief.

**COUNT 8 – UNFAIR COMPETITION**
**CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.***
**AGAINST HPE**
**(On behalf of Plaintiff Alviso and the HPE California Class)**

195.    Plaintiff Alviso hereby incorporates each paragraph above as though fully set forth here.

1    196.    HPE is a "person" as defined under California Business & Professions Code

2    section 17021.

3    197.    HPE's discrimination against its older employees, as alleged herein, constitutes

4    unlawful and/or unfair and/or fraudulent activity prohibited by the California Business &

5    Professions Code § 17200, *et seq.* As a result of their unlawful or unfair acts, HPE reaped and

6    continues to reap unfair benefits at the expense of Plaintiff Alviso and the HPE California Class

7    members.

8    198.    Accordingly, Plaintiff Alviso and the HPE California Class members are entitled

9    to restitution with interest and other equitable relief.

10    **JURY DEMAND**

11    199.    Plaintiffs hereby demand a trial by jury.

12    **PRAYER FOR RELIEF**

13    WHEREFORE, Plaintiffs request that the Court make orders and enter judgment in their

14    favor and against Defendants as follows:

15    1.    Making such orders as are necessary and appropriate to certify this case for

16    treatment as a collective action under the ADEA;

17    2.    Making such orders as are necessary and appropriate to certify the California claims

18    for class relief;

19    3.    Designating the above-named Plaintiffs as representatives of the Nationwide

20    Classes;

21    4.    Designating Plaintiffs Arun Vatturi and Kevin Alviso as representatives of the

22    California Classes;

23    5.    Designating the undersigned as class counsel;

24    6.    Awarding each of the Plaintiffs and all members of the Nationwide Classes and

25    California Classes damages in an amount to be determined at trial, including but not limited to

26    back pay and benefits, together with interest thereon;

27    7.    Restoring each of the Plaintiffs and all members of the Nationwide Classes and

28    California Classes to positions comparable to those from which they were terminated or, in lieu of

reinstatement, awarding each Plaintiff and all members of the Nationwide Classes and California Classes front pay and benefits for the period remaining until that person's expected retirement age;

8.      Awarding each Plaintiff and all members of the Nationwide Classes liquidated damages pursuant to the ADEA in an amount equal to that person's back pay and benefits award, together with interest thereon;

9.      Awarding Plaintiffs Arun Vatturi, Kevin Alviso and all members of the California Classes compensatory damages, restitution, and punitive damages pursuant to their state law claims;

10.     Awarding Plaintiffs and all members of the Nationwide Classes and the California Classes their attorneys' fees and costs pursuant to the ADEA and California state law;

11.     Awarding prejudgment interest, costs and disbursements; and

12.     Awarding such other and further relief, including but not limited to declaratory, equitable or injunctive relief, as the Court and/or jury deems equitable, appropriate, and just.

DATE: July 9, 2020                        O'NEIL, CANNON, HOLLMAN,
                                           DEJONG & LAING S.C.

                                            _/s/ Douglas P. Dehler_____
                                           Douglas P. Dehler, *pro hac vice*
                                           doug.dehler@wilaw.com
                                           Paul W. Zimmer, *pro hac vice*
                                           paul.zimmer@wilaw.com
                                           111 East Wisconsin Avenue, Suite 1400
                                           Milwaukee, WI 53202
                                           Phone:    (414) 276-5000
                                           Fax:      (414) 276-6581

                                           Jennie Lee Anderson (SBN 203586)
                                           ANDRUS ANDERSON LLP
                                           jennie@andrusanderson.com
                                           Leland H. Belew (SBN 293096)
                                           leland.belew@andrusanderson.com
                                           ANDRUS ANDERSON LLP
                                           155 Montgomery Street, Suite 900
                                           San Francisco, CA 94104
                                           Phone:    (415) 986-1400
                                           Fax:      (415) 986-1474

                                           *Attorneys for Plaintiffs and the Proposed*
                                           *Classes*

# ECF ATTESTATION

I, Leland H. Belew, hereby attest, pursuant to United States District Court, Northern District of California Civil Local Rule 5-1(i)(3), that concurrence to the filing of this document has been obtained from the signatory hereto.

Date: July 9, 2020

By: _____*/s/ Leland H. Belew*_____
Leland H. Belew

ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:      (415) 986-1400
Facsimile:(415) 986-1474
leland@andrusanderson.com

*Attorneys for Plaintiffs and the Proposed Classes*

36                                                          Case No. 5:16-cv-04775-EJD