1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DONNA J. FORSYTH, et al.,

Plaintiffs,

v.

HP INC., et al.,

Defendants.

Case No.  5:16-cv-04775-EJD

**ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS AND/OR TO STRIKE IMPROPER CLASS DEFINITIONS FROM THE FOURTH AMENDED COMPLAINT**

Re: Dkt. No. 401

Before the Court is Defendants HP Inc. ("HPI") and Hewlett Packard Enterprise Company's ("HPE") (collectively "Defendants") "Partial Motion to Dismiss and/or to Strike Improper Class Definitions from the Fourth Amended Complaint," ("Mot.") filed on August 24, 2020.  *See* Dkt. No. 401.  Plaintiffs have filed an opposition ("Opp."), to which Defendants have replied ("Reply").  *See* Dkt. Nos. 402, 403.  The Court took these motions under submission without oral argument pursuant to Civil Local Rule 7-1(b).  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

## I.      BACKGROUND

### A.      HP Co., HPI, and HPE's Employment Practices

In the operative Fourth Amended Complaint ("FAC"), Dkt. No. 389, Plaintiffs Donna J. Forsyth, Arun Vatturi, Dan Weiland, Shafiq Rahman, and Kevin Alviso allege Defendants violated the Age Discrimination in Employment Act of 1967 ("ADEA"), the California Fair Employment and Housing Act ("FEHA"), and other California state laws by targeting older employees in workforce reduction ("WFR")  plans and replacing them with younger workers.

United States District Court
Northern District of California

First, consistent with the allegations made in the prior complaint, the Third Amended Complaint ("TAC"), Dkt. No. 360, Plaintiffs allege that in 2012, under the direction of Meg Whitman, Hewlett-Packard Company ("HP Co.") began implementing a company-wide initiative to replace thousands of existing, older workers with new, younger employees.  This initiative was referred to as the "Workforce Restructuring Initiative."  FAC ¶ 3.  In November 2015, HP Co. split into two companies, HPI and HPE.  *Id*. ¶ 5.  Following the split, Whitman served as the Chair of the Board of Directors for HPI until July 26, 2017 and as the CEO for HPE until February 1, 2018 and also served on the board of HPE until February 1, 2019.  *Id*.  During her tenure at HPI and HPE, both companies allegedly continued to implement the age initiative in concert with one another.  *Id*. ¶ 6.  Hence, according to Plaintiffs, all three HP Entities shared the common goal of wanting to make the entire HP organization younger.  *Id*.  All three entities shed thousands of older workers, while aggressively recruiting and hiring younger employees to replace them.  *Id*.  Moreover, Plaintiffs allege the Workforce Restructuring Initiative is ongoing.  *Id*. ¶ 11.

### B.    Named Plaintiffs

There are currently five named Plaintiffs:

1.  **Donna J. Forsyth**.  Plaintiff Forsyth was hired by HP Co. on or about July 12, 1999.  *Id*. ¶ 75.  Before she was terminated, Plaintiff Forsyth was working for HPE in Bellevue, Washington.  *Id*.  Plaintiffs allege that she always "met or exceeded her employer's expectations" and that she performed her duties in a satisfactory and competent manner.  *Id*. ¶ 76.  In May 2016, HPE notified Plaintiff Forsyth, who was 62 years old at the time, that she was being terminated pursuant to a WFR plan.  *Id*. ¶ 78.  Plaintiffs allege that Forsyth was replaced with a "graduate" or "early career," i.e., someone who is significantly under the age of 40.  *Id*. ¶ 79.  Plaintiff Forsyth received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") dated August 2, 2016.  *Id*. ¶ 80.  She has thus exhausted her administrative remedies.

2.  **Arun Vatturi**.  Plaintiff Vatturi was hired by HP Co. in 2001.  *Id*. ¶ 81.  Before he was

terminated, Plaintiff Vatturi worked for HPI in Palo Alto, California.  *Id*.  Plaintiff Vatturi

worked on internal systems to improve procedure and save money for HP Co.  *Id*. ¶ 83.

Plaintiffs allege that Vatturi was a competent and invaluable employee—he was one of the

0.5% of employees at HP Co. to receive the company's top performance review rating.  *Id*.

¶¶ 82–83.  In January 2016, HPI notified Plaintiff Vatturi, who was 52 years old at the time,

that he was being terminated pursuant to a WFR plan.  *Id*. ¶ 85.  Plaintiffs allege that Vatturi

was replaced with a "graduate" or "early career," i.e., someone who is significantly under the

age of 40.  *Id*. ¶ 86.  Plaintiff Vatturi received a Notice of Right to Sue from the EEOC dated

August 2, 2016 and a Notice of Right to Sue from the California Department of Fair

Employment and Housing ("DFEH") on July 6, 2016.  *Id*. ¶ 87.  He has thus exhausted his

administrative remedies.

3.  **Dan Weiland**.  Plaintiff Weiland was hired by HP Co. as an independent contractor in 2010;

in February 2012, he was hired by HP Co. as a full-time employee.  *Id*. ¶ 88.  Before he was

terminated, Plaintiff Weiland worked as a Project/Program Manager and Acting Chief of

Staff in the Test Operations & Technologies organization in Houston, Texas.  *Id*.  Plaintiffs

allege that Weiland was a competent and invaluable employee—before he was laid off, he

was praised as a "solid contributor" who brought a "positive, 'can do' attitude" and a strong

work ethic with him every day.  *Id*. ¶¶ 89-90.  In 2014, Plaintiff Weiland received the

"Making a Difference" award.  *Id*. ¶ 90.  In September 2014, HP Co. notified Plaintiff

Weiland that he was eligible to participate in the 2014 Phased Retirement program.  *Id*. ¶ 91.

His manager had several conversations with Plaintiff Weiland to try to persuade him to

participate in the retirement program.  *Id*.  Ultimately, Plaintiff Weiland declined to

participate in the program.  *Id*.  In July 2015, HPI notified Plaintiff Weiland, who was 63

years old at the time, that he was being terminated pursuant to a WFR plan.  *Id*. ¶ 92.

Plaintiffs allege that Weiland was replaced with a "graduate" or "early career," i.e., someone

who is significantly under the age of 40.  *Id*. ¶ 93.  Plaintiff Weiland received a Notice of

1  Right to Sue from the EEOC dated October 5, 2015.  *Id.* ¶ 94.  He has thus exhausted his

2  administrative remedies.

3  4.  **Shafiq Rahman**.  Plaintiff Rahman began working at Compaq in April 1997, which was

4  acquired by HP Co. in 2002.  *Id.* ¶ 95.  Before he was terminated, Plaintiff Rahman was a

5  Senior Engineer and developed computer servers for HPE.  *Id.*  Plaintiffs allege that Rahman

6  was a competent employee—before he was terminated, he was told his performance was

7  "good" and that he should consider himself "safe" from termination.  *Id.* ¶ 96.  However, on

8  July 18, 2016, when Plaintiff Rahman was 65 years old, he was terminated pursuant to the

9  WFR plan.  *Id.* ¶ 97.  Plaintiffs allege that Rahman was replaced with a "graduate" or "early

10  career," i.e., someone who is significantly under the age of 40.  *Id.* ¶ 98.  Plaintiff Rahman

11  received a Notice of Right to Sue from the EEOC dated September 29, 2016.  *Id.* ¶ 99.  He

12  has thus exhausted his administrative remedies.

13  5.  **Kevin Alviso**.  Plaintiff Alviso began working for HP Co. in June 1997.  *Id.* ¶ 100.  Before he

14  was terminated, Plaintiff Alviso worked as a Research and Development Manager for HPE.

15  *Id.*  Plaintiffs allege that Alviso was a competent employee who always met or exceeded his

16  employer's expectations.  *Id.* ¶ 101.  Indeed, Plaintiff Alviso never received any negative

17  performance reviews during his time at HP Co. and HPE—in fact, Plaintiff Alviso received

18  top ratings in each of his last five annual reviews.  *Id.*  In October 2016, Plaintiff Alviso, who

19  was 53 years old, was terminated under the WFR plan.  *Id.* ¶ 102.  Plaintiffs allege that

20  Alviso was replaced with a "graduate" or "early career," i.e., someone who is significantly

21  under the age of 40.  *Id.* ¶ 103.  Plaintiff Alviso filed a charge of discrimination with the

22  EEOC on January 18, 2017 and received a Notice of Right to Sue on March 30, 2018.  *Id.* ¶

23  104.  Plaintiff Alviso also filed the same charge with the DFEH and received a Notice of

24  Right to Sue on January 18, 2017.  *Id.*  He has thus exhausted his administrative remedies.

25  **C.    Proposed ADEA Collectives and California State Law Class Definitions**

26  Plaintiffs, for the first time in the FAC, plead four different collective and class definitions,

United States District Court
Northern District of California

Case No.: 5:16-cv-04775-EJD
ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS AND/OR TO STRIKE
IMPROPER CLASS DEFINITIONS FROM THE FOURTH AMENDED COMPLAINT
4

1   including two nationwide ADEA collectives (one against HP Inc. and another against HPE) and

2   two Rule 23 California state law classes (same).  The proposed four classes are:

3   1.   **The "HPI Nationwide Class"** Plaintiffs Weiland and Vatturri seek to represent a class of all

4   individuals who had their employment terminated by HPI (including when HPI was named

5   HP Co.) pursuant to a WFR plan on or after December 9, 2014 for individuals terminated in

6   deferral states; and on or after April 8, 2015 for individuals terminated in non-deferral states,

7   and who were 40 years or older at the time of such termination.

8   2.   **The "HPE Nationwide Class"** Plaintiffs Forsyth, Rahman, and Aliso seek to represent a

9   class of all individuals who had their employment terminated by HPE pursuant to a WFR

10   plan on or after November 1, 2015, and who were 40 years or older at the time of such

11   termination.

12   3.   **The "HPI California Class"** Plaintiff Vatturi seeks to represent a California class of all

13   individuals who had their employment terminated by HPI (including when HPI was named

14   HP Co.) in California pursuant to a WFR plan on or after August 18, 2012, and who were 40

15   years or older at the time of such termination.

16   4.   **The "HPE California Class"** Plaintiff Alviso also seeks to represent a California class of all

17   individuals who had their employment terminated by HPE in California pursuant to a WFR

18   plan on or after November 1, 2015, and who were 40 years or older at the time of such

19   termination.

20   FAC ¶¶ 105, 106, 114, 115.

21   **II.   LEGAL STANDARD**

22   **A.   Motion to Strike**

23   Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any

24   pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

25   matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the

26   expenditure of time and money that must arise from litigating spurious issues by dispensing with

27

United States District Court
Northern District of California

those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

"'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 617 (1994). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). "Scandalous matters are allegations that unnecessarily reflect on the moral character of an individual or state anything in repulsive language that detracts from the dignity of the court." *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (internal quotations and citations omitted).

In determining whether to grant a motion to strike, a district court views the pleadings in a light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations" in the plaintiff's favor. *Alco Pac., Inc.*, 217 F. Supp. 2d at 1033 (citing *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). "This is particularly true if the moving party can demonstrate no resulting prejudice." *Id.* A court should deny "[a] motion to strike under Rule 12(f) . . . unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." *Gay-Straight All. Network v. Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true

Case No.: 5:16-cv-04775-EJD
ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS AND/OR TO STRIKE
IMPROPER CLASS DEFINITIONS FROM THE FOURTH AMENDED COMPLAINT

1    and construe them in the light most favorable to the non-moving party.  *See Doe v. United States*,

2    419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092,

3    1096 (9th Cir. 2005).  "The court need not accept as true, however, allegations that contradict facts

4    that may be judicially noticed by the court."  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.

5    2000).

6         "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

7    factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

8    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

9    action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the

10   complaint "must be enough to raise a right to relief above the speculative level."  *Id.*

11        To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to

12   relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662,

13   697 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

14   more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads

15   facts that are 'merely consistent with' a defendant's liability, it stops short of the line between

16   possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

17   550 U.S. at 556).

18        The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of

19   underlying facts to give fair notice and to enable the opposing party to defend itself effectively"

20   and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to

21   relief, such that it is not unfair to require the opposing party to be subjected to the expense of

22   discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

23   Although the scope of review is limited to the contents of the complaint, the Court may also

24   consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*,

25   896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and "take judicial notice of matters of public record

26   outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).  A

27

28   Case No.: 5:16-cv-04775-EJD
     ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS AND/OR TO STRIKE
     IMPROPER CLASS DEFINITIONS FROM THE FOURTH AMENDED COMPLAINT

1    court may also consider materials not submitted with a complaint if (1) the authenticity of the

2    materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the

3    complaint or the complaint "necessarily relies" on the materials.  *Lee v. City of Los Angeles*, 250

4    F.3d 668, 688 (9th Cir. 2001) (citation omitted).[1]

5    ### III.    DISCUSSION

6    #### A.    Plaintiffs' Proposed ADEA Collective and California State Law Class Definitions

7             Defendants move in part to strike collective and class definitions put forth in the FAC on

8    the grounds that the proposed collectives and classes "extend beyond the date of the last unlawful

9    act identified in the FAC," and seek relief for "persons terminated (or yet to be terminated) by

10   defendants after the named Plaintiffs' Notices of Right to Sue were issued by the EEOC and

11   DFEH respectively."  Mot. at 4.

12            The Ninth Circuit has found that "Rule 12(f) is neither an authorized nor a proper way to

13   procure the dismissal of all or a part of a complaint."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618

14   F.3d 970, 974 (9th Cir. 2010) (internal quotations and citation omitted).  "Were we to read Rule

15   12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . .

16   we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule

17   12(b)(6) motion . . . already serves such a purpose."  *Id.*  Here, Defendants improperly use their

18   motion to strike to assert arguments about the temporal scope of Plaintiffs' proposed collectives

19   and classes better suited in a motion to dismiss.  Accordingly, Defendants' motion to strike is

20   **DENIED**.

21            Alternatively, Defendants move to dismiss the proposed collective and class definitions

22   because the "broad and ongoing" temporal periods of each collective or class are not supported by

23   the allegations in the FAC.  Mot. at 10.  Defendants argue that Plaintiffs, through their newly

24

25   [1] Defendants ask the Court to consider Plaintiffs' administrative charges and Notices of Right to
     Sue.  Because the FAC necessarily relies on the charges and Notices of Right to sue, and the
26   authenticity of them is not in dispute, the Court will consider them under the "incorporation by
     reference" doctrine.  Moreover, the Court takes judicial notice of the Notice of Right to Sue issued
27   to Plaintiff Rahman by the EEOC dated March 10, 2017.

     Case No.: 5:16-cv-04775-EJD
28   ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS AND/OR TO STRIKE
     IMPROPER CLASS DEFINITIONS FROM THE FOURTH AMENDED COMPLAINT

                                                        8

United States District Court
Northern District of California

United States District Court
Northern District of California

1    pleaded ADEA collectives and Rule 23 California state law classes, seek resolution of the claims

2    of putative collective and class members who have not exhausted their administrative remedies

3    and cannot "piggyback" on the operative charges of the named Plaintiffs.  Reply at 7.  Plaintiffs

4    argue that Federal Rule of Civil Procedure 12(g)(2) precludes Defendants from raising this

5    argument and that here, all of the individuals affected by Defendants' WFR plans are entitled to

6    "piggyback" on the administrative charges filed by Plaintiffs because the 2012 Workforce

7    Initiative is ongoing.  Opp. at 4.

8        The Court agrees with Plaintiffs on both points.  Specifically, when "a party. . . makes a

9    motion under [Federal Rule of Civil Procedure 12(b) then she generally] must not make another

10   motion under this rule raising a defense or objection that was available to the party but omitted

11   from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  The sole Rule 12 exception is that a party may

12   subsequently raise the foreclosed issue "in a post-answer motion under Rule 12(c)"; otherwise, the

13   party may validly raise the issue "in a pleading under Rule 7. . . or at trial."  *In re Apple iPhone*

14   *Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (citing *English v. Dyke*, 23 F.3d 1086, 1091 (6th

15   Cir. 1994)); *see also Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 984–85 (N.D. Cal. 2017)

16   ("[U]nder Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense pertaining to a

17   failure to state a claim that was available but omitted from an earlier Rule 12 motion can only do

18   so in a pleading, a Rule 12(c) motion, or at trial.").  The purpose of Rule 12(g) is "simple and

19   basic: a series of motions should not be permitted because that results in delay and encourages

20   dilatory tactics."  *Aetna Life Ins. Co. v. Alla Med. Servs.*, *Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir.

21   1988) (internal quotations omitted).

22       Here, Defendants seek to assert "a defense . . . that was available . . . but omitted from [an]

23   earlier motion" to dismiss.  Fed. R. Civ. P. 12(g)(2).  Defendants failed to raise their argument that

24   Plaintiffs' proposed collective and class definitions were not appropriately limited temporally in

25   its motion to dismiss the TAC (*see generally* Dkt. No. 371), even though the TAC and FAC

26   included the same five named Plaintiffs, proposed class definitions that included individuals

27

28   Case No.: 5:16-cv-04775-EJD
     ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS AND/OR TO STRIKE
     IMPROPER CLASS DEFINITIONS FROM THE FOURTH AMENDED COMPLAINT

1    terminated under the WRF plans with no end date, and alleged that Defendants' discrimination

2    remained ongoing.  *See generally* TAC and FAC.  While Plaintiffs now propose a total of four

3    collectives and classes instead of two that are based on which defendant entity the Plaintiffs

4    worked for, the same temporal scope argument was available to Defendants at the time they raised

5    their motion to dismiss the TAC.  Defendants' attempt to raise this argument in a successive

6    motion to dismiss violates Rule 12(g)'s ban on successive Rule 12(b) motions.

7          Even if Rule 12(g)(2) did not bar Defendants' argument regarding Plaintiffs' proposed

8    collective and class definitions, the argument would still fail.  As the Ninth Circuit has explained,

9    "[u]named class members in a private class action need not exhaust administrative remedies."

10   *Arizona ex rel. Horne v. Geo Grp.*, *Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016).  Under the judicially

11   created single-filing rule, unnamed complainants may "piggyback" on the timely charges of others

12   who have exhausted administrative remedies.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1136

13   (9th Cir. 2012) (citing, *inter alia*, *Bean v. Crocker Nat. Bank*, 600 F.2d 754, 759 (9th Cir. 1979)).

14         Nonetheless, Defendants argue that Plaintiffs are precluded from having a forward looking

15   scope in their collective and class definitions and thus, the class period should end when Plaintiffs

16   received their Notices of Right to Sue from the respective agencies.  Mot. at 11.  Defendants

17   contend Plaintiffs have not sufficiently alleged a continuing concrete policy or well defined plan

18   that would warrant a forward scope expansion.  *Id*. at 10-15.  Plaintiffs, however, have claimed in

19   their pleadings that Defendants' Workforce Restructuring Initiative remains ongoing.  *See* FAC ¶¶

20   11, 13.  Moreover, Plaintiffs revealed in their administrative charges that "a class of similarly

21   situated individuals . . . were discriminated against and targeted because of their age."  *See*

22   Declaration of Richard W. Black ("Black Decl."), Exh. 2-6, Dkt. No. 401-2.  Plaintiffs alleged that

23   "older employees were [being] disproportionately impacted by the Workforce Reduction programs

24   that started in May 2012 and continue through this day," and that each claimant "seeks to

25   represent this class of individuals."  *Id*.  These pleadings, coupled with the administrative charges,

26   demonstrate Defendants and the administrative agencies were placed on notice that Plaintiffs were

27

28   Case No.: 5:16-cv-04775-EJD
     ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS AND/OR TO STRIKE
     IMPROPER CLASS DEFINITIONS FROM THE FOURTH AMENDED COMPLAINT
                                                10

United States District Court
Northern District of California

alleging continual and ongoing discrimination. As such, the temporal scope of Plaintiffs' collectives and classes would extend beyond the dates Plaintiffs received their Notices of Right to Sue. *See McDonald v. United Air Lines, Inc.*, 587 F.2d 357, 361 (7th Cir. 1978) (holding the temporal limits of a class extended beyond the date of the filed charges and up to the date the policy ended when defendant was put on notice by plaintiffs' filings that its policy was being challenged); *see also Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985).

Contrary to Defendants' motion, *Hipp v. Liberty National Life Insurance. Co.*, 252 F.3d 1208 (11th Cir. 2001) does not change this analysis. There, the Eleventh Circuit was not considering a case where the plaintiffs had adequately alleged defendants were given notice of continual and ongoing discrimination. *Id.* at 1226. Further, the Eleventh Circuit recognized that "[w]here the representative charge clearly alleges a continuing, concrete policy that is illegal . . . it might be fair to assume the company has knowledge of later-arising claims challenging the same policy." *Id.* (citation omitted). Hence, *Hipp* does not change this Court's conclusion that Plaintiffs' proposed collective and class definitions are not temporally limited to when Plaintiffs received their Notices of Right to Sue.

For these reasons, Defendants' motion to dismiss Plaintiffs' proposed ADEA collective and Rule 23 California state law class definitions is **DENIED**.

### B.    Fraudulent Allegations and UCL Claims

Defendants also argue that Plaintiffs' claims under California Business and Professions Code section 17200, *et seq.* ("UCL") must be dismissed for failure to state a claim as the Court previously dismissed the "fraudulent UCL claims" from the TAC. Mot. at 17; *see also* Dkt. No. 381 at 26. However, Plaintiffs do not dispute that the Court dismissed the "fraud prong" of their UCL claims. Opp. at 16. Instead, Plaintiffs amended their UCL claims to allege Defendants are liable only as a result of their "unlawful or unfair acts." *See* FAC ¶¶ 193, 197. The mention of "fraudulent activity" is only in reference to the language included in the UCL. *See id.* As such, Plaintiffs argue that there is no need for the Court to dismiss any claims again. Because each

United States District Court
Northern District of California

prong—fraudulent, unfair, and unlawful—is independently actionable, a UCL claim survives if a plaintiff pleads either unlawful, unfair, or fraudulent business acts. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Thus, the Court recognizes Plaintiffs' UCL claims as alleging only unlawful or unfair business acts. Accordingly, Defendants' motion to dismiss Plaintiffs' UCL claims is **DENIED** as moot.

In addition to the two UCL claims, Defendants also ask the Court to dismiss or strike "all underlying allegations of fraud" from the FAC. Mot. at 17. Defendants point to two other allegations of fraud in Plaintiffs' public policy age discrimination claims. *See* FAC ¶¶ 184, 190. Pursuant to the Court's prior Order, these allegations of fraud are ordered stricken from the FAC. However, because requiring Plaintiffs to file an amended pleading removing the two allegations of fraud would cause further delay, the record shall reflect that all allegations of fraud are stricken from the FAC.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss and/or to strike is **DENIED**. The record shall reflect that all fraud allegations in the Fourth Amended Complaint are stricken.

**IT IS SO ORDERED.**

Dated: October 15, 2020

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California